# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01854-JLK-KAS

JENNIFER MARIE O'CONNOR,

      Plaintiff,

v.

DAVID MULKEY, *et al*.,

      Defendants.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO QUASH SUBPOENAS BY COLORADO BUREAU OF INVESTIGATION, COLORADO CRIME INFORMATION CENTER, AND DEPUTY DIRECTOR DAN VOLZ [DOC. 33]**

---

The Court should deny CBI's motion to quash. The dispositive sentence in the case CBI cites nine times comes from a footnote CBI never quotes. In *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1162 n.1 (10th Cir. 2014), the Tenth Circuit said that "neither a state nor a tribe would appear to be immune from a discovery request served on the appropriate agency official, rather than on the agency itself, although other privileges or protections may apply." That footnote is the Tenth Circuit's only published statement that speaks directly to whether the Eleventh Amendment shields a state agency from a discovery request served on the appropriate agency official, and it points the way Plaintiff went.

CBI's position asks the court to endorse a nonsensical, Kafkaesque discovery trap: the records are central to Plaintiff's claims, CBI controls them, and yet CBI says no court can compel their production through the subpoena process. As one court recently observed, "[a] plaintiff's

1

right to pursue federal constitutional claims would be toothless without a corresponding right to acquire necessary evidence to prove these claims. . . . The Court does not believe that Congress or the Supreme Court would allow civil rights lawsuits to be hobbled in this way." *Trujillo v. Romero*, 2014 WL 12783016, at *5 (D.N.M. Dec. 1, 2014).

An unjust, factual asymmetry sharpens the legal one. On February 13, 2026, CBI Deputy Director Dan Volz emailed defense counsel a complete table of every CCIC query run by every officer involved in Plaintiff's arrest—both the field officers who effected the arrest and the detention personnel who later ran searches while Plaintiff protested her mistaken identity. *See* Ex. 1. The detention-stage searches matter because their returns produced Plaintiff's release. When Plaintiff's counsel sought the same and broader records two months later, Volz redirected counsel to the Colorado Attorney General, who filed Doc. 33 invoking sovereign immunity. The Eleventh Amendment does not authorize a state agency to supply evidence for use by one side in pending federal litigation and then invoke immunity to deny the opposing party the same evidence.

Six moves dispose of the motion: (1) *Bonnet*'s footnote 1 identifies the *Ex parte Young* path Plaintiff used; (2) the Eleventh Amendment's text does not reach Rule 45 discovery from a state agency, as the Eighth and Seventh Circuits have held and modern district courts have applied; (3) CBI waived any immunity it might have invoked when it voluntarily participated in this case in February; (4) the in-district decisions CBI relies on are distinguishable; (5) burden is the wrong doctrine and CBI's own February 13 production refutes its 120-hour assertion; (6) equity and § 1983 confirm the result. The Court should enforce both subpoenas. Alternatively, the Court should modify them under Rule 45(d)(3)(B) to direct production from Volz as the appropriate agency custodian. If further narrowing is needed, the Court should order staged delivery beginning with

2

the data Volz already produced. And if the Court concludes Rule 45 is unavailable, it should order

Defendants to obtain the same records under Rule 34—the path *Butler-Moore* II itself sanctioned.

### STATEMENT OF FACTS

Plaintiff brings a mistaken-identity-arrest claim under 42 U.S.C. § 1983 and C.R.S. § 13-

21-131. The arrest occurred on July 30, 2024, in Parachute, Colorado. Plaintiff alleges that the

fingerprint scanner identified her as Jennifer Marie O'Connor, not Jennifer Elizabeth Simpson—

the woman named in the warrant—and that the CCIC return showed different identifiers (different

date of birth, different Sheriff's ID, different Social Security number). She further alleges that

officers ignored both facts and arrested her anyway. Doc. 1 ¶¶ 10–67.

Defendants' assertion of qualified immunity makes those records central. They argue that

the arrest was reasonable based on what the officers saw in CCIC and what they understood from

the fingerprint scan. Doc. 14 at 8–10. The defense theory therefore turns on the content, timing,

and sequence of the database returns.

