IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01854-JLK

JENNIFER MARIE O'CONNOR,

      Plaintiff,

v.

DAVID MULKEY and NATHAN LAGIGLIA in their individual capacities,

      Defendants.

---

**ANSWER AND JURY DEMAND**

---

Defendants David Mulkey and Nathan LaGilia, by and through their attorneys Heather K. Beattie and Graham L. Jackson of the Garfield County Attorney's Office, answer and response to Plaintiff Jennifer Marie O'Connor's Complaint [Doc. 1] as follows:

Any allegations or sub-allegation not specifically admitted or denied by Defendants are hereby denied.

**I.     ANSWERS TO PLAINTIFF'S "INTRODUCTION" ALLEGATIONS**

1.     This is a civil rights action seeking damages for the mistaken identity arrest and incarceration of Jennifer O'Connor, after officers falsely claimed that she was someone else for whom a warrant had been issued. Defendants saw Plaintiff O'Connor from a distance, assumed she looked like a different person, despite obvious biographical differences from the wanted person, and then unlawfully arrested her in violation of the Fourth Amendment. Making matters worse, the arresting officers knew that they had seized the wrong person before they took her to jail but failed to release her. After detaining her, they ran her car's license plate through DMV

1

and CCIC databases, which showed she was a different person. They also ran her fingerprints through an electronic database before they drove her to jail. Their records confirmed that the person in front of them had no warrant. Despite having ready access to and seeing demonstrable exculpatory evidence showing that she was not the wanted person the officers sought and she was not the person they had at first thought she was, they still arrested her while she was barefoot, drove her to jail, and held her overnight, despite her repeated pleas that they had the wrong person.

RESPONSE: Paragraph 1 is a summary statement of Plaintiff's claims for relief and contains speculative conclusory statements.  Defendants deny violating Plaintiff's Fourth Amendment rights.  The Defendants admit Jennifer Marie O'Connor, formerly known as Jennifer Marie Simpson, Plaintiff, is not the same person as Jennifer Elizabeth Simspon for whom the arrest warrant had been issued and under which they arrested Plaintiff.  Defendant Deputy Nathan LaGigilia ("Deputy LaGiglia") admits he drove Plaintiff to the Garfield County Jail ("Jail") and that she was not wearing shoes when she exited. Deputy Mulkey had secured a search warrant for the home she was in at 197 E. Carson Cir., Parachute, Colorado.  Defendants admit Plaintiff was admitted to the Jail from approximately 11:00 p.m. on Tuesday, July 30, 2024 to 5:30 a.m. on Wednesday, July 31, 2024. Defendants deny the remainder of the allegations in Paragraph 1.

2.    Jail staff ultimately realized the mistake and released her the next day around 5:00 a.m. with no phone, money, or transportation, wearing only one working flip-flop and one broken one. She walked for miles in the early morning hours, while she sought help from strangers, to return to where she was the prior night.

RESPONSE: Defendants admit that Jail staff verified Plaintiff's identity and released her from Jail around 5:30 a.m. with the property she was booked in with, in addition to a Jail issued sweatshirt and pair of flip flops. Defendants deny the remainder of the allegations contained in Paragraph 2.

3.      For these egregious and reckless civil rights violations, Ms. O'Connor seeks damages for the deprivation of her constitutional rights by Defendants, whose unlawful conduct caused her loss of liberty, pain and suffering, humiliation, emotional distress, indignities, economic harms, as well as ongoing fear of being the victim of another wrongful arrest that still haunts her to this day. Ms. O'Connor seeks punitive damages for the reckless indifference to her rights and callous disregard of the unnecessary suffering the officers caused.

RESPONSE: Paragraph 3 is a summary of Plaintiff's claims against Defendants and contains speculative conclusory statements of her alleged damages based on her claims that the Defendants violated her Fourth Amendment Rights. Defendants state that no response is required to the legal conclusions. To the extent a response is required, the Defendants state that Plaintiff is not entitled to the relief she seeks. Defendants deny they violated her constitutional rights. Defendants are without knowledge or information to form a belief as to the truth of the allegations made regarding Plaintiff's claim for damages.

## II.     ANSWERS TO PLAINTIFF'S JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims form part of the same case or controversy.

3

RESPONSE: Defendants do not dispute that the Court has jurisdiction to the extent Plaintiff has cognizable claims under state and federal law.

5.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in Colorado and a substantial part of the events giving rise to the claims occurred in this district.

RESPONSE: Defendants admit that venue is proper in Colorado.

### III.    ANSWERS TO PLAINTIFF'S "PARTIES" ALLEGATIONS

6.      Plaintiff Jennifer Marie O'Connor is a citizen of the United States who was born in and, at all relevant times, was a resident of Colorado.

