**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-01854-JLK-KAS

JENNIFER MARIE O'CONNOR,

    Plaintiff,

v.

DAVID MULKEY, and
NATHAN LAGIGLIA,

    Defendants.

---

**PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S JUNE 10, 2026, ORDER [DOC. 43] GRANTING THE MOTION TO QUASH SUBPOENAS OF NON-PARTIES COLORADO BUREAU OF INVESTIGATION, COLORADO CRIME INFORMATION CENTER, AND DEPUTY DIRECTOR DAN VOLZ**

---

Plaintiff objects to Magistrate Judge Starnella's June 10th order (Doc. 43) quashing both of Plaintiff's Rule 45 document subpoenas, which seek documents from the state CCIC database that are central to liability and the piercing of qualified immunity in this civil rights (mistaken identity) arrest case. The order rests on one premise. As the Magistrate Judge stated it, that the state being compelled to comply with a subpoena "is the type of judicial process that the 11th Amendment affords immunity." Ex. 1 (Hearing Transcript) at 27:18–20 (June 10, 2026). She drew that premise from a single district court decision, "Judge Blackburn's reasoning" in *Butler-Moore v. Garcia. Id.* 27:13–17. *Butler-Moore* in turn took the premise from *Bonnet v.*

1

*Harvest (U.S.) Holdings, Inc.*, a tribal-immunity case that resolved no question about a State. 741 F.3d 1155, 1159 (10th Cir. 2014) ("We review de novo the legal question whether the Tribe, as a non-party, is entitled to tribal immunity from a subpoena duces tecum."). The premise is contrary to law, practice, and historical understanding. On a legal and jurisdictional question, review is de novo.

Sovereign immunity protects a State from being hailed into federal court as a defendant, made to answer a private party's complaint and to have its liability adjudicated. It is not a one-way evidentiary privilege. A non-party document subpoena for existing records names no defendant, demands no answer, seeks no judgment, and imposes no liability on the State. The Eleventh Amendment draws its line at "any suit in law or equity, commenced or prosecuted against one of the United States." U.S. Const. Amend. XI. A request that the custodian of a database supply copies of relevant government or public records is not that suit.

The stakes are concrete and serious. Plaintiff was mistakenly associated with a warrant seeking a differently named "Jennifer," and arrested. The defendant officers defend that arrest by what they claim to have seen from their in-car computer screens, accessing CCIC records. But the officers and the police department have failed to produce the relevant records that they admit they saw and allege they relied on, claiming that they are not within their custody and control. On February 13, 2026, CBI (the state agency that manages access to CCIC) responded to a defense counsel request for a summary list of the queries the officers made in CCIC. When Plaintiff

2

asked CBI for the complete records stemming from those searches, including the information actually returned from each of those list of queries, CBI refused to voluntarily produce them to Plaintiff's counsel, refused to respond to a subpoena, and invoked 11th Amendment immunity, which it argues completely protects it from any duty to produce records for a federal court's judicial process. The Magistrate Judge's ruling lets a state agency arm defendant officers on one side of a federal lawsuit with partial records that illusorily aid it, while hiding from the other side a full and fair view of the evidence the officers relied on at the heart of their probable cause and qualified-immunity inquiries. A rule that makes dispositive evidence available only to the defense does not protect a State's dignity. It promulgates unfair federal judicial processes. It converts qualified immunity into an unfalsifiable defense, and it forecloses the proof in every civil-rights case that turns on state-held records.

Three legal grounds each require reversal, and the record confirms why it matters. First, a Rule 45 document subpoena is not a "suit" against a State. Second, the subpoena to Deputy Director Volz is enforceable for an independent reason: *Bonnet*'s footnote 1 ("neither a state nor a tribe would appear to be immune from a discovery request served on the appropriate agency official") is the Tenth Circuit's only guidance on the issue and confirms the subpoena's enforceability, despite Magistrate Judge Starnella's rejection of it by applying the wrong test. Third, the Eighth Circuit's most recent decision rejects the categorical bar the Magistrate Judge adopted and leaves a non-disruptive document subpoena like this one outside it. And

the records are the merits of the qualified-immunity defense, available nowhere else, as the Magistrate Judge's own ruling confirms. The Court should set aside Doc. 43 and order production.

## STATEMENT OF FACTS

Plaintiff brings a mistaken-identity-arrest claim under 42 U.S.C. § 1983 and C.R.S. § 13-21-131. On July 30, 2024, officers in Parachute, Colorado, arrested her as Jennifer Elizabeth Simpson, the woman named in the warrant, even though the fingerprint scanner identified her as Jennifer Marie O'Connor and the CCIC return showed a different date of birth, a different Sheriff's ID, and a different Social Security number. Doc. 1 ¶¶ 10–67. Defendants Mulkey and LaGiglia have answered and demanded a jury. Doc. 42.

