1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 25-cv-01854-JLK-KAS

_____

JENNIFER MARIE O'CONNOR,

    Plaintiff,

vs.

DAVID MULKEY, et al.,

    Defendants.

_____

Proceedings before KATHRYN A. STARNELLA, United States Magistrate Judge, United States District Court for the District of Colorado, commencing at 1:39 p.m., June 10, 2026, in the United States Courthouse, Denver, Colorado.

_____

WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

_____

APPEARANCES

ZACHARY SHIFFLER, Attorney at Law, appearing for the Plaintiff.

HEATHER BEATTIE and LISA McCARTY, Attorneys at Law, appearing for the Defendants.

_____

MOTION HEARING

2

P R O C E E D I N G S

(Whereupon, the within electronically recorded proceedings are herein transcribed, pursuant to order of counsel.)

COURTROOM DEPUTY:  Court is in session.

THE COURT:  Thank you.  The Court calls Case Number 25-cv-01854, Jennifer Marie O'Connor v. David Mulkey, et al.  May I have entries of appearance, please, starting with counsel for Plaintiff?

MR. SHIFFLER:  Good afternoon Your Honor.  This is Zach Shiffler here on behalf of the plaintiff, Ms. O'Connor.

THE COURT:  Thank you.  And counsel for Defendants?

MS. BEATTIE:  Good afternoon, Your Honor.  Heather Beattie on behalf of Defendants David Mulkey and Nathan Lagiglia.

THE COURT:  Thank you.  And then counsel for non-party CBI.

MS. McCARTY:  Good afternoon, Your Honor.  Lisa McCarty here today on behalf of CBI, Deputy Director Volz and CCIC.

THE COURT:  Thank you.  We're here for a hearing on CBI's motion to quash a subpoena that was sent to it as an entity and then also to one of its employees, Deputy Director Dan Volz.  I've reviewed the motion to quash at

3

Docket Number 33 and Plaintiff's response in opposition at Docket Number 41.  And I've reviewed the various attachments.

I will allow the parties to make additional arguments on the record.  I will note as some initial observations, it appears to me that the law is clear in terms of 11th Amendment immunity applying in this context, and to the extent that Plaintiff is relying on a District of New Mexico case, Trujillo v. Romero, I find that that decision is distinguishable for several reasons; but I welcome the parties to make additional arguments on the record.

So let me hear from counsel for CBI first in support of your client's motion.

MS. McCARTY:  Thank you, Your Honor, and thank you for the opportunity to be here.  As Your Honor has just laid out, 11th Amendment immunity clearly applies here.  I think maybe the key point for Your Honor to keep in mind in terms of reviewing the authorities that both sides have submitted is that here in the Tenth Circuit, a subpoena duces tecum is the suit.  That is just an immutable truth.  It is a binding precedent.  And suits, of course, implicate a state's sovereign immunity protections.

Bonnet synthesizes the pre-existing cases, saying that according to binding precedent, then, suit includes

4

judicial process under Murdock, and a subpoena duces tecum is a form of judicial process under Becker.  The logical conclusion, therefore, is that a subpoena duces tecum served directly on the tribe, regardless of whether it is a party to the underlying legal action, is a suit against the tribe.

Although Bonnet arose in the context of tribal, not state sovereign immunity, the Bonnet court also explicitly rejected the idea that the word "suit" could have different meanings depending on who was being served.  So although that is a tribal immunity case, that holding is equally binding on the court in a state sovereign immunity case.

I would also note that this is an important feature of Tenth Circuit law, which is not the same in every circuit.  So while the Court is considering the authorities presented, you know, I would note virtually all of the authorities the plaintiff has submitted come from other circuits and rely on reasoning that is foreclosed here in the Tenth Circuit by this binding authority.

We also know here that CBI is the real party of interest.  Regardless of whether the subpoenas are addressed to CCIC as a comp -- subcomponent of CBI or to Deputy Director Volz, because these subpoenas seek CBI's records, so they are the real party of interest.

The Supreme Court has held the Court should look

5

to whether the sovereign is the real party of interest to determine whether sovereign immunity bars the suit.  In making this assessment, courts may not simply rely on the characterization of the parties but rather must determine in the first instance whether the remedy sought is truly against the sovereign.  And this framework also tells us that the remedy is against the sovereign if the effect of the adjudgment would be to restrain the government from acting or to compel it to act.

So here, compliance with these subpoenas, regardless of to whom they're addressed, would require CBI to expend CBI resources to search and compile CBI records at CBI's expense.  So there can be no doubt that CBI is the real party of interest here.

So in sum, we have that the subpoenas are suits in the Tenth Circuit, they are suits against CBI, and CBI is an arm of the state enjoying sovereign immunity against suit.

And now I would turn, Your Honor, to the argument -- the primary argument that Plaintiff makes that -- concerning Ex parte Young.  She asserts that by serving Deputy Director Volz rather than CBI itself, she avails herself of what she calls the Ex parte Young path, and that this avoids sovereign immunity.  This is not so.

