## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01854-JLK-KAS

JENNIFER MARIE O'CONNOR,

    Plaintiff,

v.

DAVID MULKEY, *et al.*,

    Defendants.

---

## RESPONSE TO PLAINTIFF'S OBJECTION
## TO THE MAGISTRATE JUDGE'S JUNE 10, 2026 ORDER, ECF NO. 44

---

Colorado Bureau of Investigation (CBI), Colorado Crime Information Center (CCIC), and Deputy Director Dan Volz, through undersigned counsel, hereby respond to Plaintiff's Objection to the Magistrate Judge's June 10, 2026 Order, ECF No. 44:

### INTRODUCTION

On April 16, 2026, Plaintiff served a Rule 45 subpoena for the production of documents addressed to "Colorado Crime Information Center (CCIC) c/o Dan Volz (XXX@state.co.us)." ECF No. 33-1 (full email address redacted). On the same day, Plaintiff sent a second subpoena seeking the same information addressed to "Dan Volz (XXX@state.co.us)." ECF No. 33-2 (full email address redacted). On April 21, 2026, counsel clarified that these subpoenas collectively represent "an official capacity and an individual capacity subpoena." ECF No. 33 at 2.

1

Plaintiff attempts to obtain via two Rule 45 subpoenas voluminous records purportedly created or maintained by CCIC, a subcomponent of CBI. The subpoenas generally seek information and records about or maintained in CCIC. On May 1, 2026, Movants filed a motion to quash the subpoenas because the subpoenas are barred by CBI's sovereign immunity.

After briefing and hearing argument, Magistrate Judge Starnella determined that "being compelled to comply with a subpoena is the type of judicial process" barred by CBI's sovereign immunity, ECF No. 44-1 at 27:17–20, that Deputy Director Volz "has access to the CCIC database by virtue of his official responsibilities, and therefore, he does not have authority in his individual capacity to access the information in the database and provide that information," *id.* at 29:21–25, and that in his official capacity, Deputy Director Volz "falls within 11th Amendment immunity protections," *id.* at 30:1–6. Based on these findings, Magistrate Judge Starnella quashed the subpoenas. *Id.* at 34:17–18.

On June 24, 2026, Plaintiff filed her objection to Magistrate Judge Starnella's order. Because Magistrate Judge Starnella correctly determined the subpoenas are barred by CBI's sovereign immunity, the Court should overrule Plaintiff's objection.

## ARGUMENT

In her objection, Plaintiff argues the subpoenas are not "suits" barred by CBI's sovereign immunity because a State's sovereign immunity does not include immunity from "judicial process" and that the early republic record supports this conclusion. Plaintiff next argues that CBI's sovereign immunity does not apply to a subpoena served on Deputy Director Volz because he was served as an "agency official," as contemplated by footnote one in *Bonnet v. Harvest (U.S.) Holdings, Inc.,* 741 F.3d 1155, 1162 n.1 (10th Cir. 2014). Additionally, Plaintiff argues

2

various district court decisions, *United States Department of Justice v. Ricco Jonas*, 24 F.4th 718

(1st Cir. 2022), and *Mick v. Gibbons*, 171 F.4th 1097 (8th Cir. 2026), support her position that

the subpoenas should not be quashed. Plaintiff then argues CBI has waived its sovereign

immunity under *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613

(2002). Finally, Plaintiff argues the documents requested are central to her lawsuit and available

nowhere else. For the reasons discussed below, Plaintiff's objection should be overruled, and the

subpoenas should be quashed.

**I.      Under binding precedent, a subpoena is a "suit" triggering the protections of sovereign immunity.**

Plaintiff attempts to create a limitation on CBI's sovereign immunity based on the

Eleventh Amendment, arguing that a State's sovereign immunity does not include immunity

from "judicial process." ECF No. 44 at 10–11. Plaintiff argues that *Bonnet*'s premise that judicial

process is a "suit" is derived from federal sovereign immunity law, and, while "[f]ederal

sovereign immunity sweeps over 'any judicial process[,]' [t]he Eleventh Amendment's protection

is narrower." *Id.* As such, Plaintiff would have the Court limit CBI's immunity from "suit" to the

literal text of the Eleventh Amendment, i.e., to "any suit in law or equity." *Id.* at 2, 10–11.

Plaintiff is mistaken.

**A. CBI enjoys the same sovereign immunity from "suit" as the federal government and federally recognized tribes.**

For certain, state, federal, and tribal sovereign immunity are not identical in every

respect, but "a State . . . is *as exempt as the United States* are from private suit." *Belknap v.*

*Schild*, 161 U.S. 10, 18 (1896) (emphasis added); *accord Sossamon v. Texas*, 563 U.S. 277, 285

n.4 (2011) (collecting Supreme Court precedents equating unequivocal expression principle

applicable to federal and state sovereign immunity and noting close analogy between state and federal sovereign immunity).

Plaintiff's reliance on the limitations of the Eleventh Amendment is misplaced. While the Supreme Court and other courts have "sometimes referred to the States' immunity from suit as 'Eleventh Amendment immunity' . . . [t]he phrase is a convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, *nor is limited by*, the terms of the Eleventh Amendment." *Alden*, 527 U.S. at 713 (emphasis added); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) ("Generally, States are immune from suit under the Eleventh Amendment *and* the doctrine of sovereign immunity." (emphasis added)). Indeed, the Supreme Court has applied a State's sovereign immunity to bar suits by private parties in a State's own courts, *Alden*, 527 U.S. at 754, and in the courts of other States, *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 249 (2019), fora in which the literal text of the Eleventh Amendment would not apply.

