IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01854-JLK-KAS

JENNIFER MARIE O'CONNOR,

     Plaintiff,

v.

DAVID MULKEY, and
NATHAN LAGIGLIA,

     Defendants.

---

**PLAINTIFF'S REPLY IN SUPPORT OF HER OBJECTION [DOC. 44] TO THE
MAGISTRATE JUDGE'S JUNE 10, 2026, ORDER [DOC. 43]**

---

The legal question before this Court is straightforward, and the stakes are high: does state immunity under the Eleventh Amendment allow a state agency to withhold relevant, subpoenaed records in a civil rights lawsuit alleging constitutional violations by officers who used the State's criminal-justice database when making an unlawful arrest? Plaintiff alleges the officers arrested her in place of another woman even though the database records they pulled up showed identifiers that did not match hers, and the subpoenaed records are the only evidence of what the officers actually saw on their screens before they arrested her. Secondarily, may a state agency voluntarily produce records to the defendant police officers, yet withhold the same and similarly associated records from the plaintiff in the same litigation? The Court should answer no to both questions, on legal, historical, and equitable grounds.

The response filed by CBI confirms the core point of Plaintiff's Objection: no binding

1

precedent holds that a Rule 45 document subpoena for existing records is a "suit" against a State. The response instead assembles that rule by extrapolation from a tribal-immunity case, a federal-immunity case, and a case that adjudicated no sovereign-immunity question at all, while dismissing as "speculat[ion]" the one passage of Tenth Circuit authority that speaks directly to a discovery request served on an agency official, footnote 1 of *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1162 n.1 (10th Cir. 2014). Doc. 47 at 8.

Plaintiff does not contend the order is wrong merely because the question is open; district courts decide open questions. The order is contrary to law because it converts inapplicable authority into a categorical jurisdictional bar. In doing so, it undermines the court's truth-seeking function and shields the defendant officers behind a doctrine of state immunity never intended for them. Rule 72(a)'s contrary-to-law standard exists precisely to correct legal conclusions built on misread authority. Plaintiff asks the Court to correct it here before it blocks critical evidence in this case and in the many civil rights cases that will follow it.

## ARGUMENT

### I. THE ORDER RESTS ENTIRELY ON CONCLUSIONS OF LAW, WHICH THIS COURT REVIEWS WITHOUT DEFERENCE, AND CBI DOES NOT ARGUE OTHERWISE.

Rule 72(a) supplies the governing standard. When a party objects to a magistrate judge's order on a nondispositive matter, the district judge must modify or set aside any part of the order that is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The rule's two prongs divide the labor. Findings of fact stand unless they are clearly erroneous. Conclusions of law receive no such protection: under the contrary-to-law prong, the district judge asks only whether the magistrate judge's legal conclusions are correct. Doc. 44 at 7–8.

Every step of the June 10 ruling falls on the legal side of that line. The order concluded that a Rule 45 document subpoena is a "suit"; that CBI is the real party in interest when a records request is served on its custodian; that no exception to immunity applies; and that even plaintiff-funded compliance would "pierc[e] the 11th Amendment immunity protections." Doc. 44-1 at 35:17–24 (official transcript of the June 10, 2026, hearing, docketed at Doc. 45); Doc. 44 at 7–8. Each of those conclusions interprets the law. None resolves a disputed fact. The Court therefore reviews each conclusion for correctness and owes the order no deference on any of them.

CBI's response does not contest this standard. It never cites Rule 72(a) or § 636(b)(1)(A), never uses the phrases "clearly erroneous" or "contrary to law," and never identifies a finding of fact to which deference could attach; it defends the order only as "correctly determined." On the threshold question of how this Court reviews the order, there is no dispute. Both sides ask the Court to decide the immunity question on the law. The jurisdictional character of the ruling reinforces that conclusion. CBI told the Magistrate Judge that the Eleventh Amendment deprives this Court of subject-matter jurisdiction over the subpoenas. Doc. 33 at 4 (citing *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002)). Whether a federal court has subject-matter jurisdiction is always a question of law. If the order erected a jurisdictional bar where the law erects none, the order is contrary to law and Rule 72(a) requires that it be set aside.

