DECLARATION OF COLT CORNELIUS

I, Colt Cornelius, am an adult of sound mind and I possess personal knowledge of the matters described herein.

1. I am employed by the Garfield County Sheriff's Office and my title is Undersheriff.
2. I have been employed at the Garfield County Sheriff's Office for 19 years.
3. My role as Undersheriff includes supervising and overseeing all divisions of the Garfield County Sheriff's Office.
4. In my role as Undersheriff I am aware of and involved with litigation matters related to the Garfield County Sheriff's Office.
5. The Garfield County Sheriff's Office carries out the statutory law enforcement responsibilities of the elected Garfield County Sheriff. The Sheriff's Office is responsible for responding to calls for service, patrolling in excess of 1500 miles of county and other roads in unincorporated areas of the county for traffic safety, conducting criminal investigations, executing search and arrest warrants, testifying in Colorado state criminal courts; as well as operating the county jail including detentions supervision, transport, food and other services within the jail, and court security.
6. I am aware that the plaintiff in *O'Connor v. Mulkey & LaGiglia*, 25-CV-01854 matter, D. Colo., has issued a notice of a 30(b)(6) deposition to compel the institutional testimony of the Garfield County Sheriff's Office on the following five topics:
    1. All information known to the County regarding the arrest and incarceration of Jennifer Marie O'Connor on July 30, 2024, and July 31, 2024. This topic includes information about the deputies' investigation and arrest, the jail's booking process, identification verification of Plaintiff, and Plaintiff's release from jail.
    2. All information known to the County as of July 30, 2024, concerning Jennifer Marie O'Connor and Jennifer Elizabeth Simpson. This topic includes knowledge of each person's date of birth, height, weight, eye color, hair color, tattoos, State Identification Number, arrest/booking history, other identifying information; the available tools, systems, databases, and resources through which the County and its deputies had access to such information; and the history of each person's contacts with the Garfield County Sheriff's Office.
    3. All policies, practices, procedures, and guidelines in effect on July 30, 2024, concerning criminal investigations, drafting and submitting warrant affidavits, executing arrest warrants, identity verification, mistaken identity arrests, confidential informants/sources of information, all fingerprint scanners available to the defendants or jail staff, DMV records, CCIC/NCIC records, and all other databases that were relied upon or available to the County and its deputies to verify a person's identity.

4. All training provided to Deputies Mulkey and LaGiglia as of July 30, 2024, concerning criminal investigations, drafting and submitting warrant affidavits, executing arrest warrants, identity verification, mistaken identity arrests, confidential informants/sources of information, all fingerprint scanners available to the defendants or jail staff, DMV records, CCIC/NCIC records, and all other databases that were relied upon or available to the County and its deputies to verify a person's identity.
5. All information regarding the fingerprint scanners used and/or reasonably available to the deputies during the incident with Plaintiff on July 30, 2024, and July 31, 2024, including the mobile fingerprint scanner used during the arrest and the fingerprint scanner used at the jail. This topic requires the designee to have knowledge of the make and model of the specific fingerprint scanners used during the incident, how long the County has used each fingerprint scanner, the purpose of providing mobile fingerprint scanners to deputies, how to operate the fingerprint scanners, the types of information produced by the fingerprint scanners, the source(s) of information produced by the fingerprint scanners, the historical use and reliability of the fingerprint scanners, all outputs the fingerprint scanner can produce and their meaning, the identities of the people that scanned Plaintiff's fingerprints, differences in the capabilities and reliability of each type of fingerprint scanner, and the specific results and outputs of Plaintiff's fingerprint scans.

7. Multiple different divisions of the Sheriff's Office will be required to provide information for this deposition. The investigation and arrest of Ms. O'Connor fell under Patrol and the SPEAR Task Force. Jail procedures fall under the Detentions division. Training records are kept by the Professional Standards division. Many different individuals across nearly all divisions will be required to educate a designee about all policies and procedures and all training provided. Different individuals will have to provide information about different types of fingerprint scanners. I am not aware that there is any expert regarding the reliability or capability of fingerprint scanners at the Garfield County Sheriff's Office.
8. To answer the second topic would require the Sheriff's Office designee to interview every individual employee of the Sheriff's Office to determine what information was known about Jennifer Elizabeth Simpson or Jennifer Marie O'Connor. This task alone would take weeks.
9. A list of training records for each employee of the Garfield County Sheriff's Office is maintained by the Professional Standards division. To prepare a designee to answer questions on all training that Deputies Mulkey & LaGiglia received would require manual review of their training logs, parsing the trainings the deputies received and comparing them with the training requirements of the Sheriff's Office. The designee would have to determine which of those trainings covered materials that may be included in the notice of deposition, and try to determine what was actually taught in those trainings. This would be a significant task and much of it would be

impossible. Some trainings are conducted within the Sheriff's Office, but some are with outside agencies or even around the country.

10. The Sheriff's Office is not a party to this litigation. Whoever the designee(s) may be from the Garfield County Sheriff's Office, the review of records and preparation would require significant diversion of duties and expenditure of Sheriff's Office resources. Individuals would have to be tasked away from their normal duties to review and acquire knowledge to answer questions on behalf of the Sheriff's Office. While I cannot estimate precisely how long it would take such individual(s) to prepare, I estimate it would take a minimum of 80-120 hours of preparation. This would interfere with the business and administration of the Sheriff's Office as those individuals would not be able to engage in their usual supervisory, administrative, or policing, or other capacities while preparing.
11. To the extent that any information sought by the deposition relates to identifying information of confidential informants or sources of information, the Garfield County Sheriff's Office asserts governmental informer privilege for sources that may be at risk of reprisal or are still providing information in ongoing investigations.

I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.

Executed on the 22nd day of October, 2026

at Glenwood Springs, Colorado

by: Colt Cornelius

[signature]

STATE OF COLORADO )
)ss.
COUNTY OF GARFIELD )

Subscribed and sworn to before me on this 22 day of October 2026, by Colt Cornelius.

Witness my hand and official seal.

MAIRA CONTRERAS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20064001717
MY COMMISSION EXPIRES 04/20/2030

[signature]
Notary Public

107 8th St. Glenwood Springs, Co 81601
Address

My Commission Expires: 04/20/2030