**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-01854-JLK-KAS

JENNIFER MARIE O'CONNOR,

Plaintiff,

v.

DAVID MULKEY, and
NATHAN LAGIGLIA,

Defendants.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE GARFIELD COUNTY SHERIFF'S OFFICE'S MOTION TO QUASH SUBPOENA AND 30(B)(6) DEPOSITION NOTICE, OR ALTERNATIVELY FOR PROTECTIVE ORDER [DOC. 52]**

---

The Court should deny the Garfield County Sheriff's Office's Motion to Quash Subpoena and 30(b)(6) Deposition Notice, or Alternatively for Protective Order. Doc. 52. The Sheriff's Office asks to be excused from an organizational deposition that the Scheduling Order has anticipated since November 2025, on five topics tied to a single arrest. Doc. 29 at 11. The deputies who made that arrest were deposed. One did not watch the scan. Asked what it returns, he named a name, a date of birth, and sometimes an FBI number, aliases, or a photograph, but could not say whether it reports eye color, hair color, or weight. The other could not say which systems the scanner searches, who trained him on it, or whether he looked at the DMV photograph before or after he handcuffed Plaintiff. The Sheriff's Office is the organization positioned to supply that knowledge. It owns the scanners, writes the policy that governs them, keeps the deputies' training records, runs the jail that discovered the mistake, and holds the records of the arrest. Rule 30(b)(6)

exists so that a litigant can ask an organization what it knows without guessing which employee to depose. That is what Plaintiff did.

The motion rests on three assertions. It says the topics lack reasonable particularity, though its own conferral letter restates each topic in its own words and names the divisions that would answer it. It says preparation would take 80 to 120 hours, though the estimate assumes the designees must re-read a production the Sheriff's Office assembled and interview every employee, which no topic requires. It says the testimony would duplicate the deputies' depositions, though the deputies answered the identification questions with "I don't recall," as Plaintiff's counsel told the Court in June, and the Court observed that "there's some merit to that because time has passed." Doc. 44-1 at 36:5–17. Plaintiff accepts the location the Sheriff's Office proposes, Garfield County or remote, and offers five hours of examination in place of the three it asks for. The rest of the requested protective order would rewrite the notice so that the Sheriff's Office answers only what it has already chosen to disclose. The Court should deny it.

## STATEMENT OF FACTS

On July 30, 2024, Defendants Mulkey and LaGiglia, Garfield County deputies assigned to the SPEAR task force, arrested Plaintiff on a Mesa County warrant for Jennifer Elizabeth Simpson, a different woman with a different date of birth. Doc. 29 at 3, 5–6. Mulkey ran the plate on Plaintiff's truck through his mobile data terminal, pulled a DMV photograph, and formed his belief that the woman he saw was Simpson after viewing that photograph. Ex. 1 (Mulkey Dep.) 22:15–23. LaGiglia scanned Plaintiff's fingerprints with a mobile scanner that had been handed to him by another deputy after his own died; he does not remember whose it was. Ex. 2 (LaGiglia Dep.) 49:22–50:20. The scanner returned the name Jennifer O'Connor and a 1977 date of birth, which

matched neither the warrant's name nor the 1976 date of birth on the warrant. Mulkey's verified responses admit both facts. Ex. 5 (Mulkey Resp. to RFA Nos. 5–6). The deputies transported Plaintiff to the Garfield County Jail, where jail staff determined she was not the woman on the warrant and released her. Ex. 5 (Mulkey Resp. to Interrog. No. 14).

The deputies could explain only part of the tools they used. Mulkey did not personally observe the scan. Ex. 5 (Mulkey Resp. to Interrog. No. 7). Asked what information a scan returns, he first answered, "I don't know, sir," then said that it returns a name and date of birth, sometimes an FBI number, sometimes aliases, and sometimes a photograph. Ex. 1 (Mulkey Dep.) 79:14–25, 96:2–6. He was trained by CBI representatives who "went over how to use it," but does not recall whether it reports eye color, hair color, or weight. *Id. at* 95:16–96:17. LaGiglia was trained by a field training officer whose name he does not recall; he knows the scanner "access[es] some record systems" but "do[es]n't know all of them"; and he learned what AFIS was only later, about six months before his assignment to the SPEAR task force, and not from the scanner training. Ex. 2 (LaGiglia Dep.) 13:05–14:02, 14:13–15:01. He does not recall whether he viewed Plaintiff's DMV photograph before or after taking her into custody. *Id. at* 23:1–20. The Sheriff's Office's own policy states that the scanner "communicates with the Colorado Bureau of Investigation's Automated Fingerprint Identification System," searches the FBI's RISC database, runs NCIC and CCIC, requires "State-mandated training by the Colorado Bureau of Investigation or appropriate trainers," and requires that any "hit" or positive identification through a RISC database "be documented in accordance with the State-mandated training." Ex. 3 (GC 883–84).

