EXHIBIT 1

PIKE REPORTING COMPANY

**CIVIL ACTION NO.: 1:25-CV-01854-JLK-KAS**

# JENNIFER MARIE O'CONNOR

VS

# DAVID MULKEY,

# NATHAN LAGIGLIA,

# MIKE TYLER

## DEPOSITION OF:

## DEPUTY DAVID MULKEY

## DATE:

## March 17, 2026

PIKE REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

(855) 693-3767 | (720) 738-1300

schedule@yournextdepo.com

www.pikereporting.com

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

JENNIFER MARIE O'CONNOR,

Plaintiff,

vs. CIVIL ACTION NO.: 1:25-CV-01854-JLK-KAS

DAVID MULKEY,

NATHAN LAGIGLIA,

MIKE TYLER,

Defendants.

DEPOSITION OF

DEPUTY DAVID MULKEY

MARCH 17, 2026

10:05 a.m. (MT)

Remote Proceeding

Leigh Mileski, 20254004252

APPEARANCES OF COUNSEL

On behalf of the Plaintiff, JENNIFER MARIE O'CONNOR:

EDWARD C. HOPKINS, JR., ESQ.
ZACHARY L. SHIFFLER, ESQ.
CIVIL RIGHTS LITIGATION GROUP
1543 Champa Street
Suite 400
Denver, Colorado 80202
ed@rightslitigation.com
zach@rightslitigation.com
APPEARED VIA VIDEOCONFERENCE

APPEARANCES OF COUNSEL (CONTINUED)

On behalf of the Defendants, DAVID MULKEY AND NATHAN LAGIGLIA:

HEATHER K. BEATTIE, ESQ.
GRAHAM L. JACKSON, ESQ.
GARFIELD COUNTY ATTORNEY'S OFFICE
108 Eighth Street
Suite 219
Glenwood Springs, Colorado 81601
hbeattie@garfieldcountyco.gov
gjackson@garfieldcountyco.gov
APPEARED VIA VIDEOCONFERENCE

On behalf of the Defendant, MIKE TYLER:

PETER H. DOHERTY, ESQ.
LASATER & MARTIN, P.C.
5251 DTC Parkway
Suite 800
Greenwood Village, Colorado 80111
peter@lasaterandmartin.com
APPEARED VIA VIDEOCONFERENCE

APPPEARANCES (CONTINUED)

Also Present:

Mike Tyler, Co-Defendant

INDEX OF EXAMINATION

WITNESS: DAVID MULKEY


| EXAMINATION | PAGE |
|---|---|
| Direct By Mr. Hopkins | 8 |
| Cross By Ms. Beattie | 163 |


INDEX TO EXHIBITS


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Search Warrant Affidavit (GC 9-12) | 15 |
| 2 | Mulkey's Report - SPEAR Narrative (GC 3-5) | 25 |
| 3 | Photographs from Scene (GC 125-129) | 29 |
| 4 | Mesa County Arrest Warrant for Jennifer Elizabeth Simpson (GC 97) | 44 |
| 5 | CCIC Warrant Confirmation (GC 24-36) | 46 |
| 6 | CAD Call Log (GC 3199) | 54 |
| 7 | LaGiglia's Report (GC 16-18) | 80 |
| 8 | CBI Query Log (GC 3401-3403) | 105 |
| 9 | Booking Photo (O'Connor 106) | 119 |
| 10 | Identity Comparison Chart | 122 |
| 11 | BWC Reprimand (GC 3203-3204) | 142 |
| 12 | Performance Appraisal (GC 3193-3196) | 143 |

The VIDEO deposition of DEPUTY DAVID MULKEY was taken at PIKE REPORTING COMPANY, 410 17TH STREET, SUITE 1350, DENVER, COLORADO 80202, via videoconference in which all participants attended remotely, on TUESDAY, MARCH 17, 2026, commencing at 10:05 a.m. (MT); said deposition was taken pursuant to the FEDERAL Rules of Civil Procedure. This notarial act involved the use of communication technology pursuant to 8CCR 1505-11.

It is agreed that LEIGH MILESKI, being a Notary Public and Court Reporter for the State of COLORADO, may swear the witness and that the reading and signing of the completed transcript by the witness is not waived.

THE REPORTER: Okay, we are now on the record. My name is Leigh Mileski. I'm the online video technician and court reporter today representing Pike Reporting Company, located at 410 17th Street, Suite 1350, Denver, Colorado 80202. Today is the 17th day of March, 2026, and the time is 10:05 a.m. Mountain. We're convened by videoconference to take the deposition of David Mulkey in the matter of Jennifer Marie O'Connor v. David Mulkey, Nathan LaGiglia, and Mike Tyler, pending in the United States District Court for the District of Colorado. Civil action number 1:25-cv-01854-JLK-KAS. Will everyone but the witness please state your appearance, how you are attending, and the location you're attending from, starting with Plaintiff's counsel?

MR. HOPKINS: My name is Edward Hopkins. My bar number in Colorado is 43298. I am attending from my office in Denver, Colorado, and I represent the plaintiff, Ms. O'Connor.

MR. DOHERTY: Hi, my name is Peter Doherty, and I'm attending in from Greenwood Village, and I represent defendant Mike Tyler, who's also with us attending by Zoom.

MS. BEATTIE: This is Heather Beattie. I

represent David Mulkey. He's attending in person, and he's the deponent.

MR. JACKSON: You also have Graham --

THE REPORTER: Okay. Let's see. Mr. Mulkey, will you please state your full name for the record?

THE WITNESS: David Mulkey.

