**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-01854-JLK-KAS

JENNIFER MARIE O'CONNOR,

Plaintiff,

v.

DAVID MULKEY, and
NATHAN LAGIGLIA,

Defendants.

---

# PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH PLAINTIFF'S SUBPOENA DUCES TECUM TO GARFIELD COUNTY

---

## INTRODUCTION

Plaintiff asks the Court to compel Garfield County and its Sheriff's Office (together, the "County") to comply with the subpoena duces tecum Plaintiff served in November 2025. The County produced about 3,400 pages, but not the returns its deputies received on the night they arrested Plaintiff for a crime attributed to a different woman. The County has not produced the result its mobile fingerprint scanner displayed, any audit trail of the scan, the DMV photographs the deputies compared to Plaintiff's face, or the CCIC, NCIC, and DMV returns the deputies viewed on their mobile data terminals before the arrest. It produced a warrant return that dispatch printed that night and a DMV return printed early the next morning, but neither purports to capture what the deputies' own screens displayed. Ex. 6 (GC 889–92). The County says the handheld device holds nothing and the mobile data terminals do not retain returns. It has not said that it

searched the systems the device feeds, has not asked CBI for the returns it supplied its deputies that night, and has declined to use the database access its counsel acknowledged, access the Court noted may be limited to law enforcement purposes. Doc. 44-1 at 26:03–09, 26:20–27:03.

The County served no written objection to the subpoena within the 14 days Rule 45 allows, or at any time since. Its objections, raised for the first time in conferral letters months later, are waived, and they fail on the merits in any event. Rule 45 reaches records within a subpoenaed person's possession, custody, or control, and control includes "the right, authority, or ability to obtain" records held by another. *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 476–77 (D. Colo. 2007). The County has twice obtained CBI records about this very incident: a record challenge answered over the CCIC network in August 2024, and a query log emailed by CBI's Deputy Director in February 2026. Ex. 6 (GC 897–99); Doc. 41-1. An agency that obtains CBI records when it wants them has, at the least, the practical ability to obtain them when a subpoena requires it. The Court should order the County to search the systems it has not searched, to state under oath whether it can obtain the returns from CBI and to request them if it can, to produce the photographs and logs its own systems hold, and to describe its search under oath.

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel certifies that Plaintiff conferred in good faith with counsel for Garfield County and the Garfield County Sheriff's Office, Heather K. Beattie and Graham L. Jackson of the Garfield County Attorney's Office, before filing this Motion. Plaintiff's counsel identified the deficiencies in the subpoena production by email on March 4, 2026, and received the County's written positions on March 11, 2026. Ex. 2. Plaintiff's counsel raised the same deficiencies again by email on October 7, 2026, conferred with Ms. Beattie

by telephone on October 9, 2026, received the County's written response on October 14, 2026, and declared an impasse on October 15, 2026. Ex. 3 at 1–2; Doc. 52-2. The County maintains that it has produced all records in its possession and will not conduct any database inquiry to obtain the remainder. Other than the duty to confer, the Magistrate Judge's discovery dispute procedures do not apply to third parties, and the Sheriff's Office itself filed its motion to quash the Rule 30(b)(6) subpoena directly. D.C.COLO.MJ VI; Doc. 52. Plaintiff reads the procedures' bar on opposed discovery motions, D.C.COLO.MJ VI.1, as addressed to disputes among the parties, and files this Motion under Fed. R. Civ. P. 45(d)(2)(B)(i). If the Court requires that this dispute be presented through the joint email and written-discovery chart before a motion is filed, Plaintiff requests leave to proceed on this Motion or will present the dispute as the Court directs.

## STATEMENT OF FACTS

On July 30, 2024, Defendants Mulkey and LaGiglia arrested Plaintiff on a Mesa County warrant for Jennifer Elizabeth Simpson, born in 1976. Plaintiff is Jennifer Marie O'Connor, born in 1977. Doc. 29 at 5–6. Mulkey ran the plate on Plaintiff's truck and the name Simpson through his mobile data terminal, received CCIC returns and a DMV photograph, and "compared biological data and photographs returned by NCIC/CCIC and DMV data" before concluding that Plaintiff was Simpson. Ex. 7 (Mulkey Resp. to Interrog. Nos. 6, 13). LaGiglia scanned Plaintiff's fingerprints with a mobile scanner borrowed from another deputy and connected it to his patrol computer. Ex. 8 (LaGiglia Dep.) 49:22–50:20. The scanner returned the name Jennifer O'Connor and Plaintiff's 1977 date of birth. Ex. 7 (Mulkey Resp. to RFA Nos. 5–6). Mulkey "compared the booking photo associated with the fingerprint scan to the Plaintiff's visual appearance." *Id.* (Resp. to Interrog. No. 6). The deputies transported Plaintiff to the Garfield County Jail, where staff

determined she was not Simpson and released her. *Id.* (Resp. to Interrog. No. 14).