On February 13, 2026, CBI Deputy Director Daniel Volz voluntarily produced information

about those same database events. *See* Ex. 1. He emailed Garfield County Sheriff Lou Vallario

along with defense counsel Heather Beattie and Graham Jackson under the subject line

"Report/Information." *Id.* The production included a complete table of every CCIC query by every

officer involved in Plaintiff's arrest, by query type, with timestamps, on July 30 and 31, 2024. *Id.*

The production thus covered not only the field-officer searches that preceded the arrest but also

the detention-personnel searches that occurred while Plaintiff was protesting her mistaken

identity—the searches whose returns ultimately produced her release.

In April 2026, Plaintiff's counsel followed up with Mr. Volz about related records. Mr.

3

Volz redirected counsel to Senior Assistant Attorney General Elisabeth McCarty. AAG McCarty

objected on sovereign-immunity grounds. CBI, CCIC, and Mr. Volz then filed Doc. 33.

Two subpoenas are at issue. The first is directed to "Colorado Crime Information Center

c/o Dan Volz." Doc. 33-1. The second is directed to Mr. Volz personally. Doc. 33-2. Both

command production of documents, not testimony, across ten categories labeled (a) through (j).

Category (j) seeks the same query data Mr. Volz had already produced in February.

## <u>ARGUMENT</u>

**I.    *BONNET*'S FOOTNOTE 1 IDENTIFIES THE PATH PLAINTIFF USED AND DEFEATS CBI'S CATEGORICAL RULE**

The Tenth Circuit's only direct comment on whether the Eleventh Amendment shields a

state agency from a Rule 45 discovery request is *Bonnet*'s footnote 1, and it points away from

CBI's position. The footnote reads in full:

> [U]nder *Ex parte Young*, 209 U.S. 123 (1908), which applies with equal force against both state and tribal officials under *Crowe & Dunlevy*, 640 F.3d at 1154, neither a state nor a tribe would appear to be immune from a discovery request served on the appropriate agency official, rather than on the agency itself, although other privileges or protections may apply.

*Bonnet*, 741 F.3d at 1162 n.1. The body text immediately preceding the footnote frames the same

point. The Tenth Circuit "se[es] no reason why an Indian tribe should be able to 'shut off an

appropriate judicial demand for discovery' served on a tribal official, rather than against the Tribe

itself." *Id.* at 1162 (quoting *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 472 (1951)

(Frankfurter, J., concurring)).

Volz is the appropriate agency custodian. He is the Deputy Director of CBI, the state

agency the Tenth Circuit has expressly recognized as the institutional custodian of the CCIC

database. *See United States v. Esquivel-Rios*, 786 F.3d 1299, 1305 (10th Cir. 2015) (recognizing

4

that CCIC "was maintained by CBI"). Volz has personal access to that operational system. He already exercised that access on February 13, 2026, when he produced the same data to defense counsel in this very case. The "appropriate agency official" framing in *Bonnet* footnote 1 does not require a label-fight about "individual" versus "official" capacity. It recognizes that discovery from a custodian who can produce—and who has produced—is not a suit against the State.

CBI relies on *Bonnet* extensively. None of CBI's citations engages footnote 1. The footnote is not collateral. It is the only passage in *Bonnet* that addresses what the Tenth Circuit would do with a discovery request served on a state-agency official rather than the agency itself. Whatever weight the Court gives the body-text dictum at 1161, the footnote at 1162 cannot be wished away.