RESPONSE: Upon information and belief, Defendants admit that Plaintiff is a resident of the State of Colorado.  Beyond that, and with respect to "all times relevant," Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 6.

7.      Defendant David Mulkey ("Mulkey") was, at all relevant times, a peace officer with the Special Problem Enforcement and Response ("SPEAR") Task Force operating in Garfield County, for and on behalf of the Garfield County Sheriff's Office. Defendant Mulkey acted under color of state law and in the course and scope of his employment. Plaintiff sues Defendant Mulkey in his individual capacity.

RESPONSE: Defendant Deputy David Mulkey ("Deputy Mulkey") admits he was acting in the course and scope of his employment as a peace officer with the Garfield County Sheriff's Office assigned to the SPEAR Task Force when he interacted with Plaintiff in the performance of his duties as a peace officer.

4

8.      Defendant Nathan LaGiglia ("LaGiglia") was, at all relevant times, an officer with the SPEAR Task Force operating in Garfield County, Colorado for and on behalf of the Garfield County Sheriff's Office. Defendant LaGiglia acted under color of state law and in the course and scope of his employment. Plaintiff sues Defendant LaGiglia in his individual capacity.

RESPONSE: Deputy LaGiglia admits he was acting in the course and scope of his employment as a peace officer with the Garfield County Sheriff's Office assigned to the SPEAR Task Force when he interacted with Plaintiff in the performance of his duties as a peach officer.

9.      Defendant Mike Tyler ("Tyler") was, at all relevant times, a supervising Commander with the SPEAR Task Force, operating in Garfield County, Colorado as a peace officer for and on behalf of the Garfield County Sheriff's Office. Defendant Tyler acted under color of state law and in the course and scope of his employment. He had a responsibility to oversee the actions of the other officers and to ensure their and his actions were within constitutional limits. Plaintiff sues Defendant Tyler in both his individual and supervisory capacities.

RESPONSE: Defendants deny Mike Tyler was acting in the course and scope of his employment as a peace officer with the Garfield County Sheriff's Office.  At the time Mike Tyler interacted with Plaintiff he was operating in the course and scope of his employment with the Rifle Police Department assigned to the SPEAR Task Force. Mike Tyler has been dismissed from this case and is no longer a party.

## IV.    ANSWERS TO PLAINTIFF'S "FACTUAL BACKGROUND"

10.     On July 30, 2024, Plaintiff Jennifer O'Connor was at the trailer home of Justin Raulerson at 197 E. Carson Circle in Parachute, Colorado.

RESPONSE: Defendants admit the allegations contained in Paragraph 10.

11.     Plaintiff O'Connor walked out to her car to get an item. She spent a few minutes rifling through her car before she returned to Mr. Raulerson's home.

RESPONSE: Defendants admit Plaintiff walked out to her car on or around 8:00 p.m. on July 30, 2024 and spent a few minutes at her car and then went back into Mr. Raulerson's home.

12.     Defendants Mulkey and LaGiglia were out on patrol in the area, driving through parking lots near Mr. Raulerson's home looking for people known to be wanted.

RESPONSE: Deputy Mulkey admits that he was patrolling the area around Mr. Raulerson's home as it was a known narcotics distribution house. The Defendants admit that their routine patrol includes looking for individuals with active warrants.

13.     As the Defendants drove through the parking lot near Mr. Raulerson's home, Defendant Mulkey briefly saw Ms. O'Connor from a distance walk to her car, open the door, and then return to Mr. Raulerson's trailer home.

RESPONSE: Deputy Mulkey admits that he observed the Plaintiff at her truck. He then observed her return to Mr. Raulerson's trailer home. The Defendants deny the remaining allegations in Paragraph 13.

14.     Ms. O'Connor was outside because she went to grab a bag from her car. She did not notice the police officers were there before she re-entered the trailer home.

RESPONSE: The Defendants are without knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 14.

15.     Defendant Mulkey asserted that he recognized Ms. O'Connor from prior contacts as a person named Jennifer Elizabeth Simpson.

6

RESPONSE:  Deputy Mulkey stated he, "observed a party I knew from previous law enforcement contacts as Jennifer Simpson (DOB 6/13/76)."

16.    Defendant Mulkey had never met or seen Jennifer Elizabeth Simpson in person before he arrested Ms. O'Connor.

RESPONSE: Deputy Mulkey admits he had never met Jennifer Elizabeth Simpson in person before July 30, 2024 when Plaintiff was arrested.

17.    Ms. O'Connor had never interacted, met, or spoken to any of the Defendants before the night they arrested her.

RESPONSE: Defendants admit the allegations in Paragraph 17.

18.    Defendant Mulkey's statements alleging he had seen Ms. O'Connor before and recognized her on July 30, 2024, were false statements.

RESPONSE: Defendants deny the allegations contained in Paragraph 18.