Defendants ground their defense in qualified immunity, which they rest on what the officers saw in CCIC and understood from the fingerprint scan. Doc. 14 at 8–10. The defense theory turns on the content, timing, and sequence of the database returns.

On February 13, 2026, CBI Deputy Director Daniel Volz voluntarily produced records of those database events. Signing as "Deputy Director, Colorado Bureau of Investigation," he emailed Garfield County Sheriff Lou Vallario and defense counsel a table of every CCIC query run by every officer involved in Plaintiff's arrest and continued detention, by officer, query type, and timestamp, across July 30 and 31, 2024. Doc. 41-1. That production is a log of inputs. It records who queried what and

4

when. It does not contain the returns, what the officers saw on the screen, which is what they claim they relied on, or the system and training records the subpoenas also seek.

In April 2026, Plaintiff served two Rule 45 document subpoenas, each carrying the same 10-subpart attachment. Doc. 33-1 (to "Colorado Crime Information Center c/o Dan Volz"); Doc. 33-2 (to Dan Volz). Both command production of documents, not testimony. The subparts seek, among other records, the CCIC search traffic for this arrest, "including inputs and outputs" (subpart (a)); the returns "in the form as it would have appeared to those who made the request" (subpart (j)); the DMV and AFIS data available on the date of arrest (subparts (e), (i)); and the user guides, query-type documentation, and training records that explain what the officers' queries returned (subparts (f)–(h)). Doc. 33-3 ¶ 3.

CBI, CCIC, and Volz, through the Colorado Attorney General, moved to quash on Eleventh Amendment grounds. They asserted that a subpoena is a "suit" against the State, that "the Court lacks subject-matter jurisdiction over the Subpoenas," and that compliance would take 120 hours. Doc. 33 at 1; Doc. 33-3 at 8.

After a hearing, the Magistrate Judge granted the motion "for the reasons as stated on the record." Doc. 43. She found "Judge Blackburn's reasoning is sound in *Butler-Moore v. Garcia*" and "no reason to depart from his conclusion that . . . being compelled to comply with a subpoena is the type of judicial process that the 11th Amendment affords immunity." Ex. 1 at 27:13–20. She then ran the three recognized

5

exceptions to immunity and found none satisfied: no consent, because Volz's "voluntary provision of information outside of the formal discovery process" was not consent to suit, *id.* 27:23–28:14; no congressional abrogation, *id.* 28:15–20; and no *Ex parte Young*, because "the subpoena is not looking to get CCIC to stop doing anything" and neither CCIC nor Volz is a defendant, *id.* 28:21–29:11.

The Magistrate Judge addressed the Volz subpoena directly. She held that Volz "has access to the CCIC database by virtue of his official responsibilities" and "does not have authority in his individual capacity," so to the extent the records are sought "from him in his official capacity, he falls within 11th Amendment immunity protections because . . . the subpoena is seeking to compel production and it's not seeking to stop any alleged violations of constitutional law." *Id.* 29:21–30:6. She analogized to prisoner deliberate-indifference cases, in which "the medical records are obtained from the Department of Corrections," not "the individual defendants." *Id.* 29:14–20. On cost, she relied on "120 hours" of state-employee time, *id.* 30:7–15, but later fixed the ground of her ruling. Asked whether production could proceed if Plaintiff paid the State's costs, she answered that the records "are unavailable because of the 11th Amendment immunity," and that "even if there was no issue with the plaintiff paying the State to gather these documents, that is still piercing the 11th Amendment immunity protections." *Id.* 35:09–24.

The Magistrate Judge spent little time on *Bonnet*'s footnote 1, noting only that "Plaintiff concedes that Footnote 1 is dicta." *Id.* 31:16–18. She did not address

6

Plaintiff's textual or historical argument. She doubted that the defendant officers could be ordered to produce the CCIC records, observing that the records belong to CCIC and that Garfield County's access does not reach "all purposes they desire." *Id.* 26:20–27:3. For an alternative, she pointed to "depositions of the defendants" and to confronting them with "incident reports, police reports . . . separate and apart from . . . the CCIC database." *Id.* 34:11–16, 36:19–25. Plaintiff's counsel explained that the officers had been deposed and answered "I don't recall," *id.* 35:25–36:13; the Magistrate Judge acknowledged "there's some merit to that because time has passed." *Id.* 36:16–17.