Plaintiff relies on Footnote Number 1 in the Bonnet case for this proposition.  I would note that that

6

footnote is dicta.  The parties did not brief that issue, and indeed the very next sentence in that footnote is, quote, we need not decide these issues now, however.

And furthermore, Ex parte Young does not apply to a third-party subpoena.  Bonnet's Footnote 1 was predicated on a quote from Crowe and Dunlevy, particularly, quote, Ex parte Young exception proceeds on the fiction that an action against a state official seeking only prospective injunction relief is not an action against the State, and as a result, is not subject to the doctrine of sovereign immunity.

And that is accurate as far as it goes, but it's not complete.  The sentence before that quoted in the footnote further explains that the Ex parte Young exception is for suits against state officials seeking to enjoin alleged ongoing violations of federal law.  And the Supreme Court has articulated the standard for the Ex parte Young exception, saying that in determining whether the doctrine of Ex parte Young avoids an 11th Amendment bar to suit, a Court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.

Here there's no alleged ongoing violation of federal law, and furthermore, the subpoenas seek production of records, not any kind of injunctive relief.  I would add,

7

Your Honor, that additionally other courts have rejected the argument being asserted here by the plaintiff.  That, of course, includes our own Judge Blackburn in the Butler-Moore decision, but it includes also cases cited by the plaintiff herself.

For example, Matter of Welfare of JAD, the Court looked at Footnote 1 and determined that, quote, it has no bearing on this case because there is no alleged ongoing violation of federal law, as there is not here, and the third party subpoenas here do not constitute a form of relief properly characterized as prospective, which is the case here also.  The Ex parte Young exception does not apply to the subpoenas served in these cases.

Furthermore, Komo (ph) put it even more sort of bluntly, "The Ex parte Young exception does not provide authority for district courts to enforce a federal subpoena," period.  I think that is about the end of what I would have on Ex parte Young.  Your Honor, if you'd like, I'd be glad to move on to why In re: Missouri DNR does not help the case either.

THE COURT:  All right, thank you.  Would you please address -- so basically, Plaintiff's response identifies six reasons why your client's motion fails, and those reasons are identified on page 2 of Docket Number 41.  Would you please address each of those six points, and would

8

you please slow down because the audio may --

MS. McCARTY:  I apologize.

THE COURT:  -- not be the -- the recording may not be picking up everything you're saying because you're speaking pretty fast.

MS. McCARTY:  I apologize for that, Your Honor. Yes, Your Honor.

So the first item on Plaintiff's list of six is Bonnet's Footnote 1, which I did just address.  If Your Honor has any further questions about why the Ex parte Young exception does not apply to give the plaintiff sort of a circumvention of sovereign immunity in this case, I'd be glad to address them.

Number two, Plaintiff argues that the 11th Amendment immunity doesn't reach discovery from a state agency.  As just sort of a preliminary matter, Your Honor, I would point out that there is ample authority for the proposition that sovereign immunity is not simply an immunity from judgment, but an immunity from suit, including specifically discovery.

Indeed, one of the cases cited by Plaintiff, Adkins v. Fields, 747 F.Supp.3d 1052, adopted the reasoning of the Fifth Circuit in Russell v. Jones, in quotes it's saying, Sovereign immunity is an immunity from suit, including discovery, and not just liability and where

9

sovereign immunity applies, it applies totally.  Plaintiffs stop at the Rule 12(b)(1) stage and don't get discovery. They don't go past go.

The relevant case -- there's also a host of relevant Supreme Court cases, Your Honor, that in general, the cost of subjecting officials to the risk of tribal -- of trial, distracting officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service is all among the things foreclosed by sovereign immunity, according to Mitchell v. Forsyth.

And in addressing specifically the cases cited in Number 2 by Plaintiff, the very first is In re: Missouri DNR.  This is an Eighth Circuit case.  So again, Your Honor, that Court was not bound by the binding Tenth Circuit precedence that we have here, indicating that a subpoena duces tecum is a suit.

Furthermore, the Eighth Circuit has revisited that decision in the recent opinion in Mick v. Gibbons.  That is at 171 F.4th 1097.  And in that opinion, Mick, one of the litigants there, relied on precisely the same quote that Plaintiff relies on here.

The Eighth Circuit first identifies the statement that is, quote, at issue on this appeal, that being that, quote, governmental units are subject to the same discovery

10

rules as other persons and entities having contact with the federal courts.  There is simply no authority for the position that the 11th Amendment shields government entities from discovery in federal court.

The Court -- the Eighth Circuit being the Court in Mick, then observed that that statement was not necessary to our conclusion or resolution of the legal issue before us. This statement, which Mick characterizes as the holding of Missouri DNR, was dicta.

The Eighth Circuit then goes on to quash, I believe it was a 30(b)(6) subpoena against the State in that case, concluding that it simply intruded too much on the sovereignty of the state.