The States' pre-constitutional, common-law sovereign immunity—the same immunity enjoyed by the federal government—protects CBI from "suit."[1] *See Russell v. Jones*, 49 F.4th 507, 518 (5th Cir. 2022) ("Where [state, federal, or tribal sovereign] immunities apply, each provides the same 'common-law immunity from suit traditionally enjoyed by sovereign powers.'" (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)); *see also Hensel v.*

---

[1] "States are protected by *two* forms of sovereign immunity. **The first is a common-law immunity** from compulsory process, one that prevents states from being forced into court without their consent. . . . **The second is the Eleventh Amendment** . . . [which] supplements the traditional immunity, limiting the subject-matter jurisdiction of the federal courts when certain kinds of plaintiffs sue a state in law or equity." Baude & Sachs, *The Misunderstood Eleventh Amendment*, 169 U. Pa. L. Rev. 609, 614 (2021) (italicized emphases original, bolded emphasis added).

*Off. of Chief Admin. Hearing Officer*, 38 F.3d 505, 509 (10th Cir. 1994) (applying Eleventh Amendment waiver of immunity principles to federal sovereign immunity).

Additionally, tribes "have long been recognized as possessing *the common-law immunity from suit traditionally enjoyed by sovereign powers*." *Santa Clara Pueblo*, 436 U.S. at 58 (emphasis added); *see also Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 387 (2023) (recognizing same). States are among the sovereign powers enjoying that common-law sovereign immunity from suit. *See Alden v. Maine*, 527 U.S. 706, 713 (1999) ("States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention or certain constitutional Amendments."). The "Constitution preserve[d] the sovereign status of the States . . . reserv[ing] to them a substantial portion of the Nation's primary sovereignty, together with the dignity and essential attributes inhering in that status." *Id*. at 714. The result is that "the States thus retain 'a residuary and inviolable sovereignty.'" *Id.* at 715 (quoting The Federalist No. 39, p. 245 (C. Rossiter ed. 1961) (J. Madison)). [2]

---

[2] Plaintiff argues the history of the early republic "shows subpoenas to public officials functioning as ordinary evidence-gathering tools, not forbidden suits against sovereigns." ECF No. 44 at 12. However, even before ratification, most of the Constitution's defenders argued the Constitution did not "erase[ ] the states' immunity to judicial process." Baude & Sachs, at 617 (citing Debates of the Virgina Convention (June 20, 1788)). Specifically, Alexander Hamilton, James Madison, John Marshall, and Rufus King contended that "the background principles of [states' sovereign] immunity remained in force." *Id.* (citing Caleb Nelson, *Sovereign Immunity as a Doctrine of Personal Jurisdiction*, 115 Harv. L. Rev. 1559, 1580-92 (1978)). Additionally, in determining sovereign immunity barred a third-party subpoena, the Fifth Circuit reviewed the early cases on sovereign immunity and the interests it protects and determined that "[h]istory does not disturb [its] conclusion." *Russell*, 49 F.4th at 514–519.

It is the States' pre-constitutional, common-law sovereign immunity from "suit," the same immunity from "suit" enjoyed by the federal government and federally recognized tribes, which protects CBI from "suit." The Eleventh Amendment does nothing to limit or alter the extent of that immunity. Therefore, if a "suit," as defined in the context of state, federal, or tribal sovereignty, includes "judicial process," CBI's sovereign immunity bars the Rule 45 subpoenas at issue in this case.

### B. Under binding Tenth Circuit precedents, a "suit" includes judicial process.

Plaintiff now faces an inescapable truth: under binding Tenth Circuit precedent, a "suit" includes judicial process, and a subpoena for production of documents is a form of judicial process. *Bonnet,* 741 F.3d at 1159–1160; *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 931 (10th Cir. 1996) ("Thus, the term 'suit' embodies the broad principle that the government is not subject to 'legal proceedings, at law or in equity' or 'judicial process' without its consent.") (quoting *Belknap*, 161 U.S. at 16); *Becker v. Kroll*, 494 F.3d 904, 922 (10th Cir. 2007) ("[I]ssuance of a subpoena initiates an adversary process that can command the production of documents and things only after judicial process is afforded.").

As such, in the context of federal sovereignty, pursuant to binding Tenth Circuit precedent, a "'suit' includes 'judicial process' under *Murdock*, and a subpoena duces tecum is a form of judicial process under *Becker*." *Bonnet*, 741 F.3d at 1160. Because "a State . . . is as exempt as the United States are from private suit," *Belknap*, 161 U.S. at 18, the definition of "suit" is the same for CBI as it is for the federal government.

The Tenth Circuit has also held that a non-party subpoena duces tecum is a "suit" in the context of tribal sovereignty. In *Bonnet*, a plaintiff served the Ute Indian Tribe of the Uintah and

6

Ouray Reservation (the "Tribe") with a non-party subpoena duces tecum seeking documents relevant to their suit. 741 F.3d at 1156–57. The Tenth Circuit reversed the district court's denial of the Tribe's motion to quash, holding that under binding precedent, "a subpoena duces tecum served directly on the Tribe, regardless of whether it is a party to the underlying legal action, is a 'suit' against the Tribe, triggering tribal sovereign immunity." *Id.* at 1160. In reaching its holding, the Tenth Circuit explained that "[i]nterpreting the term 'suit' broadly comports with the core notion of sovereign immunity that in the absence of governmental consent, the courts lack jurisdiction to 'restrain the government from acting, or to compel it to act.'" *Id*. at 1159 (quoting *Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d at 931). The Tenth Circuit found significant that "[t]he issuance of a subpoena initiates an adversary process that can command the production of documents and things *only after judicial process is afforded*." *Id.* (emphasis and alteration original) (quoting *Becker v. Kroll*, 494 F.3d 904, 922 (10th Cir. 2007)).