## II. NO BINDING PRECEDENT HOLDS THAT A DOCUMENT SUBPOENA IS A "SUIT" AGAINST A STATE; THE ORDER RESTS ON AN EXTRAPOLATION ACROSS THREE DIFFERENT IMMUNITIES.

The analysis begins with a distinction the response urges this Court to overlook: state immunity, federal sovereign immunity, and tribal immunity are three different doctrines, with different sources and different scopes. State immunity (the immunity CBI claims) belongs to the

3

States, sounds in the Eleventh Amendment and the constitutional structure, and protects a nonconsenting State from being "haled into court" as a defendant by a private party. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 258 (2011). Federal sovereign immunity is a creature of common law and sweeps more broadly: the federal government is not subject to "judicial process" of any kind without its consent. *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 931 (10th Cir. 1996). Tribal immunity belongs to the Indian tribes and is a matter of federal common law that has developed on its own track. *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1104 (8th Cir. 2012). CBI's own brief concedes the three are not interchangeable. Doc. 47 at 3. The concession matters because the order rests entirely on authority concerning the other two immunities and survives only if those three doctrines are improperly conflated.

The "inescapable truth" the response announces is that "under binding Tenth Circuit precedent, a 'suit' includes judicial process, and a subpoena for production of documents is a form of judicial process." Doc. 47 at 6. But the precedent behind that assertion is precedent about other sovereigns. *Bonnet* held that a subpoena duces tecum served on an Indian tribe is a "suit" for purposes of tribal immunity. 741 F.3d at 1159–61. *Murdock* construed the sovereign immunity of the federal government. 81 F.3d at 931. And *Becker v. Kroll*, 494 F.3d 904, 922 (10th Cir. 2007), adjudicated no sovereign-immunity question at all; the response borrows from it only a description of how subpoenas operate. Doc. 47 at 6. None of the three holds that a State's immunity bars a Rule 45 document subpoena for existing records. For the question this case actually presents, whether a state agency and the appropriate agency official must produce relevant records in a civil rights case alleging constitutional violations by municipal-officer defendants, there is no binding precedent, and the response never identifies one. Its "inescapable truth" is an inference drawn

4

across three distinct immunities: an extrapolation, not a rule.

Plaintiff wants to be precise about what follows from that and what does not. The absence of a binding holding does not, by itself, make the order contrary to law; district courts decide open questions, and they properly reason from analogous authority when they do. The Objection's contention is different: the order answered the open question incorrectly, because the extrapolation it adopted misreads what each borrowed authority holds, contradicts the Supreme Court's account of what state immunity protects, and produces results that the doctrine's own history cannot support. Doc. 44 at 8–12. An order that reaches its conclusion by misapplying the governing authorities is contrary to law, and that is the showing this reply makes.

Start with *Bonnet* itself, because the response's treatment of it is asymmetric. The response dismisses footnote 1 as "speculat[ion]" and dicta. Doc. 47 at 8. That footnote states that "neither a state nor a tribe would appear to be immune from a discovery request served on the appropriate agency official, rather than on the agency itself, although other privileges or protections may apply." *Bonnet*, 741 F.3d at 1162 n.1. Yet the response's entire extension of *Bonnet* from tribes to States rests on a conditional dictum one page earlier in the same opinion: the court's statement that "[u]nder our binding precedent—namely *Murdock* and *Becker*—the Eleventh Amendment may well shield a state agency from discovery in federal court." Doc. 47 at 7 (quoting *Bonnet*, 741 F.3d at 1161). Neither passage is a holding about the States. If *Bonnet*'s dicta guide the analysis, they guide it both ways. And footnote 1 is the only passage that addresses the situation actually before this Court: a discovery request served on the appropriate agency official. The footnote's own qualifier, that "other privileges or protections may apply," contemplates the ordinary Rule 45 process Plaintiff has embraced from the start.

The Supreme Court's own description of state immunity confirms that a records subpoena does not implicate it. The Framers considered it "an impermissible affront to a State's dignity to be required to answer the complaints of private parties" in a federal forum. *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760–61 (2002). "The specific indignity against which sovereign immunity protects is the insult to a State of being haled into court without its consent." *Stewart*, 563 U.S. at 258. *Federal Maritime Commission* itself illustrates what those descriptions mean in practice: South Carolina's port authority was a named respondent, summoned before an adjudicative body to answer and defend against a private party's complaint. 535 U.S. at 747–49. A records custodian producing copies of existing documents faces nothing of the kind: he is not called to answer or defend a claim, and nothing is adjudicated against the State. The response never explains how retrieving and copying records forces Colorado to answer anything, and that omission leaves the Objection's textual and structural showing unanswered. Doc. 44 at 8–12.