Plaintiff served a Rule 45 subpoena duces tecum on Garfield County in November 2025. The Sheriff's Office produced roughly 3,400 pages, but no scanner result, no scanner audit trail,

and none of the returns the deputies viewed on their mobile data terminals before the arrest. It stated that nothing was accessible on LaGiglia's device and that the terminals do not retain returns. Doc. 52-2 at 2. Plaintiff then subpoenaed CBI, which moved to quash on Eleventh Amendment grounds. Doc. 33. At the June 10, 2026, hearing, Plaintiff's counsel explained that the deputies had been deposed and answered "I don't recall"; the Court responded that "there's some merit to that because time has passed" and observed that documents "separate and apart from" the CBI database, such as incident reports, could be used to test the deputies' credibility and the basis for probable cause. Doc. 44-1 at 36:5–25. Defendants' counsel, the County Attorney, asked the Court not to rule on any dispute with the County or the Defendants until the Magistrate Judge's discovery dispute procedures were followed. *Id. at* 25:16–24. The Court granted CBI's motion. Doc. 43. Plaintiff's objection is pending. Doc. 44.

The Scheduling Order lists "30(b)(6) Garfield County" among the depositions the parties anticipated. Doc. 29 at 11. Defendants' counsel, the County Attorney's Office, approved that order on Defendants' behalf. *Id. at* 14. When Plaintiff sought the extension that moved the discovery cutoff to November 10, 2026, she told the Court she intended to take that deposition, and the Court granted the extension for good cause. Doc. 36 at 2; Doc. 38. On October 7, 2026, Plaintiff issued the subpoena and notice and sent them to County counsel. Doc. 52-1; Ex. 4. County counsel waived service on October 9 and conferred with Plaintiff's counsel by telephone that day, before counsel had spoken with the Sheriff's Office. Doc. 52-2 at 1. Counsel's October 14 letter objected to every topic and asked Plaintiff to "identify the discrete institutional information you contend remains unavailable from the existing production." *Id. at* 3. Plaintiff's counsel had already done so in the subpoena's five topics and in his October 7 email. Ex. 4 at 2. He declared an impasse on October

15. *Id. at* 1. The Sheriff's Office filed this motion on October 22, 2026. Under D.C.COLO.LCivR 30.2(a), the filing stayed the deposition pending the Court's ruling.

## ARGUMENT

### I. THE FIVE TOPICS DESCRIBE THE MATTERS FOR EXAMINATION WITH REASONABLE PARTICULARITY.

Rule 30(b)(6) requires the noticing party to "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The standard is "a measure of specificity tailored to the facts of the case," and a party that demands more must show why the case requires it. *Gottfried v. Univ. of Colo. Hosp. Auth.*, No. 23-cv-03240-PAB-STV, 2025 WL 253947, at *3, 7 (D. Colo. Jan. 21, 2025) (overruling objections to a magistrate judge's refusal to require "painstaking specificity" in a case that "isn't that complex"). Asking a designee to describe facts does not make a topic overbroad, because the noticing party "can reasonably expect a deponent to describe facts relevant to the identified topic." *Id. at* 8.

This case is not complex. Two deputies arrested one woman on one warrant on one night, and a jail released her the next morning. Every topic is anchored to that event, and each says so in its own terms. Topic 1 covers "the arrest and incarceration of Jennifer Marie O'Connor on July 30, 2024, and July 31, 2024," including "the deputies' investigation and arrest, the jail's booking process, identification verification of Plaintiff, and Plaintiff's release from jail." Doc. 52-1 at 4. Topic 2 covers what the Sheriff's Office knew "as of July 30, 2024, concerning Jennifer Marie O'Connor and Jennifer Elizabeth Simpson," the two women the deputies confused, and "the available tools, systems, databases, and resources through which the County and its deputies had access to such information." Doc. 52-1 at 5. Topic 3 covers the "policies, practices, procedures, and guidelines in effect on July 30, 2024," on 10 listed subjects, from criminal investigations and

warrant affidavits through identity verification, mistaken identity arrests, confidential sources, fingerprint scanners, and the DMV, CCIC, and NCIC databases the deputies could use to verify identity. *Id.* Topic 4 covers the training the two Defendants had received on those same subjects as of that date. *Id.* Topic 5 covers "the fingerprint scanners used and/or reasonably available to the deputies during the incident," from their make and model to "the specific results and outputs of Plaintiff's fingerprint scans." Doc. 52-1 at 5–6. Each topic names its subject, its date, and the people it concerns. A designee preparing for them knows where to look: the incident file, the booking file, the two deputies' training records, the policy manual, and the scanner program.