THE REPORTER: And then will you please show a photo ID up to the camera?

THE WITNESS: Yeah.

THE REPORTER: Thank you. Do all parties agree that the witness is, in fact, David Mulkey?

MR. DOHERTY: Yes.

MR. HOPKINS: Yes.

MR. JACKSON: Yes.

THE REPORTER: Okay. Mr. Mulkey, will you please raise your right hand? Do you solemnly swear or affirm that the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS: Yes, ma'am.

THE REPORTER: Thank you. Counsel, you may begin.

MR. HOPKINS: Okay.

DIRECT EXAMINATION

BY MR. HOPKINS:

**Q. If you never met Jennifer Elizabeth Simpson face-to-face, and the only information you obtained about her were through the sources you stated, how could you recognize Jennifer Elizabeth Simpson on July 30, 2024?**

A. I observed a DMV photo.

**Q. And it was the DMV photo that caused you to form the belief on July 30, 2024, that the woman you saw and arrested was Jennifer Elizabeth Simpson?**

MS. BEATTIE: Objection again to the form of the question. And you can go ahead and answer.

THE WITNESS: I'm sorry, can you repeat the question, sir?

BY MR. HOPKINS:

**Q. Yes. The image that you saw, the DMV photo, was the image that caused you to form the belief that the woman you saw and arrested on July 30, 2024, was Jennifer Elizabeth Simpson, correct?**

A. Yes, sir.

**Q. You formed the belief that the woman that you saw and arrested on July 30, 2024, was Jennifer Elizabeth Simpson before or after you saw the DMV photo?**

A. After, sir.

**Q. Okay. Before you saw the DMV photo, whom did you think the woman you saw, and later arrested that**

**night, was?**

A. I believed it was Jennifer Simpson, sir.

**Q. On what grounds did you believe that was Jennifer Simpson, even though you had not yet seen the DMV photo that you said just moments ago was the reason why you thought that was Jennifer Elizabeth Simpson?**

A. When I drove past the residence, there was a white pickup parked out front with a license plate that I could see. I cleared the license plate through NCIC, and it came -- the registered owner was Jennifer Simpson. And then with the party being next to the vehicle, I assumed it was Jennifer Simpson, the registered owner, at the -- at the vehicle, sir.

**Q. Okay. Let's dig into that a little bit.**

A. Yes, sir.

**Q. The license plate is what caused you to believe that the woman you saw and ultimately arrested that night was Jennifer Simpson. Is that what --**

A. The license --

**Q. -- you're saying?**

A. The license plate?

**Q. The license plate.**

A. No, sir.

**Q. Okay. So you saw a license plate, and something about the license plate registration**

because I didn't see the documentation, sir, but I believe it came back as Jennifer O'Connor and Jennifer Simpson. They came back with two last names. And then when they tried to run Jennifer O'Connor through the NCIC CCIC, it came back no record, sir. And then -- but Jennifer Simpson continued to come back with a record and the warrant, sir.

**Q. Did you ask her about those two names?**

A. I -- I recall somebody did, sir --

**Q. Did you hear the conversation?**

A. No, sir. I was informed that I believe Simpson was her maiden name, and O'Connor was her legal -- like a birth name, I should say.

**Q. What information, in addition to a name, do you get after you run a fingerprint scan?**

A. I don't know, sir. It's been a while since I've run -- I've actually done one. I know we get sometimes an FBI number but most of the time, we will get date of birth and name. And there are -- again, sometimes some people are good about putting aliases in, sir. So that could populate. It could not. And then, again, some pictures could populate. Some could not. It kind of depend -- I'm sorry, sir. I don't know how they judged on doing that, so I don't know why they're not all just the same sometimes.

(A recess was taken.)

THE REPORTER: We are back on the record for the deposition of Deputy Mulkey. The time is 12:20 pm.

BY MR. HOPKINS:

**Q. Deputy Mulkey, I want to just follow up on something really quickly. On July 30, 2024, how many times, if any, had you used the mobile fingerprint scanner?**

A. I have used it prior to that, sir, I want to say approximately 15 to 20, sir.

**Q. Did you receive training on it before you began using it?**

A. Yes, sir.

**Q. Tell me what training you received.**

A. The Colorado Bureau of Investigations sent some representatives to the Garfield County Sheriff's Annex, and they went over how to use it, and how to read the system, sir.

**Q. Did that training tell you what kind of information the fingerprint scanner would provide you after you scanned someone's fingerprint using it?**

A. Some of the basic information. Yes, sir.

**Q. What was the basic information you were instructed the mobile fingerprint scanner would provide**

**you?**

A. Mostly the name of the individual, date of birth, some aliases, and I -- like I stated before, sir, sometimes it would pop a picture or generate a picture. I'm sorry. Sometimes it would generate a picture, sometimes it wouldn't.

**Q. Eye color? Was that one of the things it told you it could provide you information about?**

A. I don't recall, sir.

**Q. Hair color? Is that one of the things it told you that it could provide information about?**

A. I don't recall, sir.

**Q. Weight? Was that one of the things that you were told a mobile fingerprint scanner could provide you information about?**

A. I want to say no on weight, but I could be wrong, so I -- I don't recall, sir.

**Q. What about date of birth?**

A. Yes, sir.

MR. HOPKINS: Let's pull up the exhibit we were looking at before we stopped. Exhibit 7, GC16-18.

BY MR. HOPKINS:

**Q. Deputy Mulkey, do you see where LaGiglia writes, "Jennifer's fingerprints showed"?**

A. I'm -- I'm sorry, sir. I'm not seeing that.