The County's own systems recorded these events. Mulkey identified the "Tyler Technologies New World Application" and the "Tyler Technologies Mobile Application" as the County systems through which he queried DMV, CCIC, and NCIC records. Ex. 7 (Mulkey Resp. to Interrog. No. 12). The County's mobile scanner policy states that the device "communicates with the Colorado Bureau of Investigation's Automated Fingerprint Identification System," searches the FBI's RISC database, runs NCIC and CCIC, and requires that any "hit" or positive identification through a RISC database "be documented in accordance with the State-mandated training," which "is a requirement for access to the RISC databases." Ex. 5 (GC 883–84). The County also produced a two-page manufacturer's quick-start guide for the device. Ex. 5 (GC 885–86). CBI's query log shows 54 queries on Plaintiff's plate and on the two women's names under 11 listed user names between 8:13 p.m. on July 30 and 2:31 p.m. on July 31, 2024, including five by Mulkey and 10 by LaGiglia. Doc. 41-1. CBI's Deputy Director emailed that log to the Sheriff and to the County Attorney on February 13, 2026. *Id. at* 1. On August 21, 2024, the Sheriff's Office submitted a record challenge to CBI through the CCIC network, and on August 26 CBI reported back over the same network that a fingerprint comparison showed the two women "are NOT the same person," that the erroneous record had been deleted "from all databases," and that a law enforcement packet and an arrestee packet had been sent to the Sheriff's Office. Ex. 6 (GC 897–99).

Plaintiff served the subpoena duces tecum on Garfield County in November 2025, with a compliance date of December 12, 2025. Ex. 1. Request 5 asks for the photographs of the two women that officers viewed on July 30, 2024. Request 6 asks for the CCIC, NCIC, and DMV

query logs and returns for the two names and the plate on July 30 and 31, "including any printed or on-screen warrant or descriptive information officers viewed." Request 7 asks for the vendor manuals and instructions for the scanner model. Request 8 asks for the scanner's native audit trail and metadata, including the timestamp, the user logged in, and "the raw data returned by the server." Request 10 asks for the fingerprint and AFIS records and correspondence reflecting the comparisons of Plaintiff's prints on July 30 and 31, "including any 'no match,' 'different person,' or similar determinations and the time those results were available." Requests 2 and 3 ask for the records of any investigation into the incident and all communications concerning it. *Id.* (attachment) at 1–3. The County served no written objection. It produced records bearing Bates numbers GC 169 through about 3,400, and reissued the production on a new platform after transmission problems with the first. Ex. 2 at 2.

On March 4, 2026, Plaintiff's counsel wrote that the production contained no scanner results or audit trail, no scanner training materials, and no DMV query results, and asked for them by March 11. Ex. 2 at 1. The County Attorney's Office replied on March 11 that LaGiglia's device had been "examined for records that are accessible on the device" and none were found, that a forensic evidence technician was "looking at the device to see if anything can be extracted," that CBI had given a presentation on the scanners but "[n]o training materials were given to the Sheriff's Office," and that "[t]he Mobile Data Terminals do not save the DMV or other query results." *Id. at* 2–3. No further report on the device followed. In response to Mulkey's Request for Production 7, which asked for the same scanner manuals, Defendants produced the Sheriff's Office's two-page policy and the two-page quick-start guide. Ex. 7 (Mulkey Resp. to RFP No. 7); Ex. 5 (GC 883–86).