The sentence CBI does build its motion on does not bear the weight CBI places on it. CBI relies on *Bonnet*'s observation that "the Eleventh Amendment may well shield a state agency from discovery in federal court." Doc. 33 at 10 (quoting *Bonnet*, 741 F.3d at 1161). Three points limit that sentence. First, *Bonnet* held that a subpoena served directly on a Tribe was a "suit" triggering tribal sovereign immunity, *id.* at 1160; the state-immunity sentence at 1161 answered no question presented to the panel. The Minnesota Court of Appeals has so characterized it. *In re Welfare of J.A.D.*, A24-0317, slip op. (Minn. App. Sept. 30, 2024) (declining to follow *Bonnet*'s state-immunity language as dicta). Second, "may well" is not a holding. The Tenth Circuit declined to commit, and CBI cites that hedge as if the question were settled. Third, the very next sentence of *Bonnet* confirms the state-immunity language was offered to contrast tribal and state immunity, not to decide either: "applying tribal immunity to bar the instant subpoena does not require holding the Tribe is entitled to any broader immunity than the States." *Bonnet*, 741 F.3d at 1161.

CBI cannot have it both ways. CBI argues that *Bonnet*'s body-text dictum binds this Court

while suppressing *Bonnet*'s footnoted dictum that points the other way. The honest reading is that *Bonnet* is silent on the question presented to this Court, except in the footnote. And the footnote favors Plaintiff.

CBI's reliance on *Bonnet*'s tribal-immunity language also requires one accuracy correction. The phrase "tribal immunity is a matter of federal common law, not a constitutional guarantee" is *Bonnet* quoting *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011). The brief attributes it correctly. The phrase matters because it confirms what *Bonnet*'s comparative dictum already implies: tribal immunity and state Eleventh Amendment immunity operate differently, and the rules from one do not import wholesale into the other. *Bonnet*'s tribal holding therefore does not—and cannot—answer the state-agency Rule 45 question this Court now faces. Footnote 1 is the Tenth Circuit's only direct guidance on that question, and it favors Plaintiff.

## II.     THE ELEVENTH AMENDMENT DOES NOT BAR THIRD-PARTY RULE 45 DISCOVERY

The Eighth Circuit stated the rule directly: "There is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court." *In re Mo. Dep't of Nat. Res.*, 105 F.3d 434, 436 (8th Cir. 1997). A subpoena does not convert a state agency into a defendant. It does not subject the State to liability and does not require the State to defend itself against a claim for damages or equitable relief; it merely requires production of documents.

That rule follows from the ordinary operation of federal discovery. The Supreme Court has long recognized that "[t]he Government as a litigant is, of course, subject to the rules of discovery." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958). CBI is not a litigant here, but the premise matters: discovery obligations are procedural tools used to obtain evidence, not

6

judgments imposing liability. A Rule 45 subpoena to a third party asks for records; it does not seek damages, injunctions, or declaratory relief against the State. CBI's argument would violate the fundamental principle that "the public . . . has a right to every man's evidence." *United States v. Bryan*, 339 U.S. 323, 331 (1950) (citation omitted). Exceptions "to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). Those principles confirm why *Bonnet*'s practical footnote matters where a litigant seeks relevant records from the official who controls them.

The Seventh Circuit reached the same conclusion. Judge Posner explained that ancillary discovery orders "do not compromise state sovereignty to a significant degree" and therefore "do not violate the Eleventh Amendment." *Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008). The contrast Judge Posner drew was between such orders and a judgment for money damages against the State—the prototypical Eleventh Amendment harm. *Id.* That distinction fits this subpoena exactly. Plaintiff seeks production of records about database queries that CBI already collected, maintained, and partially produced. Compliance may require work, but work is not liability, and production is not a judgment against the treasury.

Modern district courts applying those circuit rules have treated state-agency subpoenas the same way. In *Charleston Waterkeeper v. Frontier Logistics, L.P.*, the court held that "[a] federal court's enforcement of a subpoena against a state agency does not significantly infringe on federalism's promise of dual independent sovereigns." 488 F. Supp. 3d 240, 250–51 (D.S.C. 2020). That is the practical federalism point. A subpoena for relevant records in a pending federal case does not reorder state policy, supervise state officials, or adjudicate a claim against the State. It

secures evidence so the Court can decide the claims actually before it.