19.    Before Defendants arrested her, Ms. O'Connor had not as much as received a ticket in Garfield County.

RESPONSE:  Defendants are without knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 19; however, Defendants admit that none of Plaintiff's criminal history is Garfield County.

20.    Defendant Mulkey told LaGiglia and Tyler that Ms. O'Connor was Jennifer Simpson.

RESPONSE: Defendants admit the allegations contained in Paragraph 20.

21.    Defendant Mulkey searched CCIC databases for a "Jennifer Simpson" and found an outstanding warrant for "Jennifer Elizabeth Simpson," with a DOB of "6/13/76."

7

RESPONSE: Defendants admit that after Defendant Mulkey ran the license plate on Plaintiff's car and it returned to Jennifer Simpson and the CCIC system also returned a warrant for "Jennifer Elizabeth Simpson," with a DOB of "06/13/76."

22.     The officers contacted dispatch and confirmed the warrant issued on 7/18/24 by the Grand Junction Police Department in DKT#D0392024CR000730 was for "Jennifer Elizabeth Simpson," with a DOB of "6/13/76."

RESPONSE: Defendants admit they confirmed with dispatch the warrant was active for Jennifer Elizabeth Simpson.

23.     Defendants used the license plate from the vehicle they saw Ms. O'Connor enter to search DMV records for the registered owner.

RESPONSE: Deputy Mulkey admits he ran the license plate from the truck he saw Ms. O'Connor enter and retrieved the registration information from his Mobile Data Terminal ("MDT").

24.     Defendants saw that the vehicle was registered to 'Jennifer Marie Simpson' (O'Connor's former married name), who resided at a different address, and who had a different date of birth than the "Jennifer Elizabeth Simpson" for whom a warrant had been issued.

RESPONSE: Deputy Mulkey admits that the vehicle was registered to a "Jennifer Simpson." The Defendants deny the remaining allegations in Paragraph 24.

25.     At or around 8:30 p.m., Defendants began repeatedly banging on the sides of Mr. Raulerson's residence and on the front door without identifying themselves as law enforcement officers.

8

RESPONSE: Defendants admit that they began banging on the sides of Mr. Raulerson's residence and on the front door on or about 8:30 p.m. but deny that they did not identify themselves as law enforcement officers.

26.    This continued intermittently for approximately one hour.

RESPONSE:  Defendants admit that they banged on the door for a number of minutes and called out for "Jennifer" to exit the residence but deny that this continued intermittently for approximately one hour.  After the initial number of minutes, they ceased banging and maintained a perimeter of the residence and applied for a search warrant.

27.    At or around 9:30 p.m., Defendants began hitting the front door more forcefully and called for "Justin" to exit the residence with his hands up.

RESPONSE: Defendants admit that they again knocked on the door on or about 10:00 p.m. and forced the door open pursuant to the authorization in the search warrant. Defendants deny that they only called for "Justin," and aver that they called out "Sheriff's Office, come to the door now," "Search Warrant," and "Come out now." Defendants admit that they ordered Justin Raulerson to keep his hands up as he exited.

28.    After Mr. Raulerson complied, the officers placed Mr. Raulerson in handcuffs.

RESPONSE: Defendants admit that after Mr. Raulerson exited his home, he was placed in handcuffs.

29.    Defendants then called out for "Jennifer" to exit with her hands up.

RESPONSE: Defendants deny that they called out for "Jennifer" to exit with her hands up. Defendants stated to Plaintiff, "Jennifer, come out now, you're under arrest."

30.    Ms. O'Connor immediately complied with this order.

9

RESPONSE - Defendants deny the allegations contained in Paragraph 30 that Plaintiff "immediately" complied. Defendants began knocking and calling for "Jennifer" to exit the residence some 90 minutes before she complied.

31. Defendants then immediately placed Ms. O'Connor in handcuffs and led her to a law enforcement vehicle.

RESPONSE: Defendants admit when Plaintiff exited the home, she was placed in handcuffs and led to Deputy LaGiglia' s vehicle.

32. Ms. O'Connor asked the officers to explain why she was being detained and whether she was under arrest.

RESPONSE:  Defendants admit Plaintiff at one point asked, "what did I do?" and at another point "am I under arrest?" while on scene.

33. The officers told her that they had a warrant for her arrest.

RESPONSE: Defendants admit Plaintiff was told she had a warrant for her arrest.

34. The officers did not have a warrant for her arrest.

RESPONSE: Defendants admit the warrant was for Jennifer Elizabeth Simpson, not Jennifer Marie O'Connor or Jennifer Marie Simpson.

35. Ms. O'Connor immediately told the officers that there was no warrant for her arrest, and they had the wrong person.

RESPONSE: Defendant's admit Plaintiff stated "I don't think that's me" while on scene after being told there was a warrant for her arrest and deny the remaining allegations in Paragraph 35.