The parties conferred under D.C.COLO.LCivR 7.1(a) before the motion and the hearing, but the dispute was not resolved. Plaintiff brings this objection under Fed. R. Civ. P. 72(a).

## STANDARD OF REVIEW

A district judge must "modify or set aside any part of" a magistrate judge's order on a non-dispositive matter that is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). An order is contrary to law when it applies an incorrect legal standard or misapplies the correct one, and on a question of law the magistrate judge's conclusion receives no deference. The question Doc. 43 decided, whether the 11th Amendment bars a Rule 45 subpoena to a state agency and its appropriate official, is a pure question of law, and a jurisdictional one. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (an assertion of Eleventh

Amendment immunity "concerns the subject matter jurisdiction of the district court"). CBI agreed below that the issue is jurisdictional. Doc. 33 at 4. Review is therefore de novo.

Plaintiff also preserves the alternative that the order is effectively dispositive. By foreclosing the only avenue to records that are dispositive of the qualified-immunity defense, the order disposes of Plaintiff's ability to meet that defense and is reviewable de novo under 28 U.S.C. § 636(b)(1)(B) and Rule 72(b). The standard does not change the result. An order that rests on the wrong legal test is contrary to law under any standard of review.

## ARGUMENT

### I.    A RULE 45 DOCUMENT SUBPOENA FOR EXISTING RECORDS IS NOT A "SUIT" AGAINST A STATE

The Eleventh Amendment withdraws the federal judicial power over "any suit in law or equity, commenced or prosecuted against one of the United States." U.S. Const. amend. XI. "Given the long common law tradition of acquiring evidence via subpoena and precedent dating from between the late 1700s and early 1800s that discuss subpoenas directed at governmental officials that were utilized by our earliest courts, … the historical evidence suggests that issuance of a subpoena to a state official would not have been 'anomalous and unheard of when the Constitution was adopted.'" *Cuomo v. Office of the N.Y. State Att'y Gen.*, 754 F. Supp. 3d 334, 355 (E.D.N.Y. 2024) (quoting *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 452 (2004)).

8

The Magistrate Judge treated a non-party document subpoena as such a suit, adopting Judge Blackburn's conclusion that compelled subpoena-compliance is immunized "judicial process." Ex. 1 at 27:18–20. That conclusion traces to *Bonnet*, which drew the equation of "suit" with "any judicial process" from federal sovereign-immunity law, not from the Amendment. The equation does not fit. Even accepting that state sovereign immunity is structural and reaches beyond the Amendment's literal text, *Alden v. Maine*, 527 U.S. 706, 713 (1999), the interest the doctrine protects is not implicated by a request for records.

Sovereign immunity guards a State against the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties, that is, against being made a defendant. *Id.* at 749 (citation omitted). The Supreme Court has identified the operative feature: immunity bars a proceeding akin to a civil suit against the State, one requiring the State "to answer the complaints of private parties." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002). The "specific indignity against which sovereign immunity protects is the insult to a State of being haled into court without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 258 (2011). A Rule 45 document subpoena has none of these features. It commences no complaint against the State, demands no answer or defense, adjudicates no liability, and yields no judgment. It asks a records custodian to hand over documents.

The order's contrary reasoning, that the subpoena "compels the State to act,"

9

borrows the language of *Dugan v. Rank* without its meaning. *Dugan* holds that a suit is against the sovereign when the judgment sought would restrain the Government from acting, or to compel it to act. 372 U.S. 609, 620 (1963). That rule governs decrees that direct or restrain governmental power, closing an institution, enjoining a project, dictating how an agency operates. Producing existing query logs is none of that. It works no judgment against the treasury, restrains no governance, and dictates no agency operations. The contempt power that backs every subpoena does not change the analysis. The coercion sovereign immunity forbids is the coercion to appear and answer as a defendant. The contempt that enforces a subpoena runs against a custodian who defies a lawful production order, not against the State's policy choices. *Bonnet* drew the line in the same place. "[I]f a subpoena were served on a tribal official, rather than the Tribe, . . . neither *Dugan* nor *Larson* would be triggered." *Bonnet*, 741 F.3d at 1162 n.1. A subpoena served on a state official for the State's records is no different.

The order's foundation is based on the following inference: because a subpoena is a "suit" triggering tribal immunity, and tribal immunity is "more limited" than a State's, a subpoena must be a "suit" triggering state immunity. *Id.* at 1160–61. The inference fails at its root. *Bonnet*'s premise, that "any judicial process" is a "suit," is not drawn from the Eleventh Amendment. It comes from federal sovereign-immunity law: "the term 'suit' embodies the broad principle that the government is not subject to 'legal proceedings, at law or in equity' or 'judicial process' without its consent."