Your Honor, the plaintiff then further relies on the Seventh Circuit authorities in some criminal cases, which of course have different equities at issue that are counterbalanced against any privilege or immunity that might be asserted, so those are distinguishable.

The third argument that Plaintiff makes is that CBI has somehow waived its immunity in this case.  I would note to begin with that the plaintiff acknowledges that Deputy Director Volz' delivery of the email that's attached to the response was voluntary.  She says that at page 3 of her response.  There's no indication here that anyone prior to the service of these subpoenas has attempted to use the

11

coercive power of this Court to elicit information from CBI.

And the key case on waiver in the Tenth Circuit is Guttman v. Khalsa, G-U-T-T-M-A-N v. Khalsa, K-H-A-L-S-A, 669 F.3d 1101.  That's a 2012 case out of the Tenth Circuit holding that the State did not waive sovereign immunity by entering into a joint status report and discovery plan, where the Tenth Circuit, quote, said that although a state may waive sovereign immunity granted to it under the 11th Amendment, we require a showing of unequivocal intent to do so.

And although it has acceded to the reality of some discovery in the early stages of litigation, New Mexico continues to preserve its sovereign immunity defense.  We find New Mexico did not waive its sovereign immunity defense here.  That illus- --

THE COURT:  And Ms. McCarty, if I may interrupt you.  So on this third point about waiving sovereign immunity, in the cases that Plaintiff cites in her brief, the waivers there were triggered by the governmental entity removing the case to federal court.  So a clear action, affirmative action, subjecting that entity to the federal court's jurisdiction through a formal process.  The litigation was live.  They were bringing it into federal court.  Here, the purported waiver is triggered by a voluntary action that hasn't -- that is not part of any

12

formal court process.

Do you see a distinction, and what is the distinction, and why do you think that distinction indicates that there is no waiver?

MS. McCARTY:  Yes, of course, Your Honor.  And I think Your Honor has summed it up nicely.  The primary case that the plaintiff relies on for the waiver argument is Lapides v. Board of Regents.  And that, as Your Honor said, is a case where the state removed to federal court.  The federal claims were then dismissed.  And the question was, did sovereign immunity bar the remaining state claims.  And the reasoning of that opinion turns entirely on what the Court describes as, quote, this case involves a state that voluntarily invoked the jurisdiction of the federal court.

There has been no such invocation here.  CBI is here strictly because we have been served process and required to be here.  There has been -- at every point from the time we entered appearance, we have continuously asserted our sovereign immunity.

You know, I have a hard time really understanding the reasoning of the argument in many respects because, you know, the idea, of course, if in fact a party is voluntarily before the federal court, it doesn't get to pick and choose in what respects it is going to be subject to the jurisdiction of that court.

13

Once you're -- once you've waived, you've waived and you're in federal jurisdiction. However, that is not the position we are in here. There was no waiver. There was no voluntary action. We are here to respond to the subpoenas alone.

THE COURT: Thank you. You may continue on to Argument Number 4.

MS. McCARTY: Yes, Your Honor. Plaintiff argues that the cases that we've cited from within this district, in fact, are distinguishable. It's our position that Butler-Moore -- the two Butler-Moore decisions by Judge Blackburn are on all fours here.

The first one involved a subpoena duces tecum to the entity itself. When Judge Blackburn found that there existed sovereign immunity that foreclosed that subpoena, the plaintiff reissued substantially the same subpoena against the records custodian for CBI, making the argument that because it had been served against the individual, that now she would be entitled to these records.

This is factually identical to what we have here. And I think the basis on which Plaintiff seeks to distinguish the cases, one is that, let's see, Butler-Moore presented no record of voluntary state agency production to Defense counsel. It's not clear to me what the relevance of that is. The sovereign immunity argument is the same.

14

Again, the relevance of the voluntariness there in the production is potentially the waiver, but again, because there was voluntariness, and as we just discussed, no waiver, it's not clear what the relevance of that is.

Second, the plaintiff here characterizes the records sought by the Butler-Moore subpoena says, quote, collateral to the mistaken identity database events at issue here. I can tell Your Honor that the plaintiff in Butler-Moore would not agree to that. In fact, the records she was seeking through the subpoenas were collateral to her case, but it's neither here nor there. The sovereign immunity bar is a bar in total, without reference to how important or unimportant the underlying records are to the case.

And finally, that Butler-Moore expressed non-binding disagreement with the dicta in Bonnet Footnote 1. We've covered the dicta in Bonnet Footnote 1. And at the end of the day, the court interpreted the binding authorities applicable to it in the Tenth Circuit to reach the result that it reached.

So I don't see how any of these three items distinguish either of the Butler-Moore cases, to the extent that they're relevant.