While *Bonnet* addressed the application of tribal sovereign immunity, its ruling contemplated the same result under a State's sovereign immunity: "[U]nder our binding precedent—namely *Murdock* and *Becker*—the Eleventh Amendment may well shield a state agency from discovery in federal court." *Id.* at 1161. Because tribal and state sovereignty are both derived from pre-constitutional common law, and because tribal immunity is more limited than that of a State's sovereign immunity, *id.* at 1160–61 (citing *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir.2011)), the definition of "suit" is the same for CBI as it is for the Tribe.

Plaintiff, citing *Federal Maritime Commission v. South Carolina State Ports Authority,* 535 U.S. 743, 760 (2002), suggests CBI's sovereign immunity does not apply because the Rule

45 subpoena at issue "commences no complaint against the State, demands no answer or defense, adjudicates no liability, and yields no judgment." ECF No. 44 at 9. However, as discussed in that same case, Plaintiff's argument "reflects a fundamental misunderstanding of the purposes of sovereign immunity. While state sovereign immunity serves the important purpose of shielding state treasuries . . . the doctrine's central purpose is to 'accord the States the respect owed to them as' joint sovereigns." *Fed. Mar. Comm'n*, 533 U.S. at 765. "Sovereign immunity applies regardless of whether a private plaintiff's suit is for monetary damages or some other type of relief . . . [and] does not merely constitute a defense to monetary liability or even all other types of liability. Rather, it provides immunity from suit." *Id.* at 765–66.

Plaintiff fails to cite any authority for her contention that "suit" should mean one thing for two sovereigns—the United States and federally recognized tribes—and a different thing for a third—the States. Indeed, in *Bonnet*, the Tenth Circuit explicitly declined to define "suit" differently depending on the sovereign against which judicial process is being exercised. *Bonnet*, 741 F.3d at 1160.

**II.     CBI is the real party in interest because the subpoenas in effect seek relief against CBI, would compel CBI to act or restrain it from acting, and would interfere with the public administration of CBI.**

Plaintiff contends that "even if a subpoena to CBI raised an immunity question, the subpoena to Deputy Director Volz did not." ECF No. 44 at 12–13. In support of this contention, Plaintiff makes two primary arguments, which both rely on *dicta*. First, Plaintiff points to a footnote in *Bonnet*, in which the Tenth Circuit speculated that "neither and state nor a tribe would appear to be immune from a discovery request served on the appropriate agency official, rather than the agency itself." *Id.* at 13; *Bonnet*, 741 F.3d at 1162 n.1. Second, Plaintiff points to the

same footnote, arguing that the individual-versus-official capacity distinction relied on by the

Magistrate Judge is beside the point because *Bonnet* addressed an "official-directed subpoena" as

a mechanism for obtaining records.

At the outset of this dispute, Plaintiff conceded that she served "an official capacity and

an individual capacity subpoena." ECF No. 33 at 2. For obvious reasons, Plaintiff appears

unwilling to take the same position in her objection. Under either designation, Plaintiff cannot

obtain CBI's records. Instead, Plaintiff apparently asserts a third option unsupported by any

authority, suggesting Deputy Director Volz can be served as an "agency official" outside the

confines of the well-established individual-official capacity distinction. ECF No. 44 at 13

(suggesting *Bonnet*'s footnote 1 addressed an "official-directed subpoena" outside the context of

*Ex parte Young*).

Regardless, Supreme Court precedent establishes that "in the context of lawsuits against

state and federal employees or entities, courts should look to whether the sovereign is the real

party in interest to determine whether sovereign immunity bars the suit." *Lewis v. Clarke*, 581

U.S. 155, 161–62 (2017); *Native American Distributing v. Seneca-Cayuga Tobacco Co.*, 546 F.3d

1288, 1297 (10th Cir. 2008). "In making this assessment, courts may not simply rely on the

characterization of the parties in the complaint, but rather must determine in the first instance

whether the remedy sought is truly against the sovereign." *Lewis*, 581 U.S. at 162. "If, for

example, an action is in essence against the State even if the State is not a named party, then the

State is the real party in interest and is entitled to invoke the Eleventh Amendment's protection."

*Id.*; *Pennhurst State Sch. & Hosp.* v. *Halderman*, 465 U.S. 89, 101 (1984) ("The Eleventh

Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" (quoting *Ford Motor Co. v. Dept. of Treasury*, 323 US. 459, 464 (1945))).

"The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (internal quotations and citations omitted). A suit against a state official or employee in their individual capacity is effectively a suit against the state where "the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Lewis*, 581 U.S. at 1291; *Phillips v. James*, 2024 WL 657945, *2 (10th Cir. 2024).