III.    ***BUTLER-MOORE* BINDS NO ONE AND CANNOT RECONCILE ITSELF WITH THE TENTH CIRCUIT'S ONLY GUIDANCE.**

Because no binding precedent answers the question, the decision the order actually followed deserves early and careful attention. The Magistrate Judge did not derive her rule from the Supreme Court or from the Tenth Circuit directly; she adopted "Judge Blackburn's reasoning" in *Butler-Moore v. Garcia* and found "no reason to depart" from it. Doc. 44-1 at 27:13–20. *Butler-Moore* is two district-court orders, and a district court's decision binds no other judge. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). The orders therefore carry only the persuasive force their reasoning earns, and neither order withstands the scrutiny the response invites.

In the first order, the plaintiff never contested that immunity reaches subpoenas; she litigated only a statutory-waiver theory. The court did not decide the question presented here, and

it expressly declined to decide whether a subpoena directed to the agency's records custodian would stand, while quoting *Bonnet*'s observation that the Tenth Circuit perceived "no reason why an Indian tribe should be able to shut off an appropriate judicial demand for discovery" served on a tribal official. *Butler-Moore v. Garcia*, 815 F. Supp. 3d 1206, 1208–09 (D. Colo. 2025). The first order thus left open precisely the path Plaintiff pursued here, service on the records custodian, and it quoted footnote 1 approvingly in leaving the question open.

The second order quashed a subpoena served on a state agency's records custodian that sought the defendant troopers' personnel files. The court observed that the troopers could ostensibly request those files themselves, a safety valve with no counterpart in this case, where the Magistrate Judge doubted that Defendants can obtain the CCIC records at all. *Butler-Moore v. Garcia*, No. 24-cv-3020, 2026 WL 915117, at *3 (D. Colo. Apr. 2, 2026); Doc. 44-1 at 26:20–27:03. And on the decisive point, the second order is candid about its own difficulty: it "simply cannot find" support for the rationale, grounded in *Ex parte Young*, 209 U.S. 123 (1908), that the Tenth Circuit itself suggested in *Bonnet*'s footnote 1. *Butler-Moore*, 2026 WL 915117, at *2–3. A district court order that cannot reconcile itself with the court of appeals' only on-point guidance is a fragile foundation for a categorical jurisdictional bar.

## IV.    THE RESPONSE'S NEW COMMON-LAW-IMMUNITY THEORY WIDENS THE ORDER'S ERROR RATHER THAN CURE IT.

Section I.A of the response presents a theory that appears nowhere in the motion to quash. The motion argued the Eleventh Amendment. Doc. 33. The response now argues that the Eleventh Amendment's text does not matter, because a broader, pre-constitutional, common-law immunity gives the States the same immunity from any "judicial process" that the federal government enjoys. Doc. 47 at 3–6.

7

Consider what the theory would mean if it were correct. If state common-law immunity were truly coextensive with federal immunity and extended to all "judicial process," routine discovery would grind to a halt. Every trial subpoena to a state employee-witness, records request to a county clerk holding state records, and certified-copy demand would transform into a "suit" the State could unilaterally veto or weaponize through selective document production. Nothing in the doctrine supports that result. *Alden v. Maine* locates the structural core of state immunity in protection against "private suits for money damages" prosecuted against a nonconsenting State: coercive adjudications in which the State must answer as a defendant or suffer judgment. 527 U.S. 706, 748–49 (1999). A non-party custodian's production of existing records adjudicates nothing, and *Alden* nowhere suggests otherwise.