The Sheriff's Office understood the topics well enough to object to them in detail. Its conferral letter restates each topic in its own words and proposes how each should be narrowed. Doc. 52-2 at 1–2. Its declarant identifies the divisions that hold the information for each: patrol and the SPEAR task force for the arrest, detentions for the jail, professional standards for training. Doc. 52-3 ¶ 7. An organization that can say which of its divisions will answer a topic has understood what the topic asks. The Sheriff's Office objects that Topic 2 has "no initiating temporal limitation." Doc. 52 at 9. July 30, 2024, is the topic's endpoint, and its reach before that date is bounded by the Sheriff's Office's own records of two named women, which it says it has produced. Doc. 52 at 10. Plaintiff reads the topic's reference to "available tools, systems, databases, and resources" to ask which systems the deputies could use on July 30, 2024, to see that information, not for an inventory of every system the County has ever had. A designee need only be prepared to describe what the contact records show and what systems the deputies could have used that night to see them.

## II. THE SHERIFF'S OFFICE HAS NOT SHOWN UNDUE BURDEN, AND THE BURDEN IT DESCRIBES IS THE ONE RULE 30(B)(6) IMPOSES ON EVERY ORGANIZATION.

A protective order requires good cause shown with specific facts, not conclusory assertions. Fed. R. Civ. P. 26(c)(1). The party resisting a Rule 30(b)(6) deposition bears that burden, and an unsupported assertion that preparation would be onerous does not carry it. *Gottfried*, 2025 WL253947 at *2-3 (overruling an objection where the organization offered no evidence of burden beyond the number of its employees). Rule 45 asks the same of a nonparty: the subpoena must "subject[] a person to undue burden" before it may be quashed. Fed. R. Civ. P. 45(d)(3)(A)(iv).

The Cornelius declaration does not make that showing. It estimates a minimum of 80 to 120 hours of preparation without tying that figure to any topic. Doc. 52-3 ¶ 10. Its premises are that designees must "review more than 3400 numbered pages of discovery," that Topic 2 "would require the Sheriff's Office designee to interview every individual employee," and that the two deputies' training logs must be parsed by hand. Doc. 52 at 3; Doc. 52-3 ¶¶ 8–9. But the Sheriff's Office assembled that production from its own files. Whoever gathered the incident report, the booking record, and the training logs for production does not need a Bates-stamped copy to find them again. Topic 2 asks what the Sheriff's Office knew about two women through its records and systems, not what every employee personally remembers. No topic asks for a census of the workforce. The training logs for two deputies are records the professional standards division keeps for that purpose. Doc. 52-3 ¶ 9. Strip those premises away and what remains is the ordinary work of preparing a witness from the organization's own records.

That work is the burden the rule imposes on every organization. An organization has an "affirmative duty" to make available as many persons as necessary to give "complete, knowledgeable, and binding answers" on its behalf, and the duty is not negated by the organization's claimed lack of a knowledgeable employee. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1146–47 (10th Cir. 2007). "If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation." *Brunet v. Quizno's Franchise Co.*, No. 07-cv-01717-PAB-KMT, 2008 WL 5378140, *5 (D. Colo. Dec. 23, 2008). The duty "goes beyond matters personally known to the designee or to matters in which the designee was personally involved," and "if necessary the deponent must use documents, past employees or other resources to obtain responsive information." *Ebonie S. v. Pueblo Sch. Dist. 60*, No. 09-cv-00858-CMA-MEH, 2010 WL 728516, at *2 (D. Colo. Feb. 25, 2010). Every organization that receives a Rule 30(b)(6) notice must educate a witness. Rule 26(c) still protects a nonparty from a preparation burden that is disproportionate to the needs of the case, and the Sheriff's Office has invoked it. Fed. R. Civ. P. 26(c)(1). But its declaration does not tie its estimate to any topic, and the order it seeks would rewrite the topics rather than bound the preparation.