Plaintiff subpoenaed the returns from CBI in April 2026. CBI moved to quash on Eleventh Amendment grounds, stating through its Deputy Director that some of the requested records "are in the custody of other agencies (such as DMV documents)" and that searching for the remaining categories of records across the subpoena's subparts "would be expected to require at least 120 manhours." Doc. 33; Doc. 33-3 ¶¶ 7–8. At the June 10, 2026, hearing, the Court observed that "there's no real dispute here that Garfield is not actually in the possession, custody, and control" of the returns, asked County counsel whether "[t]hese are CCIC records that Garfield County has license or permission to access," and received the answer, "That's correct, Your Honor." Doc. 44-1 at 26:03–09. The Court added that access to the database "does not mean that they can access that information for all purposes they desire." *Id. at* 26:20–23. The Court granted CBI's motion. Doc. 43. Plaintiff's objection is pending. Doc. 44.

On October 7, 2026, Plaintiff's counsel asked the County to supplement its responses to Requests 2, 3, 5, 6, 7, 8, and 10. Ex. 3 at 2. Counsel conferred by telephone on October 9. On October 14, the County Attorney wrote that "no accessible records were found on Deputy LaGiglia's fingerprint device," that the County "does not possess the DMV-query results at issue because the Mobile Data Terminals ('MDT') do not retain them," that it does "not have possession of, or access to, CCIC or DMV query results that are not retained on the MDT," and that it "does not agree to conduct new CCIC, NCIC, or DMV inquiries." Doc. 52-2 at 2–3. In a companion letter the same day, the County Attorney wrote that the historical DMV and CCIC returns displayed on July 30, 2024, "were not preserved by the Mobile Data Terminals and have not been located in the records maintained by the Sheriff's Office." Ex. 4 at 1. Plaintiff's counsel declared an impasse on October 15. Ex. 3 at 1.

## STANDARD OF REVIEW

A subpoena may command a nonparty to produce documents, electronically stored information, or tangible things "in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). A person commanded to produce may serve written objections "before the earlier of the time specified for compliance or 14 days after the subpoena is served," and the serving party "may move the court for the district where compliance is required for an order compelling production." Fed. R. Civ. P. 45(d)(2)(B), (d)(2)(B)(i). The scope of a Rule 45 subpoena is the scope of Rule 26(b)(1): any nonprivileged matter relevant to a claim or defense and proportional to the needs of the case. *Heaton v. Gonzales*, No. 21-463 JCH/KK, 2022 WL 772923, at *2 (D.N.M. Mar. 14, 2022) (a Rule 45 subpoena is "subject to the same discovery limitations as those set out in Rule 26"). Records are within a person's control if the person "has actual possession, custody or control or has the legal right to obtain the documents on demand," and control "comprehends not only possession, but also the right, authority, or ability to obtain the documents." *Tomlinson*, 245 F.R.D. at 476–77 (construing the identical "possession, custody or control" phrase in Rule 34(a)).

## ARGUMENT

### I. THE COUNTY WAIVED ITS NON-PRIVILEGE OBJECTIONS BY NEVER SERVING A WRITTEN OBJECTION.

A person served with a subpoena "must object within fourteen days." *Broadcort Capital Corp. v. Flagler Sec., Inc.*, 149 F.R.D. 626, 628 (D. Colo. 1993). The County was served in November 2025 and never served a written objection. The requests at issue here are anchored to one incident: two days of queries about two named women and one license plate, the scanner's documentation, and the investigation and communications that followed the arrest. The County

has never said it did not understand them. The County is represented by the same counsel who defends the Defendants and who has been in contact with Plaintiff's counsel about the production since March 2026. The County never served an objection to this subpoena, and its only motion in this case challenges the Rule 30(b)(6) subpoena issued in October 2026, not this one. Doc. 52. It produced what it chose to produce and confirmed that it would not do more. A nonparty that proceeds that way has not preserved objections it never served. The Court should hold that every objection other than privilege is waived. If the Court reaches the objections, they fail on the merits for the reasons in Parts II through IV.

## II. THE COUNTY HAS DESCRIBED NO SEARCH OF THE SYSTEMS ITS FINGERPRINT SCANNER FEEDS, WHERE ANY RECORDS RESPONSIVE TO REQUESTS 7, 8, AND 10 WOULD BE FOUND.