History confirms this rule. As one court recently concluded, "the historical evidence suggests that issuance of a subpoena to a state official would not have been 'anomalous and unheard of when the Constitution was adopted.'" *Cuomo v. Office of the New York State Att'y Gen.*, 754 F. Supp. 3d 334, 355 (E.D.N.Y. 2024). The early-republic record—including *United States v. Caldwell*, 2 U.S. 333 (1795); *United States v. Burr*, 25 F. Cas. 30, 32, 34 (C.C.D. Va. 1807) (Marshall, C.J.); and *Winn v. Patterson*, 34 U.S. 663 (1835)—shows subpoenas to public officials functioning as evidence-gathering tools, not as prohibited suits against sovereigns.

For those reasons, the Eleventh Amendment does not bar these subpoenas. Three structural propositions support that result. First, a subpoena is not a suit. Second, *Bonnet*'s footnote 1 confirms that the appropriate agency official may be compelled to produce. Third, this Court has the authority to enforce its own process against a state agency. CBI's contrary position treats any compulsory process directed to a state entity as a sovereign-immunity violation. The better rule draws the constitutional line where the Amendment draws it: suits seeking relief against the State are one thing; third-party discovery seeking records for use in litigation against others is another.

## III. CBI WAIVED ANY IMMUNITY BY VOLUNTARILY PARTICIPATING IN THIS FEDERAL-COURT LITIGATION

Even if the Eleventh Amendment otherwise reached this discovery dispute—and it does not—CBI waived any immunity it might have invoked when Volz voluntarily produced the same operational data to defense counsel on February 13, 2026.

The doctrinal floor is *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002). The Supreme Court explained that "[i]t would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction . . . and (2) to claim Eleventh Amendment immunity." *Lapides*, 535 U.S. at 619. The

waiver rule, the Court explained, "rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages." *Id.* at 620–21. That sentence describes CBI's posture in this case with uncomfortable precision.

The character of the waiver question is also settled. "[W]hether a particular set of state laws, rules, or activities amounts to a waiver of the State's Eleventh Amendment immunity is a question of federal law." *Id*. at 623. CBI does not get to define, by reference to its own internal characterizations or post-hoc litigation preferences, the federal consequences of its voluntary federal-court conduct.

Apply the rule to the record. CBI is not a defendant. But CBI voluntarily injected itself into this case on February 13, 2026, when Volz—signing as "Deputy Director, Colorado Bureau of Investigation"—emailed defense counsel a complete operational query table covering the same officers, the same subjects, and the same dates Plaintiff's subpoena now seeks. *See* Ex. 1. Having furnished one side of this lawsuit with category (j) data, CBI cannot wield sovereign immunity to deny the other side the same data. That is the textbook "selective use of 'immunity' to achieve litigation advantages" *Lapides* condemns. *Id.* at 620–21.

*Lapides* is narrow at the holding—the Court was deciding the consequences of a State's voluntary removal of state-law claims to federal court—and broad at the rationale. The principle the Court articulated is that anomaly and unfairness attend a State's selective use of federal litigation machinery to gain an advantage while invoking immunity to avoid reciprocal consequences. Plaintiff invokes the rationale, not the removal-context holding.

To the extent CBI may invoke *Stroud v. McIntosh*, 722 F.3d 1294, 1301–02 (11th Cir. 2013), to argue that *Lapides*'s waiver rule is confined to removal, *Stroud* does not hold that. *Stroud* addresses removal as one form of voluntary federal-court invocation. It does not foreclose other voluntary litigation conduct from triggering similar waiver. *Stroud*, an Eleventh Circuit case, is not binding on this Court. Second, *Stroud* limited *Lapides* in the context of statutory abrogation under the ADEA, not in the context of a state agency's voluntary production of case-specific operational records to one side of an active federal docket. The distinction matters. *Stroud* addressed whether an ADEA defendant consented to a substantive cause of action by removing a case. This case addresses whether a state agency may supply evidence to one side in federal litigation and then invoke immunity to prevent reciprocal access by the other side. Third, the Tenth Circuit has not adopted *Stroud*'s narrowing reading of *Lapides*. The question is open here, and *Lapides*'s own language about the "selective use of 'immunity' to achieve litigation advantages," together with *Bonnet*'s footnote 1, supplies the rule.