36. She repeated several times that she did not have a warrant, had done nothing wrong, and that they were arresting the wrong person.

RESPONSE: Defendants admit Plaintiff stated she did not believe she had done anything wrong and she did not believe she had a warrant and deny the remaining allegations in Paragraph 36.

37.     Defendants falsely claimed Ms. O'Connor had a Mesa County warrant for "child abuse."

RESPONSE: Defendants admit another deputy on scene mistakenly stated at the outset one of the charges on the warrant was for "child abuse."  Defendants deny either Deputy Mulkey or Deputy LaGiglia made such a statement.

38.     When Ms. O'Connor denied this, another officer stated that she had a warrant for "theft."

RESPONSE: Defendants admit another deputy on scene stated the warrant was for "theft." The Defendants deny the remaining allegations in Paragraph 38.

39.     Ms. O'Connor specifically informed the officers that her correct name was Jennifer Marie O'Connor, that her date of birth was June 23, 1977, and that she was not Jennifer Elizabeth Simpson, who was born in 1976, and was the person identified in the warrant.

RESPONSE: Defendants admit that Plaintiff stated her name was Jennifer O'Connor and deny the remaining allegations in Paragraph 39.

40.     Ms. O'Connor specifically told the officers that while she had previously used the name Jennifer Simpson years earlier when she was married, she returned to using her maiden name after she was divorced.

RESPONSE: Defendants admit that after the portable fingerprint scan results came back to Jennifer Marie O'Connor and Jennifer Marie Simpson Plaintiff admitted to Deputy LaGiglia that Simpson was her married name.

41.     Most importantly, Ms. O'Connor told the officers she was not Jennifer Elizabeth Simpson, the person they sought.

RESPONSE: Defendants admit the allegations to the extent that Plaintiff while in Deputy LaGiglia's vehicle on the way to the Jail stated her ex -husband's ex-wife, Jennifer Simpson, had been arrested a few weeks before. Defendants deny the remaining allegations in Paragraph 41.

42. Ms. O'Connor did nothing to give Defendants grounds to believe she had violated C.R.S. § 18-8-111.5, "False reporting of identifying information to law enforcement authorities."

RESPONSE: Defendants admit that they did not charge Plaintiff with a violation of C.R.S. § 18-8-111.5. The Defendants deny the remaining allegations in Paragraph 42.

43. Defendants did not claim that she had violated C.R.S. § 18-8-111.5 after she repeatedly told them that the person for whom they had an arrest warrant was someone else.

RESPONSE:  Defendants admit that they did not charge Plaintiff with a violation of C.R.S. § 18-8-111.5. The Defendants deny the remaining allegations in Paragraph 43.

44. At the arrest scene, before they drove her to jail, Defendant LaGiglia used a portable fingerprint scanner on Ms. O'Connor, scanning both of her index fingers. He used different readers to check her prints. Neither reader gave him any reasonable grounds to believe Ms. O'Connor was or could have been Jennifer Elizabeth Simpson, the person for whom Defendants had an arrest warrant.

RESPONSE: Defendants admit that Deputy LaGiglia used a portable fingerprint scanner on Plaintiff, scanning both of her index fingers. Deputy LaGiglia's portable fingerprint scanner's battery died, and he borrowed one from another deputy on scene.  The Defendants deny the remaining allegations in Paragraph 44.

45. The scan identified her as Jennifer O'Connor and confirmed her date of birth is June 23, 1977.

RESPONSE: Defendants admit that the scan identified her as Jennifer Marie O'Connor and Jennifer Marie Simpson with a date of birth of June 23, 1977.

46.     The officers had seen and knew from their viewing of the arrest warrant in the CCIC database that the person for whom the arrest warrant had been issued was born in 1976, had different biographical information, a different social security number, a different Sheriff's ID number, a different home address, and did not own the white Dodge pickup truck that Ms. O'Connor owned.

RESPONSE: Defendants admit the CCIC information on the MDTs showed the arrest warrant with a date of birth of June 13, 1976.  Defendants deny the remainder of the allegations contained in Paragraph 46.

47.     Fingerprint scans confirmed that Ms. O'Connor was not Jennifer Elizabeth Simpson, the subject of the arrest warrant.

RESPONSE: Defendants admit the fingerprint scans at the Jail confirmed that Plaintiff was not Jennifer Elizabeth Simpson, the subject of the arrest warrant.

48.     The fingerprint scans also confirmed there was no record that Ms. O'Connor was the subject of an active arrest warrant.

RESPONSE: Defendants admit the portable fingerprint scan returned a result for Jennifer Marie O'Connor and there was no active warrant for Jennifer Marie O'Connor.

49.     Defendant LaGiglia disregarded this exculpatory evidence and failed to take reasonable steps to make sure Defendants had seized the right person before driving her to jail.