10

*United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 931 (10th Cir. 1996) (quoting *Belknap v. Schild*, 161 U.S. 10, 16 (1896)). Federal sovereign immunity sweeps over "any judicial process." The Eleventh Amendment's protection is narrower. Even as a structural principle, it guards against being haled in as a defendant to answer for the State's conduct, not against producing evidence. Importing the federal-immunity breadth of "any judicial process" into that narrower protection is the order's central error. Tribal and state immunity are not interchangeable. Tribal immunity "is not congruent with that which the Federal Government, or the States, enjoy." *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1104 (8th Cir. 2012) (quoting *Three Affiliated Tribes v. Wold Eng'g*, 476 U.S. 877, 890 (1986)).

Read correctly, a non-party records subpoena does not offend the Eleventh Amendment. Courts have enforced such subpoenas against state agencies. When a state agency sought by mandamus to quash a third-party document subpoena, the Eighth Circuit denied relief, holding that production neither infringed the State's autonomy nor threatened its treasury. *In re Mo. Dep't of Nat. Res.*, 105 F.3d 434, 436 (8th Cir. 1997). The Seventh Circuit agrees that ancillary discovery orders "do not compromise state sovereignty to a significant degree" and so "do not violate the Eleventh Amendment." *Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008) (Posner, J.). And the district courts to confront the precise question, a Rule 45 subpoena to a non-party arm of the State, have enforced it, because "[a] federal court's enforcement

11

of a subpoena against a state agency does not significantly infringe on federalism's promise of dual independent sovereigns. As such, courts throughout the county have found that a federal subpoena against a third-party state agency does not constitute 'a suit against the sovereign' for the purposes of state sovereign immunity and thus does not invoke the doctrine's protections." *Charleston Waterkeeper v. Frontier Logistics, L.P.*, 488 F. Supp. 3d 240, 250–51 (D.S.C. 2020).

History points the same way. The early-republic record shows subpoenas to public officials functioning as ordinary evidence-gathering tools, not forbidden suits against sovereigns. *Cuomo v. Office of the N.Y. State Att'y Gen.*, 754 F. Supp. 3d 334, 355 (E.D.N.Y. 2024) (reviewing historical record).

What remains is a single nonbinding district decision resting on a tribal-immunity hedge. *Bonnet*'s body text said only that the Eleventh Amendment "may well" shield a state agency, a hedge, in a tribal case, that decided nothing and answered no question presented. 741 F.3d at 1161. *Butler-Moore* treated that dictum as settled and extended it to bar a non-party records subpoena. A single district court's reading of a circuit hedge does not bind this Court. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). On de novo review it does not survive the Amendment's text, and quashing on that basis was contrary to law.

## II.   QUASHING THE SUBPOENA TO DEPUTY DIRECTOR VOLZ WAS INDEPENDENT ERROR, BECAUSE THE MAGISTRATE JUDGE APPLIED *EX PARTE YOUNG*'S MERITS TEST TO A RECORDS SUBPOENA THAT SEEKS NO RELIEF AGAINST THE STATE

Even if a subpoena to CBI as an entity raised an immunity question, the

subpoena to Deputy Director Volz did not. The Magistrate Judge rejected it on a single ground: that the subpoena "is seeking to compel production and it's not seeking to stop any alleged violations of constitutional law." Ex. 1 at 30:04–06. That is the test for *Ex parte Young*, which lets a plaintiff sue a state official as a defendant only for prospective relief against an ongoing violation of federal law. Plaintiff is not suing Volz. She subpoenaed him as the custodian of records. The *Ex parte Young* merits elements have no role in that question, and *Bonnet*'s footnote 1 addresses the official-directed subpoena directly.

The footnote's reasoning is the answer to the Magistrate Judge's. *Bonnet* explained that when a subpoena is served "on the appropriate agency official, rather than on the agency itself," "neither *Dugan* nor *Larson* would be triggered." *Bonnet*, 741 F.3d at 1162 n.1. The footnote invokes *Ex parte Young* for one point only, the structural distinction between an official and the entity, and then applies the operative test: whether a judgment would expend the treasury or compel or restrain the government. For a records subpoena, it would not. The body text frames the same point. The court saw "no reason why an Indian tribe should be able to 'shut off an appropriate judicial demand for discovery' served on a[n] official, rather than against the [entity] itself." *Id.* at 1162 (quoting *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 472 (1951) (Frankfurter, J., concurring)). Volz is that official. He maintains and can access the CCIC system, and he produced the query log to the defense once. Doc. 33-3 ¶¶ 1, 5; Doc. 41-1.