And in Smith v. Plati, we cited this case for the proposition that the -- to the intent the plaintiff argues

15

that by serving Deputy Director Volz in his individual capacity, this is some sort of alternative route to the records she seeks.  It -- that is not tenable because as the Court found in Butler-Moore, the records custodian had no access to those records in his individual capacity.

Likewise, Judge Kane in Plati found that the state employee could not provide benefits that the plaintiff was seeking in that case in their individual capacity.  And there is an excellent case on this:  Native American Distributing v. Seneca-Cayuga Tobacco Company.  This is a Supreme Court -- it's a Tenth Circuit case, I apologize. 546 F.3d 1288, where the court drew the distinction that the tribal officials in that case were immunized from suits brought against them because of their official capacities; that is, because the powers that they possess in those capacities enable them to grant the plaintiff's relief on behalf of the tribe.

So the relevance of the case here is that Deputy Director Volz cannot provide the records the plaintiff is seeking in his individual capacity.

So in response to that, Plaintiff argues first that it matters that she's seeking records production as opposed to a status declaration.  It's not clear to me the relevance of that.

Second, that Deputy Director Volz already

16

exercised the capacity that we claim that he lacks.  I'm unclear on the meaning of that.  I will represent to the Court that to the extent that Deputy Director Volz accesses the CCIC system, he's doing so in his official capacity.  And we did submit a declaration on that point, which is also supported by the fact that it's a seizure system, which is highly regulated, and no person has individual capacity access for personal purposes to access that system.

And that third, because the case predates Bonnet, that Bonnet should inform the case.  And I'm unclear what Bonnet Footnote 1 has to do with the individual capacity of Deputy Director Volz here.  I would say that the Adkins v. Fields case that Plaintiff goes on to cite is indeed helpful of our position.  I'm not sure --

THE COURT:  Ms. McCarty, apologies for interrupting, but what do you even make of the import of Footnote 1?  Is it a holding?  Is it an advisory opinion?  Is it dicta, or is it something else?

MS. McCARTY:  It's dicta.

THE COURT:  And why do you believe it's dicta?

MS. McCARTY:  In part, Your Honor, because the sentence after the sentence on which Plaintiff relies, and -- if you'll give me just a moment, I'd be glad to quote it.  Plaintiff cites that footnote for the proposition that because the Ex parte Young exception proceeds on the fiction

17

that an action against a state official seeking only prospective injunctive relief is not an action against the State, and as a result  is not subject to the doctrine of sovereign immunity.  That's generally the principle being discussed there.

The very next sentence is, quote, We need not decide these issues now, however, as plaintiffs here serve the tribal agency rather than a tribal official or state agency or official.

So the speculation in Footnote 1 that conceivably there is some way to serve an employee as opposed to the tribe or the state itself and obtain a different result was not presented by that case, that it was not briefed by the parties, the determination of that issue was not required to reach the holding in Bonnet, and indeed Bonnet itself says that it need not be decided, therefore it's dicta.

THE COURT:  Thank you.  And then --

MS. McCARTY:  Of course --

THE COURT:  Go ahead.

MS. McCARTY:  No.  If Your Honor has no further questions, I would go on to Plaintiff's Point 5.  Point 5 is -- relates to burden and argues that it is the wrong doctrine and that in -- the emails sent by Deputy Director Volz refutes -- refutes it.  I'm not sure what the "it" is in that question.  I understand that Plaintiff is

18

questioning the veracity of the declaration submitted

alongside our motion.

The purpose of that declaration was to illustrate that substantial resources, and those resources being resources of CBI, would have to be expended to comply with the subpoena.  Our argument is not a burden argument in the discovery sense, in the Rule 26 sense.  It is not an argument under Rule 45.  It is simply to say, consistent with the authorities that we've previously discussed about why CBI is the real party of interest here, it's just to point out that, look, what would have to be done in order to comply with the subpoena clearly invokes the obvious conclusion that CBI is the real party of interest.

The purpose -- so I regard that argument as being basically orthogonal to anything that we argue in our motion.  You know, again, a suit is against the sovereign if the judgment sought would extend itself on the public treasury or domain or interfere with public administration or if the effect of the judgment would be to restrain the government from acting or compel it to act; that is, binding Supreme Court precedent and the purpose of our assertion that it would require CBI resources to respond to this SDTU is simply to make clear that what Plaintiff is asking for here is to compel CBI to act.

Finally, the last argument that Plaintiff makes is

19

that equity in 1983 confirmed the result.  You know, Your Honor, I suppose at some sort of macro level, equity is implicated any time sovereign immunity is effectuated, right?  The necessary effect is that potentially a litigant is going to be denied some opportunity that -- in the court that they would like to have.

Candidly, that is neither here nor there.  It's not part of the sovereign immunity analysis.  And to the extent that there's an argument here that there's an inequity in information, I think, that is factually mistaken.  There is discovery to be had in this case, and to the extent that something is in the possession of the defendant, the plaintiff is welcome to obtain it from the defendant through the normal course of discovery.