Here, the subpoena would compel CBI to act or restrain it from acting, would impact Colorado's treasury, and would interfere with the public administration of CBI. The subpoena seeks to compel Deputy Director Volz to access and procure CBI's records and produce them to Plaintiff, all without CBI's consent. As explained below, Deputy Director Volz has no authority outside his official capacity with CBI to comply with such a request because in his individual capacity he has no access to CBI's records. As such, the subpoena is effectively against CBI and is barred by CBI's sovereign immunity.

### A. CBI is the real party in interest because the subpoenas seek to have Deputy Director Volz use his position as Deputy Director to produce CBI's records.

Regardless of whether these subpoenas are directed at CCIC or Deputy Director Volz, in his official capacity, individual capacity, or as an "agency official," CBI is the real party in interest, and CBI's sovereign immunity applies to bar the subpoenas.

10

Judge Blackburn recently addressed the application of sovereign immunity to bar a subpoena nominally directed to a state employee in their individual capacity, which nonetheless sought discovery of the state agency's records. *Butler-Moore v. Garcia*, No. 24-CV-3020-REB STV, 2026 WL 915117, at *1 (D. Colo. Apr. 2, 2026). Butler-Moore first served a subpoena directed to the Colorado State Patrol ("CSP") seeking numerous CSP records, including personnel and disciplinary records, which the court quashed finding it barred by CSP's sovereign immunity. *Butler-Moore v. Garcia*, 815 F. Supp. 3d 1206, 1208 (D. Colo. 2025). In a second attempt, Butler-Moore sought the same records via subpoena addressed to the employee who serves as the Records Manager for CSP's Central Records Unit "in his individual capacity," claiming that this approach presented no Eleventh Amendment issue. *Butler-Moore v. Garcia*, 2026 WL 915117, at *1. The court rejected this contention observing the "reality" that "in his individual capacity, [the Records Manager] clearly has no authority to access any employee personnel files or disciplinary records maintained by CSP." *Id*.

In another case, *Smith v. Plati*, the plaintiff sued the Assistant Athletic Director of Media Relations for the University of Colorado in his individual capacity. 56 F. Supp. 2d 1195, 1203 (D. Colo. July 22, 1999). Plaintiff sought to have the defendant recognize him as media or press and afford him all benefits of that status. *Id.* The court found that:

> Even if [the defendant] did concede [the plaintiff] was qualified for treatment as "media" or "press," **in his individual capacity, he would have no authority to provide him any benefits of such status.** His ability to provide "media" and "press" entities with special access to information regarding University of Colorado athletic programs **stems directly from his position as the Assistant Athletic Director of Media Relations**. Thus, only in his *official capacity* could [the defendant] provide [the plaintiff] with the relief he desires.

*Id.* (bolded emphases added, italicized emphasis original); *see also Native American Distributing*, 546 F.3d at 1298 ("[T]ribal officials are immunized from suits brought against them *because of* their official capacities—that is, because the powers they possess in those capacities enable them to grant the plaintiffs relief on behalf of the tribe.").

Like the subpoenas in *Butler-Moore*, the subpoenas here seek records which plainly are not maintained by or accessible to the subpoena recipient in his individual capacity. ECF No. 33-3, Decl. of Daniel Volz, ¶ 6. Furthermore, as explained in *Smith* and *Native American Distributing*, it is only in his official capacity that Deputy Director Volz has the authority to access CBI's records.

Plaintiff argues these cases are not pertinent because "[b]oth concern claims for relief that only an official could grant," "[a] subpoena for records seeks no relief on the sovereign's behalf," and "it binds no one by judgment." ECF No. 44 at 14–15.

To Plaintiff's first and second contentions, the relief sought by Plaintiff—production of CBI's records—is relief only a CBI official could grant on behalf of CBI. Plaintiff freely concedes that the subpoena would compel CBI to act: "Producing existing query logs orders CBI to do nothing *but hand over records it already keeps*." ECF No. 44 at 15 (emphasis added). Implicit in this concession is that the records sought are in fact CBI's, not Deputy Director Volz's. It is clear Plaintiff served the subpoena on Deputy Director Volz because the powers he possesses as Deputy Director would allow him to access the CBI records sought.

Indeed, in this case, the subpoenas seek materials contained in or relating to CCIC, a criminal justice information system regulated by federal law. 28 U.S.C., Part 20. Use of such systems generally is constrained to "criminal justice agencies, for purposes of the administration

12

of criminal justice . . .” and other limited, specified uses. 28 U.S.C. § 20.21. Access to CCIC is routinely audited to identify security and misuse violations, which are subject to civil penalties under federal law. 28 C.F.R. § 20.25; *see also* Colorado Bureau of Investigation, Misuse of CCIC, available at https://cbi.colorado.gov/sections/criminal-justice-information-services unit/colorado-crime-information-center-ccic/misuse (last accessed Apr. 28, 2026). It cannot be seriously contended that anyone, including Deputy Director Volz, is free to access this information in their individual capacity. Decl. of Daniel Volz, ¶ 6.

As to Plaintiff's third contention, that the subpoenas bind “no one to judgment,” Plaintiff fails to recognize the consequences of failing to comply with a subpoena. The “‘issuance of a subpoena initiates an adversary process that can command the production of documents and things *only after judicial process is afforded*.’” *Bonnet*, 741 F.3d at 1159–60 (emphasis original) (quoting *Becker*, 494 F.3d at 922). Indeed, Rule 45 explicitly allows that the “court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.” Fed. R. Civ. P. 45(g); *see also Coomer v. Make Your Life Epic, LLC*, 140 F.4th 1269, 1273 (10th Cir. 2025) (per curiam) (affirming district court's contempt order levying $1,000 per day fine until the non-party complied with court orders commanding, inter alia, compliance with a subpoena).