The historical answer in footnote 2 of the response addresses the wrong question. Doc. 47 at 5 n.2. Whether the founding generation defended background principles of state immunity says nothing about whether early federal courts issued evidentiary process to state officers. They did, and for two centuries the practice drew no Eleventh Amendment objection. *Cuomo v. Off. of the N.Y. State Att'y Gen.*, 754 F. Supp. 3d 334, 355 (E.D.N.Y. 2024) (collecting the founding-era practice). The governing historical test asks whether a proceeding is of a sort that would have been "anomalous and unheard of when the Constitution was adopted." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450–51 (2004) (quoting *Fed. Mar. Comm'n*, 535 U.S. at 755). Evidentiary process directed to state officers fails that description; on the history *Cuomo* collects, it was the founding-era norm. The proceeding that would have been "anomalous and unheard of" when the Constitution was adopted is the one CBI proposes: a State's categorical veto of a federal court's records subpoena.

Finally, the extension from tribal immunity to state immunity is the argument's weakest step. Tribal immunity is federal common law, and the Eighth Circuit has squarely held that tribal and state immunity are not interchangeable. *Alltel*, 675 F.3d at 1104. The Tenth Circuit in *Bonnet* decided only the tribal question and hedged the state one. An argument that works only if three different immunities are "coextensive" concedes that no court has issued the holding it needs.

**V.   UNDER *LEWIS*, THE REAL-PARTY-IN-INTEREST INQUIRY TURNS ON THE JUDGMENT SOUGHT, AND A RECORDS SUBPOENA SEEKS NO JUDGMENT AGAINST THE STATE.**

Eleventh Amendment immunity is not limited to suits that name a State as a party; it also reaches proceedings in which the State is the "real party in interest," meaning proceedings in which the judgment sought would in substance operate against the State. The response invokes that doctrine to argue that subpoenas served on CBI's records custodian are in substance directed at Colorado. The doctrine's own test defeats the argument. The Supreme Court measures the real party in interest by the judgment sought: "The critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab." *Lewis v. Clarke*, 581 U.S. 155, 165 (2017). Apply that inquiry here, step by step. An order enforcing a document subpoena binds a records custodian to produce copies of existing records. It adjudicates no liability of the State, awards nothing from the state treasury, and enjoins no state policy. Under *Lewis*'s own formulation, no judgment would bind the State, so the State is not the real party in interest.

Apart from *Butler-Moore*, which Part III addresses, every authority in the response's real-party-in-interest section involved something a records subpoena does not seek: a claim for damages or affirmative relief against a sovereign or its officers. *Lewis* itself involved tort damages against a tribal employee. *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945),

overruled in part on other grounds by *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002), involved a tax refund from the state treasury. *Dugan v. Rank*, 372 U.S. 609, 620 (1963), and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984), involved decrees directing or restraining government action. *Gerlach v. Rokita*, 95 F.4th 493, 500–01 (7th Cir. 2024), involved takings damages against Indiana officials over property held by the State. In each case, the plaintiff sought something from the sovereign: money, or an order controlling how the government acts. A subpoena for copies of existing records seeks neither. Treating custodial production as "relief against the sovereign" does not apply the real-party-in-interest test; it assumes the very conclusion the test exists to check. The same reasoning answers the response's capacity cases. *Smith v. Plati*, 56 F. Supp. 2d 1195, 1203 (D. Colo. 1999) (dismissing individual-capacity claims because the relief sought could be obtained only from the defendant in his official capacity), and *Native American Distributing v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1297 (10th Cir. 2008) (tribal officials immune from official-capacity suits because their official powers enable them to grant relief on the sovereign's behalf), both concern claims for relief that only an official could grant. A subpoena for records seeks no relief on the sovereign's behalf, so neither case reaches it. Doc. 44 at 14–15.

The concession the response says Plaintiff "freely concedes" (Doc. 47 at 12) is a misreading. The sentence it quotes, "[p]roducing existing query logs orders CBI to do nothing but hand over records it already keeps" (Doc. 44 at 15), measures burden: production requires nothing beyond retrieval and copying. Producing records is not the kind of exercise of governmental power that *Dugan* restrains. On the response's reading, every subpoena "compels" every recipient and is therefore a suit. No decision of the Tenth Circuit has adopted that categorical rule.