The Sheriff's Office's own statements show how light the preparation is. It says its policies "are publicly available" online and were produced. Doc. 52 at 5. It says the training records were produced. *Id. at* 5–6. It says the arrest and detention records were produced. *Id. at* 10. A designee prepared from documents the organization has already gathered, reviewed, and produced does not start from scratch, and the declaration never measures what actually remains: selecting designees

and educating them, topic by topic, from materials the Sheriff's Office has already identified. Nor is the Sheriff's Office a stranger to this case. Its counsel is Defendants' counsel. Doc. 52 at 13. The Scheduling Order that Defendants' counsel approved lists this deposition among those the parties anticipated. Doc. 29 at 11, 14. Rule 45 protects a nonparty from undue burden, but the preparation the Sheriff's Office describes serves its own employees' defense as much as Plaintiff's claim.

## III. THE DEPOSITION IS NOT CUMULATIVE, BECAUSE THE DEPUTIES' PERSONAL RECOLLECTIONS AND THE DOCUMENTS ARE NOT THE ORGANIZATION'S TESTIMONY.

The Sheriff's Office argues that Plaintiff already deposed the two deputies and already has the documents. Doc. 52 at 10–11. Neither substitutes for the organization's testimony. A deponent produced "solely in his personal capacity" does not satisfy the noticing party's entitlement to the organization's answers under Rule 30(b)(6), because the two kinds of testimony are different. *Ecclesiastes*, 497 F.3d at 1148–49. The deputies testified to what they remember. The Sheriff's Office must testify to what it knows and what is reasonably available to it, whether or not any employee remembers it. *Ebonie S.*, 2010 WL 728516, at *3 (ordering a designee to testify about information "readily available" to the organization "including the results of its investigation," even though no employee had personal knowledge of the event).

The gap between the two is the reason for this deposition. Mulkey did not personally observe the scan, knows that a scan returns a name and date of birth and sometimes a photograph, and does not recall whether it reports eye color, hair color, or weight. Ex. 5 (Mulkey Resp. to Interrog. No. 7); Ex. 1 (Mulkey Dep.) 79:14–25, 96:2–17. LaGiglia does not know which systems it searches or who trained him on it, and does not recall whether he looked at Plaintiff's photograph

before or after he arrested her. Ex. 2 (LaGiglia Dep.) 13:05–16, 14:22–15:01, 23:01–20. Plaintiff's counsel told the Court in June that the deputies had answered with "I don't recall," and the Court observed that "there's some merit to that because time has passed." Doc. 44-1 at 36:05–17. The Sheriff's Office does not forget. Its policy names the systems the scanner searches and requires that a RISC identification be documented. Ex. 3 (GC 883–84). Its professional standards division keeps the training records. Doc. 52-3 ¶ 9. Its jail determined within hours that the deputies had arrested the wrong woman. Ex. 5 (Mulkey Resp. to Interrog. No. 14). Those are the matters the topics cover, and only the organization can speak to them.

Documents are not a substitute either. The Sheriff's Office says the training logs were produced, but a log that lists course titles does not say what the course taught about verifying identity or reading a scanner result, which is what Topic 4 asks. It says the policies were produced, but Topic 3 asks how the Sheriff's Office applied them, which a document cannot answer. It has produced no scanner result at all, saying none was accessible on the device. Doc. 52-2 at 2. Topic 5 asks the organization that owns the device, chose the vendor, and arranged its deputies' training what the device does, what it returned that night, and where that return went. The rule obligates the organization to prepare a witness from "documents, past employees or other resources." *Ebonie S.*, 2010 WL 728516, at *2. The Court noted in June that there may be sources of the information "separate and apart from" the CBI database. Doc. 44-1 at 36:18–25. The organization that owns the scanner and keeps the deputies' training records is the most direct of them.

## IV. TOPIC 3 ASKS ABOUT POLICIES ON SOURCES, NOT THEIR IDENTITIES, AND THE INFORMER'S PRIVILEGE IS NO BASIS TO QUASH IT.