The only search the County has described is an examination of LaGiglia's handheld device for records "accessible on the device," with a forensic technician "looking at the device to see if anything can be extracted." Ex. 2 at 2. Nothing further was reported. If the search ended there, it ended in the wrong place. By the County's own policy, the handheld is a terminal: it "communicates with" CBI's fingerprint system, searches the FBI's RISC database, and runs NCIC and CCIC. Ex. 5 (GC 883). LaGiglia "hooked it up" to his patrol computer to use it. Ex. 8 (LaGiglia Dep.) 50:15–16. The result Mulkey described, a return of two names and a date of birth with a photograph attached, came from a server, through the County's systems, to a County screen. Ex. 7 (Mulkey Resp. to Interrog. No. 6). The policy requires that any "hit" or positive identification through a RISC database "be documented in accordance with the State-mandated training," and describes that reporting as "a requirement for access to the RISC databases." Ex. 5 (GC 884). The County has not said whether the July 30 scan produced such an identification, whether it was

documented, or where. The quick-start guide it produced shows that the device's response can be viewed on the connected computer and printed or forwarded from there. Ex. 5 (GC 886).

The County has not said that it searched its mobile data terminals, its Tyler Technologies applications, the account through which its scanner program transmits and receives fingerprint submissions, or the CBI and FBI responses that return to its originating agency identifier. It has not said how the jail determined on July 31, 2024, that Plaintiff was not Simpson, whether a fingerprint submission was part of that determination, or whether any response was retained. It has produced a two-page quick-start guide for a device it provides to its deputies, but no manual describing what the device stores or transmits. Ex. 5 (GC 885–86); Ex. 8 (LaGiglia Dep.) 50:07–10. Its answer that CBI left no training materials does not address the rest of the manufacturer's documentation that Request 7 seeks. Ex. 2 at 3. A nonparty that has conducted a reasonable search may say so and describe it. A nonparty that has described only the examination of one handheld device has not conducted a reasonable search. The Court should order the County to search each of those systems and sources for the records Requests 7, 8, and 10 describe, to produce what it finds, and to file a declaration from a records custodian describing each system searched, the search performed, and the result.

## III. THE DMV PHOTOGRAPHS AND THE QUERY RETURNS ARE WITHIN THE COUNTY'S CONTROL, AND THE COUNTY HAS ALREADY USED THAT CONTROL FOR ITS OWN PURPOSES.

Requests 5 and 6 seek the photographs the deputies viewed and the CCIC, NCIC, and DMV returns they received. The County says it does not possess them because the terminals do not retain them. Doc. 52-2 at 2. Possession is not the test. A subpoena reaches records within the County's "possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). Control includes records the

County has "the right, authority, or ability to obtain" and records held by anyone the County "has retained any right or ability to influence." *Tomlinson*, 245 F.R.D. at 476–77. *Klesch* applied that standard to a subpoena duces tecum and described it more narrowly, as the "legal right to obtain the documents on demand," adding that a "practical ability" to demand production "must be accompanied by a similar ability to enforce compliance." *Klesch*, 217 F.R.D. at 520. The record supports an inference of control under either formulation, and if the County contends that it lacks the right to obtain its own deputies' returns, it should say so under oath through the custodian who administers its CCIC access.

The County is a user agency of the CCIC system. At the June hearing, the Court observed that the County is "not actually in the possession, custody, and control" of the returns and asked whether these are "CCIC records that Garfield County has license or permission to access." Its counsel confirmed they are. Doc. 44-1 at 26:03–09. The reach of that license is what the custodian's oath would answer. Its deputies pull DMV photographs and CCIC records from their vehicles as a matter of routine. That is how this arrest happened. Ex. 7 (Mulkey Resp. to Interrog. Nos. 6, 12). The County has also used its access to obtain records about this very incident. In August 2024 it submitted a record challenge to CBI and received CBI's fingerprint-comparison result and a "law enforcement packet" through the CCIC network. Ex. 6 (GC 897–99). In February 2026, after this suit was filed, CBI's Deputy Director emailed the Sheriff and the County Attorney a log of the queries run "during the timeframe in question"—five of them by Mulkey and 10 by LaGiglia—and the County produced that log in this litigation. Doc. 41-1 at 1. An agency that obtains CBI records on request, for its own purposes and for its defense of this case, has the practical ability to obtain them when a subpoena requires it. The Court observed at the June hearing

that access to the database "does not mean that they can access that information for all purposes they desire." Doc. 44-1 at 26:20–23. Plaintiff does not ask the County to run new queries for litigation. She asks it to request from CBI, as it received the February 2026 log, the returns its own personnel received on the night of the arrest, and to say under oath whether its user agreement allows it. Whether the County has the right as well as the ability is a question that agreement answers, and the Court should require the County to answer it.