The principle the Supreme Court articulated is not confined to the precise procedural vehicle of removal. A State that voluntarily uses federal-court machinery to gain an evidentiary advantage—by supplying operational records to one side of a federal docket while withholding the same records from the other—implicates the same anomaly and unfairness *Lapides* condemns. The Eleventh Amendment text does not authorize that selective use of immunity.

This argument is doctrine, not equity. The frame is voluntary litigation participation under *Lapides*, not "asymmetric disclosure" as a rhetorical complaint. The equity-flavored argument that withholding these records from Plaintiff alone would convert qualified immunity into an unfalsifiable defense is addressed separately in Section VI.

## IV.     *BUTLER-MOORE* AND *SMITH V. PLATI* ARE DISTINGUISHABLE

A decision of a federal district court judge "is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

*Butler-Moore v. Garcia*, 815 F. Supp. 3d 1206, 1211 (D. Colo. 2025) (Blackburn, J.), and *Butler-Moore v. Garcia*, 2026 WL 915117, at *3 (D. Colo. Apr. 2, 2026), differ from the present record on three independent grounds. First, *Butler-Moore* presented no record of voluntary state-agency production to defense counsel; the *Lapides*-style waiver Plaintiff invokes was absent there. CBI's affirmative February 13, 2026, production fundamentally changes the constitutional posture. Second, the records sought in *Butler-Moore* were internal employee personnel files— collateral to the mistaken-identity database events at issue here. Plaintiff seeks the operational law-enforcement data the defendant officers consulted, relied on, and now invoke as the centerpiece of their qualified-immunity defense. The records are the factual heart of the merits inquiry. Third, *Butler-Moore* II expressed nonbinding disagreement with *Bonnet* footnote 1. 2026 WL 915117, at *3. That disagreement is not a basis for this Court to disregard the Tenth Circuit's published guidance that discovery may proceed through the appropriate agency official.

*Butler-Moore* II itself identified an alternative this Court could adopt without reaching the constitutional questions. Judge Blackburn suggested that the defendants could obtain the requested records "through the ordinary Rule 34 discovery process directed to the named defendants." *Butler-Moore* II, 2026 WL 915117, at *3. That pathway remains open here as a fallback remedy that would avoid any broader ruling on waiver or sovereign immunity.

Judge Kane's opinion in *Smith v. Plati*, 56 F. Supp. 2d 1195 (D. Colo. 1999), is likewise

11

distinguishable. The Court correctly observed that "in his individual capacity, [*Plati*] would have no authority to provide him any benefits of [media] status." *Id.* at 1203. Three distinctions separate that dispute from this one. First, Plaintiff seeks records production, not a status declaration. Second, Deputy Director Volz already exercised the very capacity CBI now claims he lacks through the February 13 production. Third, *Smith* predates *Bonnet* footnote 1 by fifteen years and must be read against the Tenth Circuit's subsequent guidance.

By contrast, *Adkins v. Fields*, 747 F. Supp. 3d 1052 (E.D. Ky. 2024), applied Eleventh Amendment immunity to quash a third-party state-agency subpoena in a circuit with no comparable appellate guidance and on a record that did not include a *Lapides*-style voluntary state-agency production to defense counsel. Neither factor applies here. The February 13, 2026, production places this case in a different posture, and the Tenth Circuit's *Bonnet* footnote 1 points to the appropriate-official path.