RESPONSE: Defendants deny the allegations in Paragraph 49.

13

50.     The officers had ready access to the CCIC database from their squad car and knew they could double check and compare any of the biographical or phenotypical information for the person in front of them.

RESPONSE: Defendants admit that they had ready access to the CCIC database from the MDTs in their squad cars and could review the information associated with the arrest warrant.

51.     When reviewing photographs associated with the warrant, Defendants compared Ms. O'Connor to images of Jennifer Elizabeth Simpson and stated, "Yup close enough," dismissing obvious physical differences between the two women, such as height, weight, eye color, hair color, and tattoos.

RESPONSE: Defendants admit they reviewed a photograph associated with the arrest warrant for Jennifer Elizabeth Simpson.  Defendants deny the remaining allegations in Paragraph 51.

52.     Ms. O'Connor repeatedly offered to provide them with her Driver's License to show that they had the wrong person.

RESPONSE: Deputy LaGiglia admits that at some point during the contact Plaintiff offered to provide her Driver's License that was located inside 197 E. Carson Cir., Parachute, Colorado. Deputy Mulkey denies Plaintiff offered to provide him with her Driver's License.  Defendants deny the remaining allegations in Paragraph 52.

53.     Defendants refused the request and refused to look at her license.

RESPONSE: Defendants admit to the extent that they could not look at her identification based on the circumstances before them at that time.  Defendants deny the remaining allegations in Paragraph 53.

14

54.     Ms. O'Connor repeatedly asked officers to verify her identity by checking her Social Security number, but the officers ignored these requests.

RESPONSE: Defendants deny the allegations contained in Paragraph 54.

55.     Defendant Mulkey transported Ms. O'Connor to the Garfield County Jail in Glenwood Springs, approximately a 45-minute drive or a 20-hour walk from where they seized her.

RESPONSE: Defendants admit the Jail is located in Glenwood Springs and is approximately a 45-minute drive from 197 E. Carson Cir., Parachute.  Defendants deny the remaining allegations in Paragraph 54.

56.     While Defendants drove her to jail, Ms. O'Connor continued to explain to Defendant Mulkey that they had arrested the wrong person.

RESPONSE: Defendants deny that Deputy Mulkey drove Plaintiff to Jail and therefore deny the allegations related to Deputy Mulkey in Paragraph 56.  Deputy LaGiglia admits Plaintiff stated that she did not have a warrant for her arrest while he drove her to the Jail.

57.     Ms. O'Connor specifically asked Mulkey whether he would provide her transportation back to her vehicle once they discovered their mistake. Defendant Mulkey flippantly responded, "I doubt it."

RESPONSE: Defendants deny the allegations contained in Paragraph 57.

58.     Upon arrival at the Garfield County Jail, the intake officer asked Ms. O'Connor for her name, date of birth, and Social Security number. When Ms. O'Connor provided this information, the intake officer could see that none of it matched the information for Jennifer Elizabeth Simpson on the warrant.

RESPONSE: Defendants admit that name, date of birth, and social security numbers are common information requested in the Jail intake. The Defendants deny the remaining allegations in Paragraph 58.

59.     Despite the clear discrepancies in basic identifying information, jail staff processed Ms. O'Connor, booked her under the name of Jennifer Elizabeth Simpson based on the statements Defendants made about her, forced her to change into jail clothing, and put her in a cell.

RESPONSE: Defendants admit that Plaintiff was booked and processed in accordance with standard Jail practices. The Defendants deny the remaining allegations in Paragraph 59.

60.     Ms. O'Connor repeatedly requested that jail staff take her fingerprints to verify her identity. Jail staff initially refused, stating that the fingerprint system was closed for the night.

RESPONSE: Defendants are without knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 60.

61.     After continued requests, jail staff eventually took Ms. O'Connor's fingerprints, which confirmed, yet again, that she was not Jennifer Elizabeth Simpson.

RESPONSE: Defendants admit staff at the Jail took Plaintiff's fingerprints in accordance with their standard procedures.  This fingerprint process confirmed Plaintiff was not the individual for whom the warrant was active, Jennifer Elizabeth Simpson.

62.     Defendants eventually released Ms. O'Connor, at approximately 5:00 a.m., in one working flip-flop and one broken flip-flop, with no phone, no money, and no means of transportation back to her car in Parachute, which was 45-minutes away by car, 20 hours away on foot.

RESPONSE: Defendants admit that Plaintiff was released from the Jail at approximately 5:30 a.m. and that Parachute is approximately 45 minutes away from the Jail by car.  Defendants admit Plaintiff did not have a phone, purse, or shoes on when she exited 197 E. Carson Cir., Parachute prior to being transported to the Jail.  Defendants are without sufficient information or knowledge to form a belief as to the remaining allegations in Paragraph 62.