The right question is whether the State is the real party in interest, and the answer turns on the judgment, not the records. "The critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab." *Lewis v. Clarke*, 581 U.S. 155, 161 (2017). A document subpoena yields no judgment that binds the State. It imposes no liability, orders no payment from the treasury, and adjudicates nothing against CBI. This Court has described the bar the same way: the Eleventh Amendment attaches when an action is "in essence one for recovery of money from the state." *Verner v. State of Colo.*, 533 F. Supp. 1109, 1112 (D. Colo. 1982) (Kane, J.). A subpoena for records seeks no recovery of money from the State. Whether Volz can access the records "in his individual capacity," the question the Magistrate Judge and CBI pressed, is beside the point. The footnote-1 path does not turn on an individual-versus-official label. It turns on the absence of any judgment against the State.

The two decisions the Magistrate Judge invoked for the capacity point do not bridge that gap. Both concern claims for relief that only an official could grant. In *Smith v. Plati*, Judge Kane held that an athletic-department official could not be sued in his individual capacity for media access because "only in his official capacity could [he] provide [the plaintiff] with the relief he desires." 56 F. Supp. 2d 1195, 1203 (D. Colo. 1999). And in *Native American Distributing v. Seneca-Cayuga Tobacco Co.*, the Tenth Circuit explained that officials are immune from suits brought against them "because the powers they possess in those capacities enable them to grant the

14

plaintiffs relief on behalf of the tribe." 546 F.3d 1288, 1297 (10th Cir. 2008). Each turned on the relief sought. A subpoena for records seeks no relief on the sovereign's behalf. It seeks evidence, and it binds no one by a judgment.

CBI's remaining real-party authorities are liability holdings that do not reach a records subpoena. *Pennhurst* barred a federal court from ordering state officials to conform their conduct to state law, a direct intrusion on how the State governs. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). And *Kentucky v. Graham* holds that an official-capacity action is "in all respects other than name, to be treated as a suit against the entity," a rule about who bears liability on a judgment. 473 U.S. 159, 166 (1985). Producing existing query logs orders CBI to do nothing but hand over records it already keeps. It expends no treasury, directs no operations, and imposes no liability. The proposition each case stands for is not engaged.

That leaves *Butler-Moore* II, the only decision to read *Bonnet*'s footnote the other way. *Butler-Moore v. Garcia*, 2026 WL 915117 (D. Colo. Apr. 2, 2026). It does not control here, for three reasons. First, it is a single district-court decision, not binding, *Camreta*, 563 U.S. at 709 n.7. Second, it beat a version of the official path Plaintiff does not run. It read footnote 1 as a classic *Ex parte Young* argument and faulted it for seeking no prospective relief, the same misstep the Magistrate Judge made, and it never engaged the real-party reasoning that *Dugan* and *Larson* are not triggered when no judgment binds the State. Third, it applied *Dugan* and *Larson* to

an official-directed subpoena, the precise move *Bonnet* said those cases do not support. *Compare Butler-Moore* II, 2026 WL 915117, at *3, *with Bonnet*, 741 F.3d at 1162 n.1. The earlier *Butler-Moore* decision decided even less. The plaintiff there conceded that immunity bars subpoenas and litigated only a statutory-waiver theory. *Butler-Moore v. Garcia*, 815 F. Supp. 3d 1206, 1208 (D. Colo. 2025).

On the official-directed subpoena, *Bonnet*'s guidance is direct, and it favors Plaintiff. Quashing the Volz subpoena was contrary to it.

### III.  A CIRCUIT SPLIT EXISTS REGARDING THE APPLICATION OF ELEVENTH AMENDMENT IMMUNITY WHEN A STATE IS SERVED WITH A SUBPOENA.

The United States Courts of Appeals are split on whether the Eleventh Amendment bars a subpoena served on a state in a Section 1983 case. The Tenth Circuit has not yet chosen a path. Based on the circuit split, three options are available: (1) a subpoena is not a suit, and sovereign immunity does not apply; (2) sovereign immunity prohibits "disruptive" subpoenas served on a state; and (3) sovereign immunity prohibits any judicial process against a state, including subpoenas. This Court should follow the First Circuit and choose the first option.