It is not necessary to encroach on the prerogatives of the sovereign to get that information. Apparently, again, because the plaintiff acknowledges that what has been subpoenaed here includes materials that have already been provided to the plaintiff, in order to obtain those materials.  Your Honor, we just don't think that this has any relevance.

THE COURT:  All right.  Thank you.  Mr. Shiffler?

MR. SHIFFLER:  Thank you, Your Honor.  I'd like to start with just giving a little context.  I know this Court has already issued its report and recommendation, which

20

Judge Kane approved -- accepted, but just for the sake of the record, we're here with an unlawful arrest case involving mistaken identity and information that was available to the officers from CCIC when they made the arrest.

Obviously, as everyone know -- knows, unlawful arrest claims require evidence that the officers lacked probable cause.  That evidence includes both the information known to the officers and information that was readily available but ignored.  Here, the CCIC information covers both of those.

We expect the -- we know that the officers conducted queries, that's the email that Dan Volz sent, and so we bel -- the information that they received in response to those queries is going to provide us with the baseline of information of what they knew and then the exculpatory information that they ignored.  For example, that my client, Ms. O'Connor, is 5'2", and the subject of the warrant was 5'10", along with other physical characteristics or other information that the officers used or ignored when making their state-authorized power to make a wrong -- to make an arrest, which ultimately was wrongful.

I mean, practically, if CBI's position were the law, officers could use CCIC information as both a sword and a shield, a sword to make the arrest and a shield to

21

completely avoid liability.  That would leave plaintiffs, jurors, and judges alike in the position of just having to trust the officers that they viewed information -- that they viewed state-owned information on CCIC, that information supported an arrest or a use of force, and everyone just needs to take the officer's word for it.

I mean, practically, again, that rule would effectively sound the death knell for unlawful arrest cases or even use-of-force cases where officers are relying on state-owned information because plaintiffs would be deprived of the opportunity to get the evidence needed to establish that the officer's conduct was objectively unreasonable based on the known and readily available information.

But practical considerations aside, I just want to point out a few things about the fundamental principles underlying sovereign immunity, which are primarily that it's used to protect state autonomy, to protect the state's treasury, to make sure that the state's rights aren't enforced -- aren't violated or are not altered in some meaningful respect.

This subpoena is not any of those things.  We're not seeking a judgment against the State.  It doesn't invade the state's autonomy.  The State actually has no autonomy or right to violate constitutional rights.  The subpoena does not meaningfully affect the state's treasury, and on that

22

point, you know, the argument that is being presented is that it would require approximately 120 hours of work to respond to the subpoena.

First, I ask the Court to view that with skepticism and subject it to scrutiny. We haven't seen any itemization identifying which task would take what amount of minutes or hours in order to conduct a complete analysis or, as Ms. McCarty says, challenge the veracity of that. It's basically, again, a take my word for it.

However, even at face value, 120 hours at, let's say, 30 bucks an hour is $3,600. That's not even enough to create a rounding error in the state's budget. So it's just kind of an incredulous argument to say that this would have any meaningful effect on the treasury. And obviously, responding to the subpoena would have no effect on the state's autonomy rights or powers.

Moving on to Bonnet's Footnote 1. I agree, and I think we recanted in our response brief, that that footnote is dicta. It was not central to the holding, which is what makes it dicta. However, as we argued, and I continue, that is the only guidance the Tenth Circuit has offered regarding this specific position.

It says that it expressly authorizes a subpoena to be served on an appropriate agency official. And our position, Dan Volz, as deputy director, was an appropriate

23

agency official.  And although Judge Blackburn disagrees with that dicta, again, that is the guidance that we have, the only guidance from the Tenth Circuit on this specific issue, and we did exactly that.

At the end of the day, even if the Court, as it said with its initial comments, thinks that sovereign immunity were applicable to a subpoena served on CBI or its officials, our position is that CBI waived any such immunity when Dan Volz, on behalf of CBI, provided information to Defendants in this case while simultaneously refusing, with CBI's backing, to provide any information to Plaintiff.  It seems to be an immaterial difference that they're doing it voluntary -- voluntarily without any compelled legal process.

The underlying rationale in Lapides is that state agencies shouldn't be able to pick and choose as to which litigant they're going to assist.  It creates a fundamental unfairness, and it undermines confidence and trust in the judiciary.  If the Court is just going to allow state agencies to assist the state actors to, for lack of a better phrase, protect the infamous blue line, that -- that creates a fundamental unfairness in civil rights cases.

We've tried every avenue that we can.  CBI won't produce the information.  Garfield County won't produce the information.  Defendants won't produce the information.  As

24

Ms. McCarty suggested, we conferred with Ms. Beattie.  We asked for the CCIC information to be produced in response to our discovery request and our Rule 45 subpoena to Garfield County.  Both of those requests were denied, despite the fact that that information is reasonably accessible as the case law defines custody, possession, and control.