It is this judicial process from which CBI, as the real party in interest, is immune, not simply from a “judgment” as Plaintiff would have it defined. “The indignity that sovereign immunity was designed to prevent may arise *either* when the state is a defendant *or* when its sovereign prerogatives are subjected to individuals through coercive judicial process.” *Russell*, 49 F.4th at 514 (emphases original) (citing *Ex parte Ayers*, 123 U.S. 443, 505 (1887)). Therefore,

it is clear CBI is the real party in interest, and the subpoenas are barred by CBI's sovereign immunity.

### B. CBI is the real party in interest because the subpoena would interfere with the public administration of CBI and impact Colorado's treasury.

Additionally, compliance with the subpoenas would interfere with the public administration of CBI by compelling it to expend and divert significant state resources. The subpoenas are expansive, seeking "any and all" records responsive to ten detailed subparts, and in some cases, without temporal limitation. ECF Nos. 33-1 and 33-2. These subpoenas would require Deputy Director Volz and other CBI officials to stop engaging in their official duties to conduct searches, identify, collect, review, and produce the requested records. Deputy Director Volz estimates this would require expenditure of at least 120 manhours. Decl. of Daniel Volz, ¶ 8. That this diversion of state resources would be required reinforces that the real party in interest is CBI, not Deputy Director Volz.

*Gerlach v. Rokita* provides helpful guidance for determining who is the real party in interest. In *Gerlach*, a plaintiff asserted claims for damages against current and former Indiana officials in their individual capacities. 95 F.4th 493, 500 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 1044 (2025). The requested damages directly correlated to the interest the plaintiff's property earned while in state custody. *Id.* at 501. The money sought, therefore, was not in the personal bank accounts of the employees but, rather, was in the State of Indiana's coffers. *Id.* The Seventh Circuit found that "[t]argeting individual employees for those funds does not change the fact that the amount she claims she is owed should have been paid by the state" and concluded that the suit for damages against the employees in their individual capacities was actually against Indiana. *Id.* (holding individual capacity claims barred by Indiana's sovereign immunity).

14

Here, unable to obtain CBI's records through a Rule 45 subpoena issued directly to CBI, Plaintiff improperly attempts to circumvent CBI's sovereign immunity by seeking CBI's records from a CBI employee. *See Gerlach*, 95 F.4th at 500–01 ("A plaintiff cannot circumvent the sovereign immunity enjoyed by the states and their employees in their official capacities simply by pleading a cause of action against those same employees as individuals."). Plaintiff's demand for production of CBI's records is not a demand to Deputy Director Volz; it is a demand to CBI—and CBI's sovereign immunity bars the subpoena because CBI is the real party in interest.

## III.     The other cases cited by Plaintiff do not change the result.

Under binding Tenth Circuit precedent, as set forth in *Bonnet,* a subpoena is a "suit" triggering sovereign immunity's protection. *Bonnet*, 741 F.3d at 1159–60; *Butler-Moore*, 815 F. Supp. at 1208 ("Eleventh Amendment immunity protects a state from other forms of legal process, and specifically, from answering subpoenas *duces tecum*."); *Butler-Moore*, 2026 WL 915117, at *2 (same). The cases cited by Plaintiff which do not apply *Bonnet's* definition of "suit" conflict with binding Tenth Circuit precedent, lack precedential and persuasive value, and must be disregarded.

### A.  The First Circuit's decision in *Ricco Jonas* lacks any persuasive value.

Plaintiff cites to *United States Department of Justice v. Ricco Jonas*, 24 F.4th 718 (1st Cir. 2022), to suggest the Eleventh Amendment does not prohibit service or enforcement of subpoenas to produce documents on government employees. ECF No. 44 at 16–17. *Ricco Jonas* is not persuasive for at least three reasons.

First, the subpoena at issue in *Ricco Jonas* was not Rule 45 subpoena, it was an administrative subpoena, and it was issued by a federal agency, not by a private party, for the

purpose of investigating criminal activity and did not implicate sovereign immunity's protections

for suits brought by private parties against States. *See Bd. of Trustees of Univ. of Ala. v. Garrett*,

531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that

nonconsenting States may not be sued by private individuals in federal court."); *U.S. v.

Mississippi*, 380 U.S. 128, 140 (1965) ([N]othing in [the Eleventh Amendment] or any other

provision of the Constitution prevents or has ever been seriously supposed to prevent a State's

being sued by the United States."). The state official correctly and explicitly disclaimed the

Eleventh Amendment as a basis for quashing the subpoena. *Ricco Jonas*, 24 F.4th at 727 n.8

(recognizing the official argued the case "involve[d] an issue of statutory interpretation, not

Eleventh Amendment immunity").

Second, to the extent *Ricco Jonas* says anything about the scope of a State's sovereign

immunity from suit by a private party, it is based on a faulty premise. The First Circuit applied

*Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982), to find the state

official, not New Hampshire, was the subpoena's true target. *Ricco Jonas*, 24 F.4th at 726–727.