The new contempt argument sweeps more broadly still. Rule 45(g) makes every subpoena enforceable by contempt against every recipient. The response's own authority illustrates the point: *Coomer v. Make Your Life Epic, LLC*, 140 F.4th 1269, 1273 (10th Cir. 2025), affirmed a daily contempt fine against a private non-party in a defamation suit, and the opinion contains no sovereign-immunity analysis at all. If contempt exposure converted a subpoena into a "suit" against its recipient, every subpoena would be a suit against everyone, and Rule 45 could not function. The coercion also arrives only at the end of a judicially supervised process: objections, motion practice under Rule 45(d), judicial tailoring, and a court order. *Becker*'s own formulation is that a subpoena commands production "only after judicial process is afforded." 494 F.3d at 922. Contempt at the end of that process confirms that the district court, not the recipient, decides what compliance requires.

As for the subpoena to Deputy Director Volz, the Magistrate Judge rejected it by asking whether it "seek[s] to stop any alleged violations of constitutional law." Doc. 44-1 at 29:21–30:6. That is the merits test for a claim under *Ex parte Young*, which lets a plaintiff sue a state official as a defendant for prospective relief against an ongoing violation of federal law. Plaintiff has brought no such claim, so that cause-of-action test has no work to do here; she is not suing Mr. Volz for relief of any kind. She served him, as the custodian who maintains and can access the CCIC system, with a request for records. *Bonnet*'s footnote 1 draws on *Ex parte Young* for a different and narrower point, the structural principle that process directed to a state officer is not process against the State, and it describes precisely this path: service on "the appropriate agency official, rather than on the agency itself." The response insists that no third capacity category exists beyond individual and official capacity, but no capacity label needs to attach to Mr. Volz at all.

11

The dispositive question is whether serving the records custodian, who has already retrieved and transmitted the officers' CCIC query logs to defense counsel in a single February 13, 2026, email (Doc. 41-1), constitutes a suit against the State of Colorado. Footnote 1 answers that question in Plaintiff's favor, and the response never engages its reasoning.

**VI.     THE CIRCUITS ARE SPLIT, THE TENTH CIRCUIT HAS NOT CHOSEN A SIDE, AND CBI'S OWN ALTERNATIVE ARGUMENT SHOWS THAT CASE-BY-CASE ANALYSIS IS THE WORKABLE PATH.**

In *U.S. Dep't of Justice v. Ricco Jonas*, 24 F.4th 718, 726–27 (1st Cir. 2022), the First Circuit held that state immunity did not bar enforcement of a subpoena for records served on a New Hampshire state official, rejecting the argument that the State was the subpoena's "true target." The court explained that "courts have rejected the invitation by state officers to blur the distinction between state officers and the states," and that courts have upheld service of process on state officers for the production of documents in their possession, drawing on discovery cases from private litigation. *Id. at* 726–27. The response gives three reasons to discount the decision. First, it notes that the subpoena there was administrative and federally instigated. That is accurate, but the reasoning just quoted did not depend on the identity of the subpoena's issuer; it addressed the relationship between a state officer and the State. Second, the response notes that the court engaged *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 696–97 (1982) (plurality opinion). The response reads the plurality correctly, but Plaintiff's theory does not depend on *Treasure Salvors*: the officials there lacked any colorable claim of authority to retain the property at issue, and Plaintiff makes no claim that Mr. Volz acted beyond his authority. Her theory rests on *Bonnet*'s footnote 1. Third, the response reads footnote 8 of *Ricco Jonas* as a disclaimer of the Eleventh Amendment. The footnote is the opposite: it rejected the official's attempt to recharacterize the

immunity precedents as involving mere "statutory interpretation, not Eleventh Amendment immunity." *Id. at* 728 n.8.

Section III.B of the response is difficult to reconcile with itself. Its heading states that *Mick v. Gibbons*, 171 F.4th 1097 (8th Cir. 2026), "support[s] quashing"; its text argues that *Mick*'s inquiry "cannot apply" in this circuit; and its close applies that inquiry in the alternative and asserts that CBI "has met that burden." Doc. 47 at 19–20. The alternative argument matters because it shows that the Eighth Circuit's framework can be applied to these subpoenas without difficulty. That framework has two anchors. The first is *In re Mo. Dep't of Nat. Res.*, 105 F.3d 434, 436 (8th Cir. 1997) (*Missouri DNR*), in which the Eighth Circuit refused to quash a third-party document subpoena served on a state agency, finding "simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court." And in *Mick*, the court reaffirmed that it remains "bound by *Missouri DNR*'s holding that, at least in some instances, a State may not invoke its Eleventh Amendment immunity when refusing to comply with a non-disruptive third-party discovery subpoena." 171 F.4th at 1104–05. *Mick* itself quashed a deposition subpoena that would have consumed "over 100 hours" preparing five designees on six topics, and the court contrasted that burden with "the simple document subpoena in *Missouri DNR* that was a narrow and minimally disruptive third-party request." *Id. at* 1105. The Objection made that comparison. Doc. 44 at 17–18. The response never answers it. Plaintiff's records request sits on the *Missouri DNR* side of the Eighth Circuit's line.