Topic 3 asks for the policies, practices, and procedures in effect on July 30, 2024, concerning "confidential informants/sources of information," among other subjects. Doc. 52-1. It

does not ask who the sources were. The Sheriff's Office "preserves" the informer's privilege "[t]o the extent that" questions "may" tend to reveal identities. Doc. 52 at 11. Plaintiff states for the record that she will not ask the designee to identify Mulkey's sources at this deposition. The question whether Defendant Mulkey must identify them is the subject of a separate dispute between Plaintiff and Defendants that Plaintiff is presenting under the Magistrate Judge's discovery dispute procedures, where the qualified privilege will be balanced against Plaintiff's need as the Tenth Circuit requires. *Usery v. Local Union 720*, 547 F.2d 525, 527–28 (10th Cir. 1977). A privilege that protects identities does not protect an agency's written policy on how it uses sources. If a specific question would tend to reveal a source's identity indirectly, the designee may object and the Court can resolve the objection. A topic that asks about the policy cannot be quashed on the strength of a privilege Plaintiff has agreed not to press at this deposition. That limitation governs this deposition only. It adjudicates no privilege claim and waives nothing in the separate dispute over Defendant Mulkey's withholding of the identities.

## V. THE ALTERNATIVE PROTECTIVE ORDER SHOULD BE DENIED EXCEPT AS TO LOCATION AND A FIVE-HOUR LIMIT.

Plaintiff accepts condition 7. The deposition will take place in Garfield County or by remote means, at the Sheriff's Office's election, consistent with Rule 45(c)(1). Plaintiff's counsel offered that change before the motion was filed. Doc. 52-2 at 3. In place of the three hours proposed in condition 6, Plaintiff offers five hours of examination on the record, measured across all designees. The Scheduling Order allows seven. Doc. 29 at 9. Five hours for five topics, several of which will call for a different designee, is a proportionate limit for a nonparty. Three hours would not cover the scanner alone. The remaining conditions should be denied. If the Court finds any part of Topic 3 broader than the identification at issue, Plaintiff would accept limiting its first two

subjects, criminal investigations and warrant affidavits, to the identification of a warrant subject, which is the only use Plaintiff intends.

The proposed rewrites of Topics 1 through 5 would confine Topic 1 to institutional information "not already reflected in produced discovery" and Topic 2 to "information actually accessed or reasonably available concerning the arrest of Plaintiff." Doc. 52 at 11. The second branch of condition 2 restates the rule, and Plaintiff does not quarrel with it. Rule 30(b)(6) reaches information "known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). The difference is what the Sheriff's Office means by reasonably available. Its letter objects that the topic asks for an inventory of systems that might have been available rather than for what the deputies actually accessed. Doc. 52-2 at 1. What was reasonably available to the deputies that night is the merits question, and it turns on institutional facts the deputies did not know: which systems their terminals and scanner could reach, and what those systems held about two women on July 30, 2024. In this Circuit, officers "are charged with knowledge of any readily available exculpatory evidence that they unreasonably fail to ascertain." *Maresca v. Bernalillo County*, 804 F.3d 1301, 1310 (10th Cir. 2015) (quotation omitted). Whether a system the deputies did not open would have shown them the date of birth on Plaintiff's record is exactly what Plaintiff must prove, and whether their failure to open it was unreasonable is a question the Court and the jury can answer only if the Sheriff's Office explains what the system would have shown. A protective order limited to what the deputies "actually accessed" would exclude the evidence of what they should have.

Condition 8 would bar any question about "information already supplied through discovery" unless Plaintiff "first identifies a specific deficiency." Doc. 52 at 12. It has no basis in the Rules. Rule 30(b)(6) does not require a deposing party to prove that documents are deficient

before asking the organization what they mean. Condition 6, a three-hour cap, is answered by Plaintiff's offer of five. The objection that Topic 5 would require "expert opinions" mistakes facts for opinions. Doc. 52 at 6. Topic 5 asks the make and model of the scanners, how long the Sheriff's Office has used them, how they are operated, what they return, where the return comes from, and what Plaintiff's scan returned. Those are facts about the Sheriff's Office's own equipment, and its own policy already answers several of them. Ex. 3 (GC 883–84). The topic's references to the scanners' "historical use and reliability" and to "differences in the capabilities and reliability of each type" ask for the Sheriff's Office's institutional experience: whether its scanners have returned a wrong identity before, what their outputs mean, and how the handheld differs from the jail's device. Doc. 52-1 at 5–6. They do not ask the designee to form a scientific opinion, and Plaintiff will not ask for one. That construction is stated on the record, and the Court's order may adopt it. A designee who lacks the knowledge must be educated with it. *Ecclesiastes*, 497 F.3d at 1146-47 n.13 (the designee "must be woodshedded with information that was never known to the witness prior to deposition preparation").