The County's remaining objection is that it "does not agree to conduct new CCIC, NCIC, or DMV inquiries" because "[a] present-day query would not necessarily reproduce the information displayed on July 30, 2024," and because access "is subject to criminal justice information restrictions." Doc. 52-2 at 2. The first point answers itself: Plaintiff asks the County to request from CBI the returns its deputies received on July 30 and 31, as it requested the log of the queries that generated them, not to run new searches and call them old. CBI has not said those returns do not exist. It said that searching for the records "that may exist" would take time. Doc. 33-3 ¶ 8. As to the photographs, Plaintiff asks for the photograph of each woman that was on file with the Department of Revenue on July 30, 2024, identified by record type and capture date, and for the custodian's explanation if that version is no longer retrievable. Whatever restrictions govern the County's use of CCIC data, they did not prevent the County from obtaining the February 2026 query log for use in this case. If the County contends that a rule of CBI or the FBI forbids it from obtaining, for production under a federal subpoena, the returns its own deputies received, it should identify that rule under oath so the Court can evaluate it. It has not.

The Court has the power to order a litigant to ask for records from the entity that holds them. *Cf. United States ex rel. Woodard v. Tynan*, 776 F.2d 250, 252 (10th Cir. 1985) (en banc)

(holding where party defendants' own business records were held by the state Attorney General under a state-court seal, that an order directing the defendants to apply for their return "is within the power of the federal district court"). The posture here is one step removed—a subpoenaed nonparty, and records generated by its own personnel's queries—but the request is smaller than the one *Woodard* approved: the County would be asking CBI through a channel it has already used twice for this very incident.

The records matter. Plaintiff's claim is that the deputies arrested her on a warrant for a woman with a different name and date of birth when the information on their screens showed the difference. In this Circuit, officers "are charged with knowledge of any readily available exculpatory evidence that they unreasonably fail to ascertain." *Maresca v. Bernalillo County*, 804 F.3d 1301, 1310 (10th Cir. 2015). The returns and photographs are the evidence of what was readily available. Without them, the record holds no copy of the screens themselves—only the deputies' recollection and the fragments their verified responses describe. When Plaintiff's counsel told the Court the deputies had answered with "I don't recall," the Court observed that "there's some merit to that because time has passed." Doc. 44-1 at 36:05–17. Records, if retained, do not fade.

## IV. REQUESTS 2 AND 3 REMAIN UNANSWERED AS TO THE COUNTY'S POST-ARREST COMMUNICATIONS WITH CBI.

Request 2 asks for the records of any investigation into the incident, and Request 3 for all communications concerning it. Mulkey's response states that "no other Garfield County Sheriff investigation into the circumstances surrounding the incident with Plaintiff took place," while acknowledging that "a fingerprint correction or mistaken identity notification may have been made to the Colorado Bureau of Investigation." Ex. 7 (Mulkey Resp. to Interrog. Nos. 11, 14). The

notification was made. On August 21, 2024, three weeks after the arrest, the Sheriff's Office submitted a record challenge to CBI through the CCIC warrant-identification process, and on August 26 CBI reported the fingerprint-comparison result and sent a law enforcement packet and an arrestee packet to the Sheriff's Office. Ex. 6 (GC 897–99). The County produced the challenge form, the messages, and the packets at GC 897–920. What it has not produced or explained is the record of the jail's determination on July 31, 2024, that Plaintiff was not the woman named in the warrant, including any fingerprint submission and response that produced it, and any internal communication about the mistaken arrest between July 31 and August 21. Ex. 7 (Mulkey Resp. to Interrog. No. 14). Those records are the investigation Request 2 seeks and the communications Request 3 seeks. The Court should order the County to produce them or to certify that none exist and that its production in response to Requests 2 and 3 is complete.