## V.  BURDEN IS THE WRONG DOCTRINE, AND CBI'S OWN FEBRUARY 13 PRODUCTION REFUTES IT

CBI's motion is jurisdictional, not proportional. The motion does not invoke Rule 26(b)(1) proportionality, develop a Rule 45(d)(3)(A)(iv) burden record, or seek a protective order under Rule 26(c). It seeks categorical quashal on Eleventh Amendment grounds. The 120-hour figure in Volz's declaration is unsupported by any task-by-task showing and should be viewed with skepticism. CBI's assertion that standard database records require 120 hours of manual review is difficult to square with its demonstrated ability to generate the category (j) query table already produced in this case. And to the extent production through the appropriate official entails incidental administrative expense, that cost is "a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*." *Edelman v. Jordan*, 415 U.S. 651, 668 (1974).

Rule 45 commands a court to quash where compliance "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Burden is measured against relevance, the requesting party's need, and the requesting party's alternatives. Fed. R. Civ. P. 26(b)(1). CBI has offered no relevance counter (the records bear directly on Defendants' qualified-immunity defense, by Defendants' own framing, Doc. 14 at 8–10). CBI has offered no alternative path. CBI has offered only a number—120 manhours—without identifying tasks, systems, or time-per-task.

Volz's February 13, 2026, email refutes that number on its face. The email reproduces the exact form of the production category (j) requests: a complete table of every CCIC query, by every officer involved in Plaintiff's arrest and continued detention, by query type, with timestamps, on July 30 and 31, 2024. CBI cannot credibly characterize that work as a 120-hour burden when CBI performed it once already, voluntarily, in three months and without a subpoena, while the parties were preparing for discovery in this very case.

CBI's passing reference to 28 C.F.R. Part 20 does not change the analysis. Doc. 33 at 2, 6. That regulation permits disclosure for any purpose authorized by "court rule, decision, or order." 28 C.F.R. § 20.21(b)(2). The "administration of criminal justice" is defined at 28 C.F.R. § 20.3(b) to include "detection, apprehension, detention . . . and adjudication." Federal civil rights litigation under 42 U.S.C. § 1983, which adjudicates the lawfulness of a detention performed using the CCIC database, is a fundamental component of that framework. Any residual confidentiality interest is addressed through a protective order, not a categorical quashal. Staged delivery, in any event, moots whatever burden remains. Plaintiff has offered—and offers again here—to take production in three stages. First, the category (j) data Volz has already produced. Second, the query-type documentation in categories (f) and (h), which is generic CBI training material rather than case-

specific records. Third, the remaining categories. Each stage is finite, discrete, and proportionate to need. Rule 45(d)(3)(B) authorizes precisely this form of modification, and it is the form the Court should adopt if it concludes that any burden warrants narrowing.

## VI.    EQUITY AND § 1983 CONFIRM THE RESULT

Defendants invoke qualified immunity on the strength of what they say they saw in CCIC; the doctrine is fact-bound; the CCIC operational records are the contemporaneous record of what they actually saw. To shield those records from Plaintiff is to convert qualified immunity into an unfalsifiable defense.

The qualified-immunity inquiry is fact-specific by design. "The relevant question . . . is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the conduct] to be lawful, in light of clearly established law and the information the searching officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The doctrine measures reasonableness against "the facts available to the officers at the moment of arrest." *Maresca v. Bernalillo Cty.*, 804 F.3d 1301, 1310 (10th Cir. 2015) (citation omitted).

The Tenth Circuit has refined the inquiry in a way that makes the records sought here doubly central. Officers "are charged with knowledge of any 'readily available exculpatory evidence' that they unreasonably fail to ascertain." *Maresca*, 804 F.3d at 1310. What the CCIC system showed, and what the officers chose to ignore, is therefore a load-bearing question on the merits. *See id*. The point is concrete here. The same database returns that detention personnel later consulted to confirm Plaintiff's mistaken-identity claim—and that produced her release—were available to the arresting officers earlier that day. What the field officers saw, what they could have seen, and what they chose to credit are operational questions answerable only by the CCIC

records CBI has so far produced to one side of this litigation.