63.     After being released, Ms. O'Connor walked for approximately four hours, asking strangers to use their phones, before finally reaching someone who could help her get back to her car.

RESPONSE: Upon information and belief, Defendants admit that Plaintiff reached her ex-husband by phone at or around 8:00 a.m. on July 31, 2024 and he drove to Glenwood Springs and picked Plaintiff up outside the Glenwood Springs Train Station at approximately 9:30 a.m. Defendants deny the remaining allegations in Paragraph 63.

64.     Defendants failed to follow established police policies, procedures, and practices for investigating identification of individuals suspected of being someone for whom a warrant had been issued.

RESPONSE: Defendants deny the allegations in Paragraph 64.

65.     Defendants failed to follow established police policies, procedures, and practices for handling claims of mistaken identity by ignoring the exculpatory results of the fingerprint scanner, Ms. O'Connor's repeated assertions of innocence, and obvious discrepancies in identifying information.

RESPONSE: Defendants deny the allegations in Paragraph 65.

66.     Defendant Commander Tyler was present with the other officers when all material actions described above occurred. He participated in and oversaw the violations but failed to take reasonable supervisory action to review and correct the officers' conduct and intervene to prevent the constitutional violations.

RESPONSE:   Defendants admit that Mike Tyler was present with the deputies on scene at 197 E. Carson Cir., Parachute on July 30, 2024.  The Defendants deny the remaining allegations in Paragraph 66.

67.     Defendants, together, acted with reckless indifference, callous disregard, and deliberate indifference to Ms. O'Connor's constitutional rights by, *inter alia*:

(a) Asserting an identification match of two different people from a vague memory of prior contacts and a brief image of someone moving through a parking lot;

(b) Ignoring information mismatches in DMV records when comparing the owner of the white Dodge vehicle that Ms. O'Connor entered and the person for whom a warrant was issued;

(c) Failing to verify basic identifying information such as date of birth before arrest;

(d) Ignoring repeated and credible assertions of mistaken identity;

(e) Ignoring the exculpatory results of the fingerprint scanner;

(f) Continuing detention after re-confirming using fingerprints and reviewing credible government records that Ms. O'Connor was not the wanted person; and

(g) Releasing Ms. O'Connor without transportation or proper clothing at 5:00 a.m. on July 31, 2024, in front of the Garfield Sheriff's Office Jail, where it would take her about 45 minutes to drive or more than 20 hours to walk back to her car, which left her in a

much worse position than the position she was in where Defendants found her during the evening of July 30, 2024, before they unlawfully seized her and began to deprive her of her constitutional right to liberty without any legal authority or lawful justification.

RESPONSE:  Defendants deny the allegations contained in Paragraph 67(a) – (g).  Defendants did not act with reckless indifference, callous disregard or deliberate indifference to Plaintiff's constitutional rights on July 30, 2024.

## V.    ANSWERS TO PLAINTIFF'S "CLAIMS FOR RELIEF"

### ANSWERS TO PLAINTIFF'S FIRST CLAIM FOR RELIEF
**Fourth Amendment Violation**
*Unlawful Detention and Arrest* **Pursuant to 42 U.S.C. § 1983**
(Against all Defendants)

68.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

RESPONSE: No response is required as this is an incorporation paragraph.  To the extent a response is required Defendants incorporate by reference all the responses as if restated in their entirety.

69.    The Fourth Amendment to the United States Constitution protects the right of people to be secure in their persons against unreasonable seizures.

RESPONSE: This paragraph is a legal conclusion to which no response is required.  To the extent a response is required, Defendants admit the Fourth Amendment prohibits unreasonable seizures and the text of the Fourth Amendment speaks for itself.

70.     Defendants, acting under color of state law, unreasonably seized Ms. O'Connor without reasonable suspicion or probable cause to believe she was the person identified in the warrant for Jennifer Elizabeth Simpson.

RESPONSE: Defendants admit that Deputy Mulkey and Deputy LaGiglia were acting as peace officers in the performance of their duties.  Defendants deny the remaining allegations in Paragraph 70.

71.     At the time of Ms. O'Connor's arrest, Defendants knew that Ms. O'Connor was not Jennifer Elizabeth Simpson based on, *inter alia*:

   a.   The different date of birth (June 23, 1977, versus June 13, 1976);

   b.   Their different facial appearances;

   c.   Their different eye colors;

   d.   Their height difference;

   e.   Different DMV information, including different vehicle ownership, residential address, etc.

   f.   Different Sheriff's ID numbers, social security numbers, and other related information;

   g.   Ms. O'Connor's repeated assertions that she was not Jennifer Simpson;

   h.   The absence of any reasonable basis to believe Ms. O'Connor was Jennifer Simpson other than a similar name;

   i.   The fingerprint scanner confirming Ms. O'Connor was not Jennifer Simpson; and

   j.   The opportunities to easily verify Ms. O'Connor's identity through other readily available means.