**First Circuit**. In *United States Department of Justice v. Ricco Jonas*, 24 F.4th 718 (2022), the First Circuit held that the Eleventh Amendment did not bar enforcement of a DEA administrative subpoena served on a New Hampshire state official in her official capacity. The subpoena sought prescription drug monitoring records. The court rejected the argument that New Hampshire was the subpoena's

"true target" and that the enforcement proceeding did not involve a claim in law or equity against the State of New Hampshire, and that no judgment would be issued against the state that could have any conceivable effect on the state treasury. The court further emphasized that courts have consistently rejected the invitation by state officers to blur the distinction between state officers and the states, and that service of process on state officers for the production of documents in their possession does not constitute a direct action against the state. District courts across the country have also followed this reasoning. *See, e.g.*, *Cuomo*, 754 F. Supp. 3d at 351-57; *Charleston Waterkeeper v. Frontier Logistics, L.P.*, 488 F. Supp. 3d 240 (D.S.C. 2020); *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1079 (E.D. Cal. 2008).

**Eighth Circuit**. Two months before the hearing in this case, the Eighth Circuit decided this question and rejected the categorical rule the Magistrate Judge adopted. Confronting a third-party discovery subpoena to a state patrol, and a brief from 24 States urging a categorical bar, the court refused it: "We reject [the] argument for a converse categorical ruling, that state sovereign immunity shields States from all third-party discovery subpoenas." *Mick v. Gibbons*, 171 F.4th 1097, 1105 (8th Cir. 2026). Whether immunity applies, the court held, is a "fact-intensive inquir[y] that turn[s] on the circumstances of a particular case and the third-party discovery subpoena at issue," and "at least in some instances, a State may not invoke its Eleventh Amendment immunity when refusing to comply with a non-disruptive third-party discovery subpoena." *Id.* at 1104–05. The court quashed the subpoena

17

before it, but on facts that mark the opposite end of the line: a Rule 30(b)(6) deposition that would have required the State to designate and prepare five employees to testify on six sensitive training topics, a burden the court accepted "could consume over 100 hours of taxpayer funded time." *Id.* at 1104–05.

The court drew the line itself, contrasting the burdensome deposition with "the simple document subpoena in *Missouri DNR* that was a narrow and minimally disruptive third-party request." *Id.* at 1105. The agency in *Mick* complied with the document subpoena and resisted only the deposition. *Id.* (Erickson, J., concurring in the judgment). Plaintiff seeks documents, not testimony: the existing CCIC query records the agency generated and produced to the defense in a single email, Doc. 41-1, plus the returns and system records that complete the same database event. A subpoena whose core the agency produced to the defense in a single email does not disrupt state governance, commandeer state officials, or threaten the treasury. It is the document subpoena *Mick* describes, not the multi-witness deposition *Mick* quashed.

**Fifth Circuit**. In *Russell v. Jones*, the Fifth Circuit held that sovereign immunity barred subpoenas served on state court judges in their official capacity in connection with a challenge to a county bail schedule. 49 F.4th 507, 512-16 (2022). The court reasoned that sovereign immunity respects a broader berth than just suits against states as defendants, and that the very object and purpose of the Eleventh Amendment is to prevent the indignity of subjecting a state to the coercive process of

18

judicial tribunals at the instance of private parties. The Fifth Circuit noted that it was not deciding whether *Ex parte Young* permits third-party subpoenas against agency officials, "because the parties d[id] not discuss this theory." *Russell v. Jones*, 49 F.4th 507, 520 n.13 (5th Cir. 2022).

## IV.   THE RECORDS ARE NECESSARY AND AVAILABLE NOWHERE ELSE, AS THE MAGISTRATE JUDGE'S OWN RULING CONFIRMS.

The order does not merely misread the Eleventh Amendment. It leaves Plaintiff no way to prove her case. Rule 34 reaches only what the defendant officers possess or control, and the records the subpoenas seek are CBI's, not the officers'. The officers have the February log of inputs. They do not have the returns, "in the form as it would have appeared to those who made the request," Doc. 33-3 ¶ 3(j), the DMV and AFIS data available on the day of arrest, *id.* ¶ 3(e), (i), or the user guides, query-type documentation, and training records that explain those returns, *id.* ¶ 3(f)–(h). Volz's own declaration confirms that some of this data is "in the custody of other agencies" and outside CBI's possession entirely. *Id.* ¶ 7. The Magistrate Judge doubted that the officers could produce the CCIC records at all, observing that the records belong to CCIC and that Garfield County's access does not reach "all purposes they desire." Ex. 1 at 26:20–27:03. If even the defendants cannot produce these records, the subpoena is the only route to them.