They have access to the CCIC.  They can run those reports and produce them to us.  We are being stonewalled in terms of the most relevant information in the civil rights case, the CCIC reports and the fingerprint scan reports.  And without that information, Plaintiffs just cannot even prove these cases.  And I guess, candidly, if that's going to be the position of the courts across the board, the civil rights bar needs to know that so that we can have a better understanding of how to evaluate the viability or whether we're going to bring civil rights cases in this district.

So primarily, the sovereign immunity argument should fail because the subpoena does not affect the state's autonomy.  It has no meaningful effect on the treasury.  Even if the Court finds it sovereign immunity applies, they waived it and they don't get to pick and choose who they assist in this litigation.  We ask that the Court deny CBI's motion to quash.

THE COURT:  Thank you.

MS. BEATTIE:  Judge, would it be possible for me

25

to make a record?  This is Ms. Beattie on behalf of the defendants.

THE COURT:  Oh, yes, Ms. Beattie, go ahead.

MS. BEATTIE:  Yes, sorry, I just need to -- given the plaintiff's specific statements regarding the defendants and a discovery issue, I just wanted to state that we object to the plaintiff bringing this in at this point.  He had made a request essentially in his response to the motion to quash that the Court should order the defendants to provide this same information.

We haven't had an opportunity to respond to that specific request, and I don't think it's proper under the Local Rules of Civil Procedure 7.1 to make a motion within a response.  And so I would ask that the Court not take that up today.

I would also say with regard to Ms. -- the plaintiff's statement that he's conferred with counsel regarding this discovery dispute, which is essentially what it is, those procedures of the courts, this magistrate, your magistrate's procedures regarding discovery disputes have not been followed.  And so I would ask that the Court not rule on those specific issues until those procedures are followed.  So that's all.  We don't take a position on the CBI motion, obviously.

THE COURT:  All right.  But even if I was going to

26

entertain that request, wouldn't an order requiring the
defendants -- well, actually, wait a second.  So the order
would be to require the Garfield County defendants to
produce this information, but it seems to me there's no real
dispute here that Garfield is not actually in the
possession, custody, and control.  These are CCIC records
that Garfield County has license or permission to access.
Is that correct, Ms. Beattie?

MS. BEATTIE:  That's correct, Your Honor.

THE COURT:  Okay.

MR. SHIFFLER:  And Your Honor, if I just may
quickly respond to that.  I think there is a dispute.  As I
mentioned, the case law defines custody, possession, and
control as information that's reasonably accessible.  And so
to the extent they have login information, which we know
they do because we have this query report, and they can
submit the same queries that they did previously, this
information is readily -- reasonably accessible to the
Garfield County defendants.

THE COURT:  Just because they have access to the
information does not mean that they can access that
information for all purposes they desire.  I imagine that
there are limits on what they can use that information for.

Just like when we log into work computers, there's
a clear message that says we cannot be using the computer

27

for personal reasons.  It is for work and business purposes.
So I'm guessing that there are similar constraints on
accessing the CCIC databases.

All right, let me turn to my ruling here.  I will
start with the premise that I started off at the very
beginning.  The 11th Amendment provides that judicial power
of the United States shall not be construed to any extent to
any suit in law or equity commenced or prosecuted against
one of the United States by citizens of another state or by
citizens or subjects of any foreign state.  The 11th
Amendment respects a state's sovereignty by extending its
immunity to any action brought against it in federal court.

And I find Judge Blackburn's reasoning is sound in
Butler-Moore v. Garcia, 815 F.Supp.3d 1206, and then also
his companion decision in 2026 Westlaw 915117.  I recognize
that the more recent decision is on appeal to the Tenth
Circuit.  But nevertheless, I find no reason to depart from
his conclusion that the -- being compelled to comply with a
subpoena is the type of judicial process that the 11th
Amendment affords immunity.  And immunity is only -- there
are only three exceptions to immunity.  That first, a state
must consent to suit in federal court.

No legal -- no controlling authority, no authority
of any kind has been pointed out to me that supports the
proposition that voluntary provision of information outside

28

of the formal discovery process, outside of any compelled compliance with a subpoena, means that the state here, CCIC, an arm of the state and its subdivision, I believe -- well, actually, I think it's CCIC is the subdivision, but we don't need to get into the weeds there.  I see -- I do not see that voluntary provision of information as consent to suit in federal court, nor do I see CCIC's appearance in today's proceedings as consent to suit in federal court.

They are here because I ordered them to be here, because I set a hearing on their motion to quash.  And their motion to quash is across the board seeking to quash the subpoena, primarily, if not exclusively, on grounds of 11th Amendment immunity.  So the first exception to sovereign immunity does not apply.

The second exception, Congress may abrogate a state sovereign immunity by appropriate legislation when it acts under Section 5 of the 14th Amendment.  There's been no authority presented to me that would demonstrate that Congress has abrogated a state's sovereign immunity in this context.