However, *Treasure Salvors* does not supply the applicable standard. [3]

---

[3] *Ricco Jonas* and Plaintiff also cite dictum from *Barnes v. Black*, 544 F.3d 807 (7th Cir. 2008).
In *Barnes*, the Seventh Circuit stated in response to an amicus brief that the Eleventh
Amendment would not bar an "order commanding a state official who is not a party to a case
between private persons to produce documents in the state's possession during the discovery
phase of the case[.]"544 F.3d at 812. However, the Seventh Circuit dismissed the action for lack
of appellate jurisdiction and did not actually hold that the Eleventh Amendment would not bar
third-party discovery to a state official. Regardless, the Seventh Circuit's dictum was based on its
conclusion that orders compelling the production of documents "do not compromise state
sovereignty to a significant degree[.]" *Id.* Here, under binding Tenth Circuit precedent, a
subpoena is a "suit," which does compromise a State's sovereignty.

In *Treasure Salvors*, the plurality found the Eleventh Amendment did not bar the execution of a warrant to arrest *in rem* issued under the court's admiralty *in rem* jurisdiction because the state officials lacked statutory authority to take the action at issue in that case—that is, to retain the property at issue. 458 U.S. at 696–97. In so finding, the plurality recognized that an "'action of an officer of the sovereign (be it holding, taking, or otherwise legally affecting the plaintiff's property)' that is beyond the officer's statutory authority is not action of the sovereign [ ]; a suit for specific relief against the officer is not barred by the Eleventh Amendment." *Id.* (quoting *Larson*, 337 U.S. at 701).

The plurality further explained that "[t]his conclusion follows inevitably from *Ex parte Young*. If conduct of a state officer taken pursuant to an unconstitutional state statute is deemed to be unauthorized and may be challenged in federal court, conduct undertaken without any authority whatever is also not entitled to Eleventh Amendment Immunity." *Id. Treasure Salvors* did not hold that a state employee is always subject to service of process. Instead, the plurality only created an additional exception to sovereign immunity based on the *ultra vires* acts of state officers, i.e., acts taken without any authority whatsoever. *Id.; see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997) (finding *Treasure Salvors* inapplicable to suit against state officials "because the state officials [in *Treasure Salvors*] were acting beyond the authority conferred upon them by the State," a theory not pursued by the plaintiffs); *Pennhurst State Sch.*, 465 U.S. at 101 n.11 (discussing test under *Treasure Salvors* for determining whether a state officer acted *ultra vires* such that they do not receive Eleventh Amendment protection).

The exception to sovereign immunity applicable in *Treasure Salvors* did not apply in *Ricco Jonas*, and it does not apply here because there is no assertion Deputy Director Volz acted

in some way without authority. Moreover, Plaintiff has disclaimed any reliance on *Ex parte Young. See* ECF No. 44 at 13 (stating the *Ex parte Young* merits elements have no role). Regardless, Plaintiff asserts no claim of unconstitutional action by Deputy Director Volz which would allow relief under *Ex parte Young.*[4]

Third, the First Circuit based its decision, in part, on its conclusion that a DEA administrative subpoena was not a suit because it "does not involve a claim in law or equity against the State of New Hampshire." *Ricco Jonas*, 24 F.4th at 727. However, to the extent the State's sovereign immunity was even at issue, the First Circuit did not meaningfully apply the Supreme Court precedents requiring courts to determine whether the remedy sought is truly against the state and whether the state is the real party in interest. The Court did not analyze whether the subpoena would require the state to act by producing the records or restrain the state from acting by not preventing production of the records.[5]

---

[4] As discussed in the motion to quash, ECF. No. 33 at 10, and by Magistrate Judge Starnella, ECF No. 44-1 at 28:21–29:11, *Ex parte Young* plainly does not apply to the Rule 45 subpoenas at issue here.

[5] Plaintiff cites three district court cases in support of her argument that "district courts from across the country" have followed the reasoning of *Ricco Jonas*. However, in none of the district court decisions cited were the courts required to apply the Tenth Circuit's binding precedent holding that a third-party subpoena is a "suit." *See Cuomo v. Off. of the N.Y. State Att'y Gen.*, 754 F. Supp. 3d 334, 355 (E.D.N.Y. 2024) (stating it was "unconvinced that responding to a subpoena is such an affront to state dignity"); *Allen v. Woodford*, 544 F. Supp. 2d 1074 (finding discovery request not a suit); *Charleston Waterkeeper v. Frontier Logistics, L.P.*, 488 F. Supp. 3d 240, 250–51 (D.S.C. 2020) (same). While immaterial to the resolution of this objection, to the extent Plaintiff is implying that but for Judge Blackburn's *Butler-Moore* decisions and Magistrate Judge Starnella's decision in this case, district courts are unanimous in their refusal to quash subpoenas based on sovereign immunity, she is incorrect. In addition to the Fifth and Eighth Circuit opinions quashing subpoenas based on state sovereign immunity, various district courts have similarly quashed subpoenas, *inter alia*, *Bennett v. Cuomo*, 2024 WL 2963714, at *11 (S.D.N.Y. June 12, 2024) (holding subpoena and motion to compel are "suit" and "judicial proceeding" barred by state sovereign immunity); *Adkins v. Fields*, 747 F. Supp. 3d 1052, 1057 (E.D. Ky. 2024) ("[S]ubpoenaing the Attorney General's office would infringe on its immunity from suit,

**B. The Eighth Circuit's decisions in *Mick* and *Alltel* support quashing the subpoenas.**

In *Missouri DNR*, the Eighth Circuit concluded that the Eleventh Amendment did not bar a document subpoena based on the Court's finding that *Missouri DNR* had not met its burden of showing "how production of these documents infringes on the State of Missouri's autonomy or threatens its treasury[.]" *In re Missouri Dep't of Nat. Res.*, 105 F.3d 434, 436 (8th Cir. 1997). However, *Missouri DNR* "left open the question whether sovereign immunity shields a State from *some* third-party discovery requests, namely, requests that infringe its autonomy or threaten its treasury." *Mick*, 171 F.4th at 1104 (emphasis added).