CBI's estimate that compliance with the subpoenas would consume 120 hours of staff time cannot carry the order, for two reasons. It has never been tested: it appears in one conclusory paragraph of a declaration; it reaches 120 hours only by sweeping in 12 years of training records

13

and queries about unrelated individuals; and Plaintiff challenged its accuracy at the hearing. Doc. 44-1 at 22:04–09. And the response will not allow it to be tested now: footnote 7 insists that the ordinary objections CBI served to the subpoenas' scope "are not currently before the Court." Doc. 47 at 24 n.7. Burden cannot be a jurisdictional fact that decides the motion and, at the same time, a merits question too unripe to examine. A subpoena narrowed to the records of this arrest, or staged to begin with the returns sought by subpart (j) of the subpoenas' requests, the CCIC results "in the form as it would have appeared to those who made the request" (Doc. 33-3 ¶ 3(j)), reduces the 120 hours to what the February 13 production actually took: one email. Doc. 41-1.

The remaining authorities do not move the line. *Alltel* is a tribal-immunity case, and the Eighth Circuit's current statement of the state-immunity law is *Mick. Russell v. Jones*, 49 F.4th 507, 512–16 (5th Cir. 2022), is the outlier: it held that state immunity barred subpoenas served on state-court judges, reasoning that the immunity protects a State from coercive judicial process generally. Even *Russell* did not pass on the *Ex parte Young* theory for subpoenas served on agency officials, because "[t]he parties do not discuss this theory." *Id. at* 520 n.13. The district-court decisions collected in footnote 5 of the response (Doc. 47 at 18 n.5) are out-of-circuit decisions that follow *Russell*'s rule and do not engage the Tenth Circuit's footnote 1. Against them stand *Charleston Waterkeeper v. Frontier Logistics, L.P.*, 488 F. Supp. 3d 240, 250–51 (D.S.C. 2020) (enforcing a records subpoena against a non-party state agency), *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1079 (E.D. Cal. 2008) (holding a records subpoena to a state custodian is not a suit against the State), and *Cuomo*, 754 F. Supp. 3d at 351-57 (same, on the founding-era history). Together the two lines of decisions establish that the question is contested, which is Plaintiff's point. The Tenth Circuit has not chosen, and the only passage in which it addressed this precise posture,

14

*Bonnet*'s footnote 1, points toward enforcement.

## VII.    NO CASE PERMITS A STATE AGENCY TO VOLUNTEER EVIDENCE TO ONE SIDE OF A FEDERAL CASE AND THEN INVOKE IMMUNITY AGAINST THE OTHER.

On the selective-use point, the parties agree about what happened. CBI took "a single action": "voluntarily providing query data to the defense." Doc. 47 at 22. The disagreement is about what that action means. The response's authorities, *Guttman v. Khalsa*, 669 F.3d 1101, 1110–11 (10th Cir. 2012), and the out-of-circuit cases collected alongside it, all involve sovereigns resisting discovery or litigating ordinary defenses while consistently asserting immunity. None involves what happened here: a state agency volunteering case-specific evidence to one side of pending federal litigation, and then invoking immunity to deny the same and fuller evidence to the other side. The Objection does not press a waiver by litigation conduct of the kind *Lapides* itself involved, a State removing a case to federal court and then claiming immunity from that same court, and it says so. Doc. 44 at 21. It presses the principle the Supreme Court identified as that rule's foundation: the Amendment does not permit the "selective use of 'immunity' to achieve litigation advantages." *Lapides*, 535 U.S. at 620. The response cites no case blessing the asymmetry CBI created here, because there is none to cite.