The request that the designee bring the same or a similar model of mobile scanner is a request for a tangible thing that Rule 45 permits. Fed. R. Civ. P. 45(a)(1)(A)(iii). The Sheriff's Office asks why the device matters. Doc. 52-2 at 2. The deputies' identification turned on a screen that neither of them could fully describe, on a device the Sheriff's Office says preserved nothing. The purpose of the demand is limited: to identify the model and software used on July 30, 2024, to establish whether the device produced matches them, and to let the designee show the fields, menus, and stored displays the deputies had in front of them. If the model or software has changed, the designee can say so and describe the differences. The demonstration then shows how the

County's scanners present a return, and the designee's testimony supplies the comparison to the July 30, 2024, configuration. Plaintiff will bear the reasonable cost of transporting the device, will not retain it, and does not object to the Court's conditioning the demonstration on whatever protocol the Sheriff's Office's database access requires. Fed. R. Civ. P. 45(d)(2)(B)(ii).

## CONCLUSION

The Scheduling Order that Defendants' counsel approved anticipated this deposition. The Sheriff's Office produced the records it now says make the deposition unnecessary, and it employs the only witnesses who can explain what those records and the missing ones mean. The Court should deny the Motion, order the Sheriff's Office to designate and produce its witnesses on Topics 1 through 5 within 21 days of the order and notwithstanding the November 10, 2026, discovery cutoff, in Garfield County or by remote means at the Sheriff's Office's election, for not more than five hours of examination on the record across all designees, with the designee to bring the same or a similar model of mobile fingerprint scanner. Plaintiff will move separately to extend the discovery cutoff so that this deposition and the Court's rulings on the other pending discovery matters can be completed.

Respectfully submitted this 2nd day of November 2026.

*s/ Zachary L. Shiffler*
Zachary L. Shiffler
Raymond K. Bryant
Edward C. Hopkins Jr.
Civil Rights Litigation Group, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
Phone: (720) 515-6165
zach@rightslitigation.com
raymond@rightslitigation.com
ed@rightslitigation.com
*Attorneys for Plaintiff*

**<u>GENERATIVE ARTIFICIAL INTELLIGENCE USAGE CERTIFICATION</u>**

The undersigned counsel certifies the following pursuant to Section IV.B of the Honorable Senior Judge Kane's Pretrial and Trial Procedures (revised Oct. 2026):

1. Generative AI tools were used to assist in preparing this Response. The initial drafts of every section of this Response, from the introduction through the conclusion, were prepared with the assistance of Legal Command Center (LCC), legal AI software that Colorado Attorney Edward C. Hopkins Jr. developed for the Civil Rights Litigation Group, LLP. LCC uses a multi-model AI pipeline (Anthropic Claude Fable 5.1, OpenAI GPT-6.1 Sol, and xAI Grok 4.7), custom scripts, and custom databases to assist the firm's attorneys with legal research, doctrinal analysis, structural outlining, and initial drafting. Counsel then revised those drafts.

2. Counsel personally reviewed every legal proposition, every factual assertion, and every citation in this Response, including the deposition transcripts and the official transcript of the June 10, 2026, hearing. Counsel verified each cited authority against print reporters, Westlaw, or Midpage. Counsel attests that each cited case, statute, and rule is real, exists, and stands for the proposition for which it is cited, and that none has been overruled, modified, or amended on that proposition except as expressly noted in the body of this Response.

3. Counsel preserves Counsel's obligations under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 with respect to every word filed.

<u>*s/ Zachary L. Shiffler*</u>
Zachary L. Shiffler

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Zachary L. Shiffler*
Zachary L. Shiffler

**INDEX OF ATTACHED EXHIBITS**

Plaintiff's Exhibit 1: Excerpts of the Deposition of David Mulkey (Mar. 17, 2026)

Plaintiff's Exhibit 2: Excerpts of the Deposition of Nathan LaGiglia (Apr. 8, 2026)

Plaintiff's Exhibit 3: Garfield County Sheriff's Office Policy, Mobile Fingerprint Scanner Devices (GC 883–84)

Plaintiff's Exhibit 4: Emails from Z. Shiffler to H. Beattie dated Oct. 7 and Oct. 15, 2026

Plaintiff's Exhibit 5: Excerpts of Defendant Mulkey's Verified Responses and Objections to Plaintiff's First Set of Written Discovery (Dec. 19, 2025)