## V. THE COURT SHOULD ORDER COMPLIANCE WITHIN 14 DAYS, WITH A DECLARATION DESCRIBING THE SEARCH.

Plaintiff asks for an order directing the County, within 14 days of the order and notwithstanding the November 10, 2026, discovery cutoff, to (1) search its mobile data terminals, its Tyler Technologies applications, its mobile fingerprint scanner program and any vendor or server account associated with it, the CBI and FBI responses received by its originating agency identifiers, and the jail's fingerprint submission and response records for July 30 and 31, 2024, and produce all records responsive to Requests 7, 8, and 10 found there; (2) state under oath, through the custodian who administers its CCIC access, whether it can obtain from CBI the CCIC, NCIC, and DMV returns transmitted to County personnel in response to the 54 queries listed in Doc. 41-1, and, if it can, request and produce them in the form in which they were displayed, together with the photograph of each woman on file with the Department of Revenue as of July

30, 2024, identified by record type and capture date; (3) produce any record of the jail's July 31, 2024, determination that Plaintiff was not the woman named in the warrant, including any fingerprint submission and response, and any internal communication about the arrest between July 31 and August 21, 2024, or certify that none exists and that its production in response to Requests 2 and 3 is complete; (4) produce any manufacturer documentation for the scanner model used on July 30, 2024, beyond the two-page quick-start guide already produced, or state under oath that it has none; (5) preserve, pending compliance with the order, the devices, accounts, and records described in item (1); and (6) file a declaration from a records custodian describing each system searched, the search performed, and the result.

## CONCLUSION

The County holds the keys to the records that show what its deputies saw. It has turned to them twice for itself, once to correct Plaintiff's record and once to defend this case. The Court should grant the Motion and order the County to comply with the subpoena as set out in Part V.

Respectfully submitted this 2nd day of November 2026.

*s/ Zachary L. Shiffler*
Zachary L. Shiffler
Raymond K. Bryant
Edward C. Hopkins Jr.
Civil Rights Litigation Group, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
Phone: (720) 515-6165
zach@rightslitigation.com
raymond@rightslitigation.com
ed@rightslitigation.com
*Attorneys for Plaintiff*

## GENERATIVE ARTIFICIAL INTELLIGENCE USAGE CERTIFICATION

The undersigned counsel certifies the following pursuant to Section IV.B of the Honorable Senior Judge Kane's Pretrial and Trial Procedures (revised Oct. 2026):

1. Generative AI tools were used to assist in preparing this Motion. The initial drafts of every section of this Motion, from the introduction through the conclusion, were prepared with the assistance of Legal Command Center (LCC), legal AI software that Colorado Attorney Edward C. Hopkins Jr. developed for the Civil Rights Litigation Group, LLP. LCC uses a multi-model AI pipeline (Anthropic Claude Fable 5.1, OpenAI GPT-6.1 Sol, and xAI Grok 4.7), custom scripts, and custom databases to assist the firm's attorneys with legal research, doctrinal analysis, structural outlining, and initial drafting. Counsel then revised those drafts.

2. Counsel personally reviewed every legal proposition, every factual assertion, and every citation in this Motion, including the deposition transcripts, the discovery responses, and the official transcript of the June 10, 2026, hearing. Counsel verified each cited authority against print reporters, Westlaw, or Midpage. Counsel attests that each cited case, statute, and rule is real, exists, and stands for the proposition for which it is cited, and that none has been overruled, modified, or amended on that proposition except as expressly noted in the body of this Motion.

3. Counsel preserves Counsel's obligations under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 with respect to every word filed.

*s/ Zachary L. Shiffler*
Zachary L. Shiffler

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Zachary L. Shiffler*
Zachary L. Shiffler

## INDEX OF ATTACHED EXHIBITS

Plaintiff's Exhibit 1: Plaintiff's Subpoena Duces Tecum to Garfield County (Nov. 21, 2025)

Plaintiff's Exhibit 2: Email exchange between Z. Shiffler and G. Jackson dated Mar. 4–11, 2026

Plaintiff's Exhibit 3: Emails from Z. Shiffler to H. Beattie dated Oct. 7 and Oct. 15, 2026

Plaintiff's Exhibit 4: Letter from H. Beattie to Z. Shiffler re Discovery Disputes dated Oct. 14, 2026

Plaintiff's Exhibit 5: Garfield County Sheriff's Office Policy, Mobile Fingerprint Scanner Devices, and manufacturer's quick-start guide (GC 883–86)

Plaintiff's Exhibit 6: CCIC and DMV returns and CBI messages produced by the County (GC 889–92, 897–99)

Plaintiff's Exhibit 7: Excerpts of Defendant Mulkey's Verified Responses and Objections to Plaintiff's First Set of Written Discovery (Dec. 19, 2025)

Plaintiff's Exhibit 8: Excerpts of the Deposition of Nathan LaGiglia (Apr. 8, 2026)