The structural problem follows. CBI already produced the operational query data to Defendants. To shield the same data from Plaintiff is to convert qualified immunity from a fact-bound doctrine into an unfalsifiable one—a defense built on records the defense alone may consult. The Eleventh Amendment cannot supply that result, and § 1983's enforcement function—Congress's chosen vehicle for vindicating Constitutional rights—does not contemplate it.

ELEIA confirms the public-law context in which these records arise: Colorado has chosen to regulate law-enforcement integrity and accountability, C.R.S. § 13-21-131, making CBI's request for categorical secrecy especially difficult to square with the ordinary discovery rules and an appropriate protective order. CBI's request for categorical secrecy works against the accountability purpose ELEIA codified.

The equitable conclusion is straightforward. Qualified immunity is fact-bound. The records are the facts. CBI gave them to one side. The other side asks the Court for the same access. Equity and § 1983 confirm what the Eleventh Amendment's text and *Lapides*'s logic already require.

## <u>CONCLUSION</u>

The Court should deny CBI's motion and direct production of both subpoenas as written.

If the Court declines to enforce as written, it should modify under Rule 45(d)(3)(B) to direct production from Volz as the "appropriate agency official" under *Bonnet*, 741 F.3d at 1162 n.1, preserving the *Ex parte Young* path the Tenth Circuit endorsed.

If the Court considers further narrowing necessary, it should order staged delivery: first, category (j) (the data CBI already produced on February 13, 2026); next, categories (f) and (h) (query-type documentation); finally, the remaining categories.

15

If the Court concludes that the subpoena route is unavailable, Plaintiff respectfully requests an order directing Defendants to obtain and produce, through Rule 34, the same CBI records they have invoked as the centerpiece of their qualified-immunity defense—the path *Butler-Moore* II itself sanctioned. *Butler-Moore*, 2026 WL 915117, at *3.

The Eleventh Amendment was not written to allow a state agency to supply case-specific evidence to one side of a federal lawsuit and then invoke immunity to deny the opposing party the same evidence. *Bonnet* footnote 1 points the other way. The Court should deny the motion.

Respectfully submitted this 22nd day of May 2026.

s/    *Zachary L. Shiffler*
Zachary L. Shiffler
Edward C. Hopkins Jr.
Civil Rights Litigation Group
1543 Champa Street, Suite 400
Denver, CO 80202
P:  720-515-6165
F:  303-534-1949
zach@rightslitigation.com
ed@rightslitigation.com

## <u>CERTIFICATION REGARDING THE USE OF GENERATIVE ARTIFICIAL INTELLIGENCE</u>

The undersigned counsel certifies the following pursuant to Section IV.B of the Honorable Senior Judge Kane's Pretrial and Trial Procedures (March 2025 revision):

1. Generative AI tools were used to assist in preparing this Response. Specifically, Plaintiff's counsel used Legal Command Center (LCC), which is legal AI software that Colorado Attorney Edward C. Hopkins Jr. developed exclusively for the Civil Rights Litigation Group, LLP to ensure the firm ethically and lawfully leverages the benefits of AI while complying with all applicable laws, contractual duties, civil procedure rules, and professional conduct rules. LCC uses a multi-model AI pipeline (Anthropic Claude Opus 4.7, OpenAI GPT-5.5, Google Gemini 3.1 Pro, and xAI Grok 4.3), custom scripts, and custom databases to assist the firm's attorneys with legal research, doctrinal analysis, structural outlining, and initial drafting. General AI tools that Westlaw provides were also used to assist with legal research and doctrinal analysis.

2. Counsel personally reviewed every legal proposition, every factual assertion, and every citation in this Response. Counsel verified each cited authority against print reporters, Westlaw, or Midpage. Counsel attests that each cited case, statute, and rule is real, exists, and stands for the proposition for which it is cited, and that none has been overruled, modified, or amended on that proposition except as expressly noted in the body of the Response.

3. Counsel preserves Counsel's obligations under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 with respect to every word filed.

<u>s/ Zachary L. Shiffler</u>
Zachary L. Shiffler

17

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Zachary L. Shiffler*
Zachary L. Shiffler