20

RESPONSE: Defendants deny that they knew Plaintiff was not Jennifer Elizabeth Simpson at the time of Plaintiff's arrest.

72.    Defendants did not make a reasonable mistake based on a valid warrant for someone with the same name and identifying characteristics. Instead, Defendants unreasonably seized Ms. O'Connor despite obvious discrepancies in identifying information that they either knew or recklessly disregarded.

RESPONSE: Defendants deny the allegations in Paragraph 72.

73. Defendants ignored these discrepancies and concluded it was "close enough."

RESPONSE: Defendants deny the allegations in Paragraph 73.

74.    Defendants' conduct was objectively unreasonable under clearly established law, which recognizes that an arrest based on misidentification violates the Fourth Amendment when officers fail to make reasonable efforts to verify identity despite readily available means to do so.

RESPONSE: This paragraph is a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny their actions were objectively unreasonable under clearly established law.

75.    As a direct and proximate result of Defendants' unconstitutional conduct, Ms. O'Connor suffered damages as set forth in this Complaint.

RESPONSE: This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny their actions were unconstitutional.  Defendants are without sufficient information or knowledge to form a belief as to Plaintiff's damages or, if they exist, their direct and proximate cause.

21

**ANSWERS TO PLAINTIFF'S SECOND CLAIM**
**Colorado Enhanced Law Enforcement Integrity Act Violation of C.R.S. § 13-21-131 and**
**Article II, Section 7 of the Colorado Constitution**
*Unlawful Detention, Arrest, Incarceration*
*(*Against all Defendants)

76.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

RESPONSE: No response is required as this is an incorporation paragraph.  To the extent a

response is required Defendants incorporate by reference all responses as if restated in their

entirety.

77.    The Colorado Enhanced Law Enforcement Integrity Act, C.R.S. § 13-21-131, provides

that a peace officer who, under color of law, subjects or causes to be subjected any other person

to the deprivation of any individual rights secured by the Colorado Constitution is liable to the

injured party.

RESPONSE: This paragraph contains a legal conclusion to which no response is required.  To

the extent a response is required the Defendants admit that C.R.S. § 13-21-131 exists as provided

in the Colorado Revised Statutes and that the statute speaks for itself.

78.    Defendants, acting under color of law, deprived Ms. O'Connor of her rights under Article

II, Section 7 of the Colorado Constitution, which provides protections against unreasonable

searches and seizures equivalent to those under the Fourth Amendment to the U.S. Constitution.

RESPONSE: This paragraph contains a legal conclusion to which no response is required.  To

the extent a response is required Defendants admit Article II, Section 7 of the Colorado

Constitution provides protection against unreasonable searches and seizures and it speaks for

itself. Defendants admit they were acting as law enforcement officers executing their official

duties but deny they violated Plaintiff's rights under the Colorado Constitution.

79.     Defendants did not have an objectively reasonable belief that their conduct was lawful, as evidenced by, inter alia:

     a.  Their ignoring of obvious discrepancies between Ms. O'Connor and the person identified in the warrant, as identified above; and

     b.  Their continued detention and incarceration of Ms. O'Connor even after fingerprint scanner and credible government records confirmed she was not Jennifer Elizabeth Simpson.

RESPONSE: This paragraph contains a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations and assumptions in Paragraph 79.

80.     Under C.R.S. § 13-21-131(2)(b), Defendants cannot claim qualified immunity as a defense to this claim.

RESPONSE: This paragraph contains a legal conclusion to which no response is required.  To the extent a response is required the Defendants admit that C.R.S. § 13-21-131(2)(b) exists as provided in the Colorado Revised Statutes and it speaks for itself.

81.     As a direct and proximate result of Defendants' unconstitutional conduct, Ms. O'Connor suffered damages as set forth in this Complaint.

RESPONSE: This paragraph contains legal conclusions to which no response is required.  To the extent a response is required Defendants deny their actions were unconstitutional.  Defendants are without sufficient information or knowledge to form a belief as to Plaintiff's damages or, if they exist, their direct and proximate cause.

**RESPONSES TO DAMAGES SOUGHT AGAINST
DEFENDANTS MULKEY AND LAGIGLIA**

Defendants deny that Plaintiff has a legal or factual basis for any of her claims.

Defendants are without sufficient information or knowledge to form a belief as to Plaintiff's

damages, if they exist. To the extent a response is required to the Plaintiff's Prayer for Relief

Paragraphs A through E, Defendants object to any order or award in favor of Plaintiff.

**DEFENSES AND AFFIRMATIVE DEFENSES**

1. Any and all of Plaintiff's averments and sub-averments not specifically admitted are
hereby denied.

2. Further, when a party states that he lacks knowledge or information sufficient to form a
belief or opinion about the averment, such statement has the effect of a denial under F.R.C.P.
8(b)(6).