And the records are not collateral. They are the merits. Qualified immunity is judged "in light of clearly established law and the information the . . . officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The Tenth Circuit has

19

made the point decisive on facts that mirror this case: officers "are charged with knowledge of any 'readily available exculpatory evidence' that they unreasonably fail to ascertain," and an arresting officer who relied on an unverified database hit, without checking the contradictory data on her own screen, was not entitled to qualified immunity. *Maresca v. County of Bernalillo*, 804 F.3d 1301, 1310 (10th Cir. 2015). The CCIC returns, the different date of birth, Sheriff's ID, and Social Security number the screen showed for the real Jennifer, are Plaintiff's readily available exculpatory evidence. Whether the officers saw them, ignored them, or never looked is the qualified-immunity question, and only the returns CBI holds can answer it.

The alternative the Magistrate Judge offered cannot fill that gap. She pointed to "depositions of the defendants" and to confronting them with "incident reports, police reports . . . separate and apart from . . . the CCIC database." Ex. 1 at 34:11–16, 36:19–25. But Plaintiff has deposed the officers, and they answered "I don't recall." *Id.* 35:25–36:13. The Magistrate Judge acknowledged "there's some merit to that because time has passed." *Id.* 36:16–17. Testimony about what officers remember two years later is no substitute for the contemporaneous record of what their screens displayed. Collateral paper cannot show it either. Only the returns can, and they are the one thing the order places beyond reach.

The order's stated cost rationale cannot save it, because the Magistrate Judge herself disclaimed it. Asked whether production could go forward if Plaintiff paid the State's costs, she answered that immunity would bar the subpoena "even if there was

20

no issue with the plaintiff paying the State to gather these documents." *Id.* 35:14–24. The quash thus rests not on the 120 hours but on the bare proposition that a non-party State cannot be made to comply with a records subpoena.

That result is worse here, because the State has already taken a side. CBI gave the defense the query data in February. The order denies Plaintiff the returns that would show whether the officers' account is true. A State may not supply case-specific evidence to one side of a federal lawsuit and then invoke immunity to deny the other side the same evidence, the "selective use of 'immunity' to achieve litigation advantages" the Supreme Court has called inconsistent with the Amendment's purpose. *Lapides v. Bd. of Regents*, 535 U.S. 613, 620–21 (2002). Plaintiff presses *Lapides* for its fairness principle, not as a removal-style waiver. The point is narrow: a categorical bar that leaves the dispositive evidence in the hands of the defense alone does not vindicate state dignity. It converts qualified immunity into an unfalsifiable defense, and it defeats the federal interest 42 U.S.C. § 1983 exists to serve, not by abrogating immunity, which § 1983 does not do, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), but by showing what is wrong with reading immunity this broadly.

None of this requires an unbounded order. The Magistrate Judge ruled on immunity alone and never reached burden or breadth, and Rule 45 supplies the tools if either is a concern. The Court can narrow the subpoenas to the records of this arrest, order staged production beginning with the data Volz already produced, enter a protective order for any third-party identifiers, or condition production on Plaintiff's

payment of reasonable cost. The records may be disclosed "for any purpose authorized by . . . court rule, decision, or order." 28 C.F.R. § 20.21(b)(2). The 120-hour estimate cannot bear the weight the order placed on it. It sweeps in 12 years of training records and unrelated individuals nationwide, Doc. 33-3 ¶ 8, while the core data took Volz one email to produce. Burden is a reason to tailor a subpoena, not a reason to hold it barred by the Constitution.

## V.   THE MAGISTRATE JUDGE'S RULING LEADS TO "ABSURD" AND "LUDICROUS" RESULTS BECAUSE IT PREVENTS ENFORCEMENT OF CIVIL RIGHTS WHEN STATES OWN THE EVIDENCE.

As the *Cuomo* court explained:

Absolute sovereign immunity for states from federal court subpoenas could lead to **truly absurd results**. If the Court were to adopt the rule espoused by the Attorney General, it would be up to the states to decide whether to produce documents and evidence to the federal courts in cases where the state entity controlling those documents is a non-party, with no check by the federal court that is adjudicating the underlying suit. From records generated by state-run colleges and universities, to employment records for state employees, to documents generated by state entities related to redistricting every ten years following the national census, to documents touching upon state environmental enforcement, to documents pertaining to the operation of state hospitals, prisons, and other facilities, to physical evidence held by state-level investigators that is needed in a case alleging a former state official's official misconduct under § 1983, the list of documents and evidence that could be precluded from federal discovery if held in the hands of a non-party state actor goes on and on.

*Cuomo*, 754 F. Supp. 3d at 355-56 (emphasis added).

The *Allen* court expressed the same concerns:

To apply [sovereign immunity] would mean that a plaintiff who sues a state official in his individual capacity, a lawsuit specifically authorized by the United States Supreme Court, will never be able to prove his or

her case, if any required proof is in the hands of the State's custodian of records. **Such a result is ludicrous**.

*Allen*, 544 S. Supp. 2d at 1079 (emphasis added).

When Plaintiff's counsel identified these concerns at the hearing, the Magistrate Judge dismissed them as "apocalyptic" and "hyperbolic." Ex. 1 at 20:23-21:13, 34:07-16, 37:06-10; *but see Cuomo*, 754 F. Supp. 3d at 356 ("These concerns are not hypothetical."). Moreover, the Magistrate Judge's own analogy is belied by her ruling: "in prisoners' rights cases, when medical providers are sued or correctional officers are sued for deliberate indifference to an inmate's medical needs, the medical records are obtained from the Department of Corrections." Ex. 1 at 29:15-18. But as a non-party arm of the state, a plaintiff in a deliberate indifference case would have no mechanism to obtain the records needed to prove his claim because the records would be in the possession of the Department of Corrections. Under the Magistrate Judge's rule, she would quash that subpoena and every subpoena to a state agency that holds the proof of a constitutional violation.

The Magistrate Judge's ruling would prevent enforcement of all civil rights cases where the state owns the evidence of constitutional violations by its state actors, thereby frustrating the purpose of Section 1983. The Eleventh Amendment was not written to manufacture that result. This Court should overrule the Magistrate Judge's order, follow the First Circuit and hold that sovereign immunity does not prohibit enforcement of a federal subpoena served on a state agency or official, and allow civil rights to live another day in the District of Colorado.

23

## CONCLUSION

The order at Doc. 43 is contrary to law. Plaintiff respectfully asks the Court to set it aside and order production, in such tailored or staged form as the Court directs.

If the Court does not order production from CBI, it should modify the subpoenas under Rule 45(d)(3) to direct production from Deputy Director Volz as the appropriate agency official under *Bonnet*, 741 F.3d at 1162 n.1.

If the Court considers narrowing necessary, it should order staged production: first, the returns sought in subpart (j) and the other records of this arrest; then the query-type documentation; then the remainder.

The rule that decides this case is modest. A Rule 45 document subpoena for existing records, served on a non-party state agency and the appropriate agency official in a § 1983 action, is not a "suit" against the State. For these reasons, the Court should set the order aside and direct production.

Respectfully submitted this 24th day of June 2026.

> *s/ Zachary L. Shiffler*
> Zachary L. Shiffler
> Edward C. Hopkins
> Civil Rights Litigation Group, PLLC
> 1543 Champa St., Ste. 400
> Denver, CO 80202
> zach@rightslitigation.com
> ed@rightslitigation.com

24

## CERTIFICATION REGARDING THE USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

The undersigned counsel certifies the following pursuant to Section IV.B of the Honorable Senior Judge Kane's Pretrial and Trial Procedures (March 2025 revision):

1. Generative AI tools were used to assist in preparing this Objection. Specifically, Plaintiff's counsel used Legal Command Center (LCC), which is legal AI software that Colorado Attorney Edward C. Hopkins Jr. developed exclusively for the Civil Rights Litigation Group, LLP to ensure the firm ethically and lawfully leverages the benefits of AI while complying with all applicable laws, contractual duties, civil procedure rules, and professional conduct rules. LCC uses a multi-model AI pipeline (Anthropic Claude Opus 4.8, OpenAI GPT-5.5, Google Gemini 3.1 Pro, and xAI Grok 4.3), custom scripts, and custom databases to assist the firm's attorneys with legal research, doctrinal analysis, structural outlining, and initial drafting. General AI tools that Westlaw provides were also used to assist with legal research and doctrinal analysis.

2. Counsel personally reviewed every legal proposition, every factual assertion, and every citation in this Objection, including the official transcript of the June 10, 2026, hearing. Counsel verified each cited authority against print reporters, Westlaw, or Midpage. Counsel attests that each cited case, statute, and rule is real, exists, and stands for the proposition for which it is cited, and that none has been overruled, modified, or amended on that proposition except as expressly noted in the body of this Objection.

25

3. Counsel preserves Counsel's obligations under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 with respect to every word filed.

*s/ Zachary L. Shiffler*
Zachary L. Shiffler

26

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2026, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send notification of such

filing to all counsel of record.


*s/ Zachary L. Shiffler*
Zachary L. Shiffler