And then finally, under Ex parte Young, a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.  That's not what this Rule 45 subpoena

29

is about, whether I consider the subpoena issued to CCIC or the subpoena issued to its deputy director, Volz.

The subpoena is not looking to get CCIC to stop doing anything.  Moreover, the lawsuit isn't getting -- trying to get CCIC to stop doing anything.  Neither CCIC nor Volz are named as defendants in this case.  CCIC doing a search for that acronym in the complaint, I believe it only came up four times, and that was solely in reference to the information that Defendants were looking up in the database about Plaintiff around the time of her arrest by Defendants.  So I do not find that the third exception applies here.

In terms of the argument that 11th Amendment immunity does not apply to Volz, I disagree.  Volz -- I mean, it's just like, as Mr. Shiffler wells -- well knows, in prisoners' rights cases, when medical providers are sued or corrections officers are sued for deliberate indifference to an inmate's medical needs, the medical records are obtained from the Department of Corrections.  They're not obtained from the individual defendants.

And I believe an analogy can be drawn from that situation to this situation.  Mr. Volz has access to the CCIC database by virtue of his official responsibilities, and therefore, he does not have authority in his individual capacity to access the information in the database and provide that information.

30

And to the extent that the information is being sought for him -- from him in his official capacity, he falls within 11th Amendment immunity protections because, again, the subpoena is seeking to compel production and it's not seeking to stop any alleged violations of constitutional law.

To the extent that Plaintiff is arguing that compliance with the subpoena is not going to -- it's not going to be costly to the State, the fact is there will be costs to the State. Even if Mr. Shiffler disagrees that the dollar amount of the time spent collecting these documents is minimal, even if that's what he argues, the point is, Mr. Volz, or whoever else needs to gather this information, has to take 120 hours of their time away from their normal duties in serving the state and the state's constituents.

I don't have reason to doubt that 120 hours is an excessive estimate. The subpoena, and I -- to the extent that Plaintiff is arguing, Hey, look, at Exhibit 1, in this email from Mr. Volz to Defense counsel, he provided this information. It's only two pages, so what's the big deal? It's not clear to me that the information provided in Exhibit 1 is everything that's being asked for in the subpoena.

The subpoena seems much, much broader than the information contained in Exhibit 1. As examples, all

31

documents, records, or other information that identifies all aspects of the CCIC search initiated by, and then the specific deputies, including the defendants, are listed. Actually, the -- it's all the defendants are listed. All documents, records, or other information that identifies CCIC communications between all the Garfield County deputies and any other person. So with that one, we are well beyond whatever's contained in Exhibit 1.

All documents, records, or other information that was available for return on July 30, 2024, through CCIC or related systems concerning the subject, Jennifer O'Connor, that were also, we appear, to be well beyond the information contained in Exhibit 1. So this -- those are just some examples. I'm not going to waste time in going through all of them.

What do I make of Footnote 1? There -- you know, I don't need to spend much time on that point because Plaintiff concedes that Footnote 1 is dicta. Okay, so what do I make of dicta? Sometimes dicta could be helpful in a Court deciding an issue, can help form -- inform the decision making. And one example where that dicta was used is Trujillo v. Romero, the District of New Mexico case that Plaintiff cites in its response in opposition to the motion to quash. The cite for Trujillo is 2014 Westlaw 12783016.

One distinguishing factor concerning Trujillo is

32

that the tribal members -- so this was -- so somebody -- so this is a -- this was a civil rights suit brought against two tribal police officers.  And so the Court was trying to thread the needle, if you will, in terms of sovereign immunity, but also the fact that two tribal police officers were sued.  And I believe they were sued in their -- yes, they were sued in their individual capacities.

And there the Court determined that this information was necessary because those two individuals were sued.  Here we don't have any CCIC employees being sued. They're not part of this lawsuit at all.

Also, the Court did not find that there would have been an expenditure of public resources.  At star 6, the Court was talking about requiring the officer to appear for a deposition, and the Court noted that appearing the -- requiring the officer to appear for a deposition during his off-duty hours does not require the Pueblo of Pojoaque to expend resources sorting and compiling documents.  While this burdens Officer Long slightly, the Pueblo is under no apparent obligation to set aside work hours for the deposition.

Here, the subpoenas require the exact opposite. They require the government to set aside work hours to gather the documents and that would be a taxpayer funded effort.

33

I also want to draw on a comment the Court had made also at star 6.  The Court was talking about a fourth circuit decision, Boron Oil Company v. Downie, 873 F.2d 67.  And the court -- the District of New Mexico Court said as follows:  Had this subpoena in Boron Oil Company sought information from an EPA agent that related to a complaint that another EPA agent violated an individual's constitutional rights, the Fourth Circuit's analysis likely would have been much different.  While a sovereign is not required to expend resources helping private plaintiffs prove their private lawsuits, neither should it be permitted to prevent plaintiffs from obtaining information and validly brought lawsuits that allege constitutional wrongdoing committed by the sovereign's employees while they worked on behalf of the sovereign.

Again, this underscores the point.  What Plaintiff is asking me to compel is for the sovereign, the state through CCIC, to expend resources helping a private plaintiff, Ms. O'Connor, to prove her private lawsuit, when there's no allegation that CCIC violated Plaintiff's constitutional rights.

I understand Plaintiff's argument that the equities justify compelling production; however, I disagree with that argument.  Plaintiff obviously has the information contained in Exhibit 1 because Plaintiff attached it to her

34

response brief.  Nothing prohibits Plaintiff from asking Defendants about the searches they ran around the time -- while these events were unfolding and what in the searches caused them to arrest Ms. O'Connor under her protest and clear assertions that she's not the person who is subject of the warrant.

So to the extent Mr. Shiffler argues that my denying -- my granting this motion to quash leads to a dire situation, apocalyptic, that plaintiffs can't bring their civil rights suits in the District of Colorado, that's quite extreme and quite an overreach because there are clearly discovery tools; namely, depositions of the defendants; that can be utilized to discern what information do they have about Ms. O'Connor, and why did they choose to arrest her? Why did they believe they had probable cause to arrest her despite her protests?

So for those reasons, I grant the motion to quash the subpoena at Docket Number 33.

Mr. -- actually, since the motion is Ms. McCarty's, Ms. McCarty, is there anything else you wish to raise with the Court?

MS. McCARTY:  No, Your Honor.  Thank you.

THE COURT:  All right.  Mr. Shiffler, is there anything you wish to raise on behalf of the plaintiff?

MR. SHIFFLER:  Yes, one final, I guess, question,

35

request for clarification.  Just in considering all of the inequities, I want to, I guess, determine if this information, these records are completely unavailable or Plaintiff could pay for the service of the state who employed both the officers that we're suing and CBI.  Is that an option for Plaintiff to pay for these services, the alleged burden that would be imposed on the State, or are these records just completely unavailable to Plaintiff?

THE COURT:  They are unavailable because of the 11th Amendment immunity, which has not been abrogated.

MR. SHIFFLER:  Even though the payment by Plaintiff would undermine and resolve any issue of taking money from the State?

THE COURT:  That is not the only aspect of 11th Amendment immunity here.  11th Amendment protects the State from being subject to and being compelled to participate in judicial actions.  A Rule 45 subpoena and an order requiring compliance with a Rule 45 subpoena flies in the face of the protections offered by the 11th Amendment, and none of the three exceptions to the 11th Amendment apply here.

So even if there was no issue with the plaintiff paying the State to gather these documents, that is still piercing the 11th Amendment immunity protections, and there's been no basis for me to allow that to happen.

MR. SHIFFLER:  Understood.  The last point I want

36

to make and then I'll be finished is just to respond to the Court's suggestion that there are other discovery tools to pursue this. If officers always told the truth, I'd have a lot less work to do. We routinely get impeachment evidence. They routinely use the mantra, I don't recall, I can't remember, I don't know. And so we have deposed these officers. They claim a level of ignorance that even makes me rethink my level of expectation for officers.

So we tried that discovery tool. It failed. We will continue to pursue this Court's practice standards for a discovery dispute with Garfield County and the defendants. And we'll be back shortly with the same issue in another context. That's all of our input.

THE COURT: All right. It seems to me that to the extent the officers claim having complete ignorance or failure to recall what happened, I mean, there's some merit to that because time has passed and I'm sure they have several encounters with people. Nevertheless, I mean, if they're confronted, with incident reports, police reports, what have you, documents that are separate and apart from what you're seeking to get from the CCIC database, I am pretty certain that there are ways for you to call into question their credibility or call into question the basis for why they believe they had probable cause to arrest Plaintiff.

37

MR. SHIFFLER:  I appreciate the Court's optimism. My experience has shown me that the best way to call into question their credibility, their veracity, their lies, is to confront them with the information that was actually in front of their face, which is the CCIC information.

THE COURT:  Okay.  Well, again, I still believe that your argument that this is apocalyptic for the plaintiff's bar is extremely hyperbolic, and is -- I don't see that happening.  But I've been wrong.  I've been wrong about other things.

All right, Ms. Beattie, is there anything you wish to bring to the Court's attention?

MS. BEATTIE:  Nothing further at this time, Your Honor.  Thank you very much.

THE COURT:  All right.  Thank you.  We'll be in recess.

COURTROOM DEPUTY:  Court is in recess.

(WHEREUPON, the hearing concluded at 2:36 p.m.)

38

TRANSCRIBER'S CERTIFICATE

I certify that the foregoing is a correct transcript, to the best of my knowledge and belief (pursuant to the quality of the recording) from the record of proceedings in the above-entitled matter.

/s/Dyann Labo                          June 18, 2026

Signature of Transcriber                Date

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com