The Eighth Circuit's later decision in *Alltel Communications, LLC v. DeJordy*, 675 F.3d 1100, 1105 (8th Cir. 2012), cast "considerable doubt on" *Missouri DNR*. *Russell*, 49 F.4th at 518 n.12. In *Alltel*, the Eighth Circuit held that "a federal court's third-party subpoena in private civil litigation is a 'suit' that is subject to Indian tribal immunity." 675 F.3d 1100, 1105 (8th Cir. 2012). *Alltel* recognized that it is "apparent" that third-party subpoenas have "[t]he potential for severe interference with government functions[.]" *Id.* at 1103. The Eighth Circuit was unwilling to predict how the Supreme Court would decide a case concerning a third-party subpoena served on a state agency in private federal court litigation but stated that "[b]ased upon the reasoning in cases such as *Boron Oil [Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989)], the Court might well conclude that the Eleventh Amendment applies[.]" *Id.* at 1104–05.

Subsequently, in *Mick*, the Eighth Circuit applied sovereign immunity to bar a Rule 30(b)(6) subpoena to the Nebraska State Patrol. *Mick*, 171 F.4th at 1104–05. Bound by *Missouri*

including discovery[.]"); *Felix v. Cnty. of Nassau*, 344 F.R.D. 441, 445 (E.D.N.Y. Sept. 12, 2023) (holding third-party subpoena to New York's Office of the Attorney General is barred by state sovereign immunity).

*DNR*'s holding "that, at least in some instances, a State may not invoke its Eleventh Amendment immunity when refusing to comply with a *non-disruptive third-party discovery subpoena*," the Eighth Circuit concluded that whether sovereign immunity bars a third-party subpoena against a State is a "fact-intensive inquir[y] that turn[s] on the circumstances of a particular case and the third-party discovery subpoena at issue." *Id.* at 1105 (emphasis added). Applying this standard, the Eighth Circuit held that because the Rule 30(b)(6) subpoena "could consume over 100 hours of taxpayer funded time," it infringes on Nebraska's autonomy by subjecting it to the process of a judicial tribunal and interfering with its public administration. *Id*.

Here, the fact-intensive inquiry employed in the Eighth Circuit cannot apply because, under binding Tenth Circuit precedent, a subpoena is a "suit," and a "suit" compromises a State's sovereignty. Even if the Eighth Circuit's fact-intensive inquiry did apply, CBI has met that burden. Plaintiff has not and cannot provide evidence disputing Deputy Director Volz's estimate that compliance with the subpoenas could require 120 hours of taxpayer time. As such, even under *Mick*, sovereign immunity would bar the subpoenas at issue in this case.

## IV.    Plaintiff's arguments based on *Lapides* and perceived "unfairness" lack merit.

Plaintiff contends that because CBI voluntarily provided query data to the defense in this case, the Supreme Court's decision in *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2002), now requires that this Court compel CBI to expend its resources responding to Plaintiff's subpoena, relying on what Plaintiff asserts is *Lapides*' "fairness principle." *Lapides* is wholly distinguishable from the circumstances at hand. Furthermore, there is no exception to sovereign immunity based on Plaintiff's proffered "fairness principle" ECF No. 44 at 21.

In *Lapides*, the defendant State voluntarily removed the case to federal court. When the federal claims were dismissed, the State asserted that the remaining state claims were barred by its sovereign immunity. 535 U.S. at 616–617. The Supreme Court held "the State's action joining the removing of the case to federal court waived its Eleventh Amendment immunity." *Id.* at 624. *Lapides'* holding rests entirely on the fact that the State had "*voluntarily* invoked the jurisdiction of the federal court." *Id.* at 622. In so holding, the Court distinguished *Lapides* from other cases where a private plaintiff had involuntarily brought the State before the federal court. *Id.*

Plaintiff correctly concedes that the principles animating *Lapides'* holding—that is, *voluntarily* becoming a party and submitting its rights for judicial determination—simply do not apply here. *Id.* at 619; ECF No. 44 at 21 ("Plaintiff presses *Lapides* for its fairness principle, not as a removal-style waiver."). Instead, Plaintiff asserts that *Lapides* stands for a "fairness principle" that subordinates CBI's sovereign immunity to Plaintiff's subpoena. ECF No. 44 at 21. This argument fails for two reasons. First, Plaintiff's contentions related to CBI using sovereign immunity to obtain "litigation advantages" have no merit. Second, while *Lapides* addressed questions of fundamental fairness, it did not establish an exception to sovereign immunity that allows private litigants to overcome the State's immunity based on any inherent inequity resulting from its application.

Unlike the litigant in *Lapides*, CBI is not a party to this case, did not remove it to federal court, and has done nothing to voluntarily subject itself to federal jurisdiction. Instead, it has asserted its immunity from the go. There is no legal or factual basis supporting Plaintiff's argument that CBI waived its sovereign immunity.

21

CBI did not produce any documentation to Defendants through any judicial process, and Plaintiff is not at any informational disadvantage relative to the Defendants. Furthermore, CBI, a non-party, does not stand to gain any "litigation advantages" in this case. CBI cannot be at an advantage or disadvantage when it is unaffected by the outcome of the litigation. CBI's only stake in this matter is the defense of its entitlement to not have a private litigant leverage the coercive and compulsory power of the federal courts to make CBI an unconsenting participant.

To the extent Plaintiff asserts the State has chosen a side in this litigation, it has not, and no inequity has resulted from any action by the State. Plaintiff takes issue with a single action by CBI—voluntarily providing query data to the defense. However, pursuant to the federal rules of civil procedure, Plaintiff can obtain from the Defendants any matter in their possession relevant to the case through the ordinary course of discovery and did in fact obtain the query data provided to the Garfield County Sheriff's Office. ECF No. 41-1. As such, no inequity has resulted.

Regardless, Plaintiff argues for the application of a "fairness principle" not articulated by the Supreme Court and which does not apply to waive the CBI's sovereign immunity based on CBI's single, voluntary production of query data. The Eleventh Circuit has observed that "[a] close reading of the opinion shows that the *Lapides* Court sought to avoid the unfairness, anomaly, and inconsistency of a state's invocation of federal jurisdiction by removal, on one hand, and on the other, its denial of federal jurisdiction by asserting immunity from federal court proceedings." *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013). "In other words, it would be unfair to allow a state to remove to a federal forum and then assert jurisdictional immunity from that federal forum . . . ." *Id.* This is the unfairness with which *Lapides* was

concerned, not remediating some broad, undefined class of all perceived inequities that may be visited on a private litigant whose attempts to hale an unconsenting State before a federal court are barred by immunity.

Plaintiff's "approach to waiver is startling in its breadth and, more importantly, appears to conflict with well established principles of law." *R.I. Dep't of Env't Mgmt. v. United States*, 304 F.3d 31, 49 (1st Cir. 2002). "It has repeatedly been held that a state may raise its immunity from suit at any time during the proceedings, including on appeal." *Id.* "The Supreme Court gave no indication that its decision in *Lapides* would upset such established precedent." *Id.* There is simply no authority for Plaintiff's assertion that CBI, by voluntarily producing information on a single occasion, waived its immunity under *Lapides*. *Cf. R.I. Dep't of Env't Mgmt.*, 304 F.3d at 48–49 (rejecting argument that, under *Lapides*, Rhode Island waived its immunity through its conduct in an administrative proceeding—in which it completed discovery, including depositions, issuance of subpoenas, and participation in nineteen days of hearing).

Furthermore, "[a]lthough a state may waive the sovereign immunity granted to it under the Eleventh Amendment, [the Tenth Circuit] requires a showing of unequivocal intent to do so." *Guttman v. Khalsa*, 669 F.3d 1101, 1111 (10th Cir. 2012). Here, Plaintiff cannot make such a showing because CBI has consistently asserted its immunity. To the extent Plaintiff relies on CBI's voluntary production of the query data to suggest a waiver occurred, that production is not a showing of unequivocal intent.

In *Guttman*, the Tenth Circuit held that New Mexico did not waive its sovereign immunity even though it had entered into a joint status report and provisional discovery plan. *Id.* at 1110. The Tenth Circuit determined New Mexico preserved its immunity because it asserted it

23

in its first motion to dismiss and many subsequent pleadings. *Id.* ("Although it has acceded to the reality of some discovery in the early stages of litigation, New Mexico continues to preserve its sovereign immunity defense."); *see also Thompson v. Richter*, 2025 WL 1233519, at *3 (5th Cir. 2025) ("[A] state agency's partial participation as a third party in discovery does not amount to the 'unequivocal' waiver of sovereign immunity our precedent requires.").

Finally, Plaintiff's argument that the documents she seeks "are necessary and available nowhere else"[6] does not change the analysis. The importance of the documents does not dictate the bounds of CBI's sovereign immunity, and Plaintiff provides no authority to the contrary.

Although Plaintiff attempts to extract a generalized "fairness principle" from *Lapides*, the Court itself narrowly limited its opinion and gave no indication that its fairness concerns reached broader than the voluntary removal scenario actually presented by the facts of that case.

### CONCLUSION

For the foregoing reasons, Movants respectfully ask the Court to overrule Plaintiff's objection, find CBI's sovereign immunity bars the subpoenas, and quash the subpoenas.[7]

---

[6] Plaintiff asserts the documents are "available nowhere else," but, at this stage, she has only claimed to be unable to obtain them from Defendants, Garfield County, and CBI. As of the hearing on the motion to quash, Plaintiff had not completed the discovery dispute process with Garfield County and Defendants, ECF No. 44-1 at 36:9–13, and Plaintiff has not shown there is nowhere else from where or no other process through which the records can be obtained.

[7] To the extent Plaintiff requests the Court compel production or narrow the subpoenas and order staged production, ECF No. 44 at 24, Plaintiff's request should be denied. Movants served non-sovereign immunity objections to Plaintiff's requests, the parties have not conferred on those objections, and they are not currently before the Court. Only the threshold question of sovereign immunity is currently at issue.

Respectfully submitted this 7th day of July 2026.

Philip J. Weiser
Attorney General

*s/ Clayton J. Ankney*
Clayton J. Ankney
Second Assistant Attorney General
Elisabeth W. McCarty
Senior Assistant Attorney General
Civil Litigation & Employment Law Section
Ralph L. Carr Judicial Building
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6000
clayton.ankney@coag.gov
Lisa.McCarty@coag.gov