The response's answer, that Plaintiff suffers no informational disadvantage (Doc. 47 at 22), fails on the scope of the two productions. The February 13 production is a log of inputs: who queried what, and when. Doc. 41-1. CBI sent that log to the defense voluntarily; Plaintiff obtained it only later, through party discovery from Defendants. And the subpoenas seek what the log cannot show: the subpart (j) returns that the officers' screens actually displayed, together with the system documentation and training records that explain those returns. Only CBI holds those records. A

15

state agency cannot selectively disclose evidence to one party while withholding the full record from the other. Doing so destroys party parity, creating the precise asymmetry the selective-use principle is designed to prevent.

## VIII.    THE SUBPOENAED RECORDS ARE THE MERITS OF THE QUALIFIED-IMMUNITY DEFENSE, ONLY CBI HOLDS THEM, AND THE ORDINARY RULE 45 PROCESS REMAINS AVAILABLE.

The records at issue are central to Plaintiff's case, and explaining why requires one step into the merits. Defendants rest their qualified-immunity defense on what they saw on their screens from the CCIC database on the night of the arrest. Doc. 44 at 4. Qualified immunity is judged "in light of clearly established law and the information the . . . officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). And in assessing probable cause, officers "are charged with knowledge of any 'readily available exculpatory evidence' that they unreasonably fail to ascertain." *Maresca v. Bernalillo Cnty.*, 804 F.3d 1301, 1310 (10th Cir. 2015). Plaintiff alleges she was arrested under a warrant for another woman, one whose CCIC record carried a different date of birth, a different Sheriff's identification number, and a different Social Security number. Whether the officers saw those mismatches, ignored them, or never looked is the qualified-immunity question, and only the CCIC returns can answer it. Plaintiff discusses the records' necessity for what it reveals about the categorical rule: the rule would place the merits of the officers' own defense beyond any court's reach. Defendants, who would know if another source existed, filed no response to the Objection.

Footnote 6 of the response suggests that Plaintiff has not exhausted other sources. Doc. 47 at 24 n.6. The record shows there are none. Plaintiff has already sought the records from the officers and was provided nothing in response. The CCIC query and audit records are CBI's. The

16

Magistrate Judge herself doubted that Garfield County or Defendants could produce them (Doc. 44-1 at 26:20–27:03); the officers answered "I don't recall" at their depositions; and the Magistrate Judge acknowledged "there's some merit to that because time has passed" (Doc. 44-1 at 36:16–17). Plaintiff had 14 days to file her Objection, and she filed it to preserve this issue. To close every remaining loop, Plaintiff intends to complete the discovery dispute process with Garfield County and Defendants before discovery closes on November 10, 2026. Doc. 38. But directing Plaintiff to seek these records from parties the Magistrate Judge doubted could produce them restates the categorical bar in procedural terms.

Footnote 7 then concedes the point that unravels the order. CBI acknowledges that it served ordinary, non-immunity objections to the subpoenas, objections that have never been conferred on and never litigated. Doc. 47 at 24 n.7. That acknowledgment describes how Rule 45 is supposed to work: objections, conferral, motion practice, and a court order tailored to genuine burden. The Magistrate Judge never reached any of that process, because she held the Constitution forbids these subpoenas categorically, "even if there was no issue with the plaintiff paying the State to gather these documents." Doc. 44-1 at 35:14–24. If that categorical premise is contrary to law, and for the reasons above it is, the dispute returns to the ordinary Rule 45 process: narrowing to the records of this arrest, staged production beginning with the subpart (j) returns, a protective order for third-party identifiers, and cost-shifting. Doc. 44 at 22. Burden is a reason to tailor a subpoena. It is not a reason to hold a subpoena barred by the Constitution.

## IX. CBI DOES NOT ADDRESS THE PRACTICAL CONSEQUENCES OF ITS PROPOSED RULE: THE DEATH OF CIVIL RIGHTS CASES IN THE DISTRICT OF COLORADO.

The Magistrate Judge's ruling quashed both of Plaintiff's subpoenas: the subpoena to the

state agency that holds all CCIC criminal justice records, and the subpoena to the agency official who has viewed and controls those records. The ruling therefore blocks Plaintiff entirely from the evidence she needs to prove that she was wrongly arrested, and that officers who viewed the evidence reasonably should have known better. The logical end point of CBI's proposed rule is that plaintiffs in civil rights cases cannot prove their cases whenever the State owns the evidence. That circumstance is not rare; it recurs whenever the evidence officers rely on is housed in a state database like CBI's CCIC system. As one court put it in rejecting the same argument, "[s]uch a result is ludicrous." *Allen*, 544 F. Supp. 2d at 1079. The response does not engage this consequence at all, presumably because the result is indefensible for anyone interested in the continuing vitality of constitutional rights.

*Bonnet* never contemplated preventing plaintiffs from reaching state-held information needed to prove their civil rights cases. It expressly identified an alternative avenue to serving the agency itself: "neither a state nor a tribe would appear to be immune from a discovery request served on the appropriate agency official, rather than on the agency itself." *Bonnet*, 741 F.3d at 1162 n.1. In light of historical practice and the Tenth Circuit's only guidance on this precise issue, the Court should refuse to erect a categorical state-immunity bar and hold state agencies to ordinary federal discovery rules as non-parties.

## **CONCLUSION**

The Magistrate Judge's Order is contrary to law because it converts inapplicable tribal and federal sovereign-immunity doctrines into a categorical jurisdictional bar that shields municipal officers from the consequences of their own conduct. The Order conflicts with two centuries of evidentiary process on state agents, the First Circuit's rejection of absolute sovereign immunity for

18

records custodians, the Eighth Circuit's rule permitting non-disruptive document discovery, and the Tenth Circuit's own guidance in footnote 1 of *Bonnet*. CBI has already injected itself into this litigation by voluntarily compiling and transmitting the case-specific CCIC query logs to defense counsel. Because a non-party document subpoena for existing records seeks no damages, binds no public funds, and requires no policy changes, the State of Colorado is not the real party in interest. If left undisturbed, this ruling will effectively disable civil rights enforcement in the District of Colorado whenever critical evidence of police misconduct is housed in a state-controlled database.

Plaintiff respectfully requests that this Court set aside the Magistrate Judge's Order and direct full compliance with the subpoenas. Alternatively, the Court should modify the subpoenas under Rule 45(d)(3) to direct production from Deputy Director Volz as the appropriate agency official, with any proportionality considerations evaluated separately. If narrowing is necessary, the Court should order a staged production beginning with the subpart (j) screen returns, which represent the exact exculpatory information displayed to the officers at the time of the arrest.

Respectfully submitted this 21st day of July 2026.

> *s/ Zachary L. Shiffler*
> Zachary L. Shiffler
> Edward C. Hopkins Jr.
> Civil Rights Litigation Group, LLP
> 1543 Champa Street, Suite 400
> Denver, CO 80202
> Phone: (720) 515-6165
> zach@rightslitigation.com
> ed@rightslitigation.com

## <u>GENERATIVE ARTIFICIAL INTELLIGENCE USAGE CERTIFICATION</u>

The undersigned counsel certifies the following pursuant to Section IV.B of the Honorable Senior Judge Kane's Pretrial and Trial Procedures (March 2025 revision):

1. Generative AI tools were used to assist in preparing this Reply. Specifically, Plaintiff's counsel used Legal Command Center (LCC), which is legal AI software that Colorado Attorney Edward C. Hopkins Jr. developed exclusively for the Civil Rights Litigation Group, LLP to ensure the firm ethically and lawfully leverages the benefits of AI while complying with all applicable laws, contractual duties, civil procedure rules, and professional conduct rules. LCC uses a multi-model AI pipeline (Anthropic Claude Fable 5, OpenAI GPT-5.6, and xAI Grok 4.3), custom scripts, and custom databases to assist the firm's attorneys with legal research, doctrinal analysis, structural outlining, and initial drafting. General AI tools that Westlaw provides were also used to assist with legal research and doctrinal analysis.

2. Counsel personally reviewed every legal proposition, factual assertion, and citation in this Reply, including the official transcript of the June 10, 2026, hearing. Counsel verified each cited authority against print reporters, Westlaw, or Midpage. Counsel attests that each cited case, statute, and rule is real, exists, and stands for the proposition for which it is cited, and that none has been overruled, modified, or amended on that proposition except as expressly noted in the body of this Reply.

3. Counsel acknowledges their obligations under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 with respect to every word filed.

*s/ Zachary L. Shiffler*
Zachary L. Shiffler

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


*s/ Zachary L. Shiffler*
Zachary L. Shiffler