3. Plaintiff, not Defendants, bears the burden of establishing each and every allegation and
element of her claims and her prayers for relief, and any attempt to shift the burden from Plaintiff
to Defendants is improper.

4. Defendants had probable cause to belief Plaintiff was the individual sought in the
warrant. The actions of Defendants were reasonable and lawful and based upon information
provided to them under the "Fellow Officer Rule" which established probable cause for the
contact with the Plaintiff.

5. If the determination of probable cause, then existing was somehow erroneous based upon
later arising information or otherwise, Plaintiff's claims are still limited or barred based on good-
faith, but later-revealed erroneous belief in the lawfulness of the alleged conduct.

6.      Plaintiff has repeatedly asked the Defendants why they have not apologized.  The Defendants assert that relief is not an available legal remedy in this lawsuit.

7.      This Court lacks subject matter jurisdiction because Plaintiff has failed to state a claim that rises to the level of deprivation of a federal or state constitutional right.

8.      Plaintiff fails to state a claim under which relief may be granted.

9.      Plaintiff's federal claims may be barred or limited by the common law doctrine of qualified immunity. Defendants, to the extent they are properly sued in their individual capacity under federal law, are entitled to qualified immunity inasmuch as their actions did not violate the constitutional rights of the Plaintiff, did not violate clearly established law at the time of the events at issue, and were undertaken with a good faith belief in the lawfulness of their actions. The actions of Defendants were objectively reasonable given their training and experience and under the circumstances with which they were confronted.

10.     On July 30, 2024 Plaintiff was accorded all rights, privileges and immunities guaranteed to her by the federal and state constitution and laws of the state of Colorado.  The actions of Defendants were legally privileged, authorized and in furtherance of legitimate law enforcement purposes.

11.     Plaintiff's claims are barred, in whole or part, by remaining applicable doctrines of immunity not limited by statute.

12.     Defendants are entitled to common law good faith immunity afforded to public employees as to Plaintiff's claim pursuant to C.R.S. § 13-21-131.

13.     Plaintiff's claims may be barred or limited by the doctrine of legal justification.

14.     Plaintiff's damages, if any, may have been caused by an intervening or superseding cause(s).

15.     Plaintiff has failed to reasonably mitigate her damages, if any.

16.     Plaintiff's injuries, damages, and losses, if any, were the result of Plaintiff's own negligent, intentional, and/or unlawful conduct, which negligent, intentional, and/or unlawful conduct operates to bar or reduce the liability of the Defendants, if any.

17.     Defendants' actions were not the cause of the injuries or damages alleged by Plaintiff.

18.     Plaintiff's damages, if any, are not to the extent and nature as alleged by Plaintiff.

19.     Plaintiff's damages, if any, may have been caused by the actions of one or more non-parties over whom Defendants had no right of control, and Defendants reserve the right to designate one or more non-party's fault.

20.     Plaintiff lacks sufficient cause to assert punitive or exemplary damages.

21.     Defendants have not knowingly or intentionally waived any applicable affirmative defenses.

22.     Defendants reserve the right to add additional affirmative defenses as discovery and the case proceeds.

## JURY DEMAND

Defendants demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

Defendants respectfully request this Court enter judgment in their favor, dismiss Plaintiff's Complaint with prejudice, deny Plaintiff's prayer for relief and award Defendants

costs and expenses, and otherwise grant any other such relief this Court determines just and

proper.

Submitted June 2nd, 2026

By: */s/ Heather K. Beattie*            
Heather K. Beattie, County Attorney
Graham L. Jackson, Deputy County Attorney
Garfield County Attorney's Office
108 8th Street, Suite 219
Glenwood Springs, CO 81601
Telephone: (970) 945-9150
Fax: (970) 384-5005
E-mail: gjackson@garfieldcountyco.gov
E-mail: hbeattie@garfieldcountyco.gov
*Attorneys for Deps. Mulkey & LaGiglia*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2nd, 2026, I filed the foregoing **ANSWER AND JURY DEMAND** via CM/ECF which will serve a true and correct copy upon the following:

Edward C. Hopkins Jr.                         Raymond K. Bryant
Civil Rights Litigation Group                 Civil Rights Litigation Group
1543 Champa Street, Suite 400                 1543 Champa Street, Suite 400
Denver, Colorado 80202                        Denver, Colorado 80202
T: 720.515.6165                               T: 720.515.6165
F: 720.465.1975                               F: 720.465.1975
E: ed@rightslitigation.com                    E: raymond@rightslitigation.com
*Attorney for Plaintiff*                      *Attorney for Plaintiff*


*/s/Danni Veals*
Danni Veals, Paralegal
Garfield